Harmeet K. Dhillon (CA Bar 207873)
harmeet@dhillonlaw.com
Mark P. Meuser (CA Bar 231335)
mmeuser@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, CA 94108
415-433-1700
415-520-6593 (fax)

Thomas Brejcha, *pro hac vice*
tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*
pbreen@thomasmoresociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
(312) 782-1680

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE CENTER FOR MEDICAL PROGRESS**, *et al.* | Case No. 3:20-CV-07978-WHO |
| Plaintiffs, | Hon. William H. Orrick III |
| v. | **Plaintiffs' Opposition to Defendants' Rule 12(b)(1) Motions to Dismiss [ECF Nos. 77 & 81]** |
| **XAVIER BECERRA**, *et al.* | |
| Defendants. | Date: March 24, 2021, 2:00 p.m. |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 4

ARGUMENT .......................................................................................................... 5

    I.     The Bad Faith Exception to *Younger* Abstention Applies........................ 6

          A.     Defendants Brought Their State-Court Prosecution against
                 Daleiden in Bad Faith. .............................................................. 7

          B.     Additionally, Cal. Penal Code § 632.01 is unconstitutional in
                 every respect and thus also triggers a *Younger* exception. ...................... 12

    II.    *Rooker-Feldman* Does Not Apply ......................................................... 13

          A.     *Rooker-Feldman* does not apply to Challenges to Cal. Penal
                 Code § 632.01 ........................................................................... 14

          B.     Plaintiffs' General Constitutional Challenges to State Statutes
                 Do Not Implicate *Rooker-Feldman*. .......................................... 15

          C.     *Rooker-Feldman* Does Not Apply to Prior State Court
                 Interlocutory Rulings Refusing to Dismiss Daleiden's
                 Selective Prosecution Defense "Without Prejudice." .............................. 16

          D.     Plaintiffs' Federal Suit is Not a De Facto Appeal Because it
                 Raises Only Independent Claims For Harms Caused by
                 Defendants Themselves. .......................................................... 17

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

*Cases:*

*Arevalo v. Hennessy,* ........................................................................................... 6
   882 F.3d 763 (9th Cir. 2018)

*Ashcroft v. Iqbal,* ................................................................................................. 5
   556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly,* .................................................................................. 5
   550 U.S. 544 (2007)

*Bianchi v. Rylaarsdam,* ....................................................................................... 20
   334 F.3d 895 (9th Cir. 2003)

*Constitution Party of Pennsylvania v. Aichele,* .................................................. 4
   757 F.3d 347 (3d Cir. 2014)

*Cooper v. Ramos,* ......................................................................................... 14, 17, 20
   704 F.3d 772 (9th Cir. 2012)

*Courthouse News Serv. v. Planet,* ....................................................................... 4
   750 F.3d 776 (9th Cir. 2014)

*Cullen v. Fliegner,* ........................................................................................... 7, 12
   18 F.3d 96 (2d Cir. 1994)

*District of Columbia v. Feldman,* ........................................................................ 15
   460 U.S. 462 (1983)

*Doe & Assocs. Law Offices v. Napolitano,* .......................................................... 16
   252 F.3d 1026 (9th Cir. 2001)

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* ...................................... 14, 16, 17, 18
   544 U.S. 280 (2005)

*Feldman v. McKay,* ............................................................................................. 16
   NO. CV 15-04892 MMM (JEMx), 2015 WL 7710145 (C.D. Cal. Nov. 25, 2015)

*Fitzgerald v. Peek,* .............................................................................................. 7
   636 F.2d 943 (5th Cir. 1981)

*GASH Associates v. Village of Rosemont,* ........................................................... 18
   995 F.2d 726 (7th Cir. 1993)

*Huffman v. Pursue, Ltd.,* ................................................................................... 6, 20
   420 U.S. 592 (1975)

*Khanna v. State Bar of Cal.*, .......................................................................................... 18, 19
    505 F. Supp. 2d 633 (N.D. Cal. 2007)

*Kougasian v. TMSL, Inc.*, ...................................................................................................... 19
    359 F.3d 1136 (9th Cir. 2004)

*Kugler v. Helfant*, ..................................................................................................................... 7
    421 U.S. 117 (1975)

*Lance v. Dennis*, .................................................................................................................... 14
    546 U.S. 459 (2006)

*Leite v. Crane Co.*, ................................................................................................................ 4, 5
    749 F.3d 1117 (9th Cir. 2014)

*Lewellen v. Raff*, ....................................................................................................................... 7
    843 F.3d 1103 (8th Cir. 1988)

*Li v. Chertoff*, ........................................................................................................................... 4
    482 F. Supp. 2d 1172 (S.D. Cal. 2007)

*Masterpiece Cakeshop Inc. v. Elenis*, ..................................................................................... 8
    445 F.Supp.3d 1226 (D. Colo. 2019)

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, ........................................... 8
    138 S. Ct. 1719 (2018)

*McCullen v. Coakley*, ............................................................................................................. 13
    573 U.S. 464 (2014)

*McCutchen v. City of Montclair*, ........................................................................................... 17
    73 Cal. App. 4th 1138 (1999)

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, ..................................................... 6
    457 U.S. 423 (1982)

*Mothershed v. Justices of Supreme Court*, .................................................................. 15, 16, 17
    410 F.3d 602 (9th Cir. 2004)

*Nathanson v. Superior Court*, ............................................................................................... 17
    12 Cal. 3d 355 (1974)

*Navarro v Block*, ...................................................................................................................... 5
    250 F.3d 729 (9th Cir. 2001)

*Noel v. Hall*, ....................................................................................................................... 18, 19
    341 F.3d 1148 (9th Cir. 2003)

*People v. Gephart*, ................................................................................................................. 17
    93 Cal. App. 3d 989 (1979)

*Phelps v. Hamilton,* ..................................................................................................7
    59 F.3d 1058 (10th Cir. 1995)

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,* .....................4
    214 F. Supp. 3d 808 (N.D. Cal. 2016)

*Planned Parenthood of Greater Texas Family Planning & Preventative*
    *Health Servs., Inc. v. Kauffman,* ..............................................................1, 11
    981 F.3d 347 (5th Cir. 2020)

*Poe v. City of Rolling Hills Estates,* .....................................................................20
    59 F.3d 175 (9th Cir. 1995)

*Reed v. Town of Gilbert, Ariz.,* .......................................................................12, 13
    576 U.S. 155 (2015)

*Rooker v. Fidelity Trust Co.,* ...............................................................................19
    263 U.S. 413 (1923)

*Santos v. Superior Court of Guam,* ......................................................................17
    711 F. App'x 419 (9th Cir. 2018)

*Swartz v. KPMG LLP,* ............................................................................................5
    476 F.3d 756 (9th Cir. 2007)

*United States v. LSL Biotechnologies,* ...................................................................5
    379 F.3d 672 (9th Cir. 2004)

*Younger v. Harris,* ...................................................................................................6
    401 U.S. 37 (1971)

***Federal Statutes:***

28 U.S.C. § 1257 ....................................................................................................14

42 U.S.C. § 1985 ....................................................................................................19

42 U.S.C. § 1985(2) ...............................................................................................18

42. U.S.C. § 1985(3) .................................................................................................2

42 U.S.C. § 1986 ................................................................................................3, 19

Fed. R. Civ. P. 8(a)(2) ..............................................................................................5

Fed. R. Civ. P. 12(b)(1) ...............................................................................3, 4, 5, 21

Fed. R. Civ. P. 12(b)(6) ........................................................................................3, 4

*California Statutes:*

Cal. Penal Code § 632 .......................................................................................................... *passim*

Cal. Penal Code § 632.01 ..................................................................................................... *passim*

Cal. Penal Code § 633.5 .................................................................................................... 2, 11, 16

Cal. Penal Code § 995 ............................................................................................................ 17

*Other Authorities:*

VIRGINIA A. PHILLIPS, ET AL., RUTTER GROUP PRACTICE GUIDE:
      FEDERAL CIVIL PROCEDURE BEFORE TRIAL (2020) ............................................... 4

**INTRODUCTION**

In 2015, Plaintiffs David Daleiden and the Center for Medical Progress finished a 30-month long investigative journalism study documenting wrongdoing in the harvesting and transfer of aborted fetal tissue and organs. (ECF No. 1, Compl., ¶¶ 41–52.) After reporting all of the illegal activity to law enforcement (*id.*, ¶¶ 53–54), Plaintiffs began publishing the fruits of their investigation. (*Id.* at ¶¶ 55.) Publishing the uncovered material immediately prompted government investigations to emerge, and forced Planned Parenthood and NAF to take decisive action attempting to thwart any criminal prosecution of them for their role in that industry. (*Id.* at ¶¶ 56–67.)

Other actors without Planned Parenthood and NAF's key political connections, such as Planned Parenthood's business partners DaVinci Biosciences, were unable to protect themselves from prosecution, and even Planned Parenthood in Texas was disqualified from Medicaid due to its indisputable criminal activity. (*Id.* at ¶¶ 68–71); *Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 351–52 (5th Cir. 2020) (en banc); *see also id.* at 379–83 (Elrod, J., concurring) (majority of en banc court would affirm decision of Texas to debar Planned Parenthood, which was based on illegal and unethical conduct shown in CMP videos). Planned Parenthood in California, however, was able to weaponize its patronage relationship with the California Attorney General to obstruct investigations into its own conduct and deploy the Attorney General's policing powers against a California journalist under California's recording statute, Cal. Penal Code § 632, for the first and only time. (Compl., ¶¶ 74–106.)

After Defendant Becerra filed 15-felony charges based on the recording statute, in what the Los Angeles Times called a "disturbing overreach," Plaintiffs, suspicious of this "extremely unusual—indeed, lone in history—prosecution," sought to establish that it had been brought unconstitutionally. (*Id.* at ¶ 109.) But the California Attorney General "resisted [Plaintiffs'] discovery requests and produced documents only slowly, haphazardly, and in a piecemeal fashion." (*Id.*) In fighting Plaintiffs' discovery, the California Attorney General struggled to proffer a legitimate basis for distinguishing Plaintiffs from all of the other journalists against whom California has never attempted to enforce Cal. Penal Code § 632. (*See id.* at ¶¶ 36–40.) In attempting to create that legitimate basis after the fact, the California Attorney General proudly announced on August 31,

2018, that Plaintiffs had been singled out for prosecution because "several of those recordings were edited to enhance their shock value, and published online," i.e., for their speech (*Id*. at ¶ 108.)

One year and eight months later, on May 12, 2020, Plaintiffs David Daleiden and the Center for Medical Progress filed this civil rights action seeking protection from the federal judiciary against the admittedly unconstitutional conspiracy and invidious prosecution. (ECF No. 1, Compl.) Plaintiffs filed the action in the Central District of California—the locale where the majority of the conspiracy occurred, and Plaintiffs' home forum. (*See* ECF No. 135.) The action was assigned to the Hon. Josephine L. Staton. (ECF No. 6.) The complaint named as Defendants California Attorney General Xavier Becerra, former California Attorney General Kamala Harris, former Special Assistant Attorney General Jill Habig, California DOJ Agent Brian Cardwell, California DOJ Agent Reye Diaz, (collectively "the Attorney General Defendants"), Planned Parenthood Federation of America, Planned Parenthood Affiliates of California, Planned Parenthood in-house counsel Beth Parker (collectively "Planned Parenthood"), the National Abortion Federation ("NAF"), and StemExpress, LLC ("StemExpress"). (Compl., ¶¶ 12–21.) However, early on, StemExpress was voluntarily dismissed from the case. (ECF No. 49.)

The Complaint pleads eight causes of action. Five of these causes of action deal with either constitutional challenges to, or declaratory relief concerning the contours of, the California Invasion of Privacy Act. These five claims are brought against only Defendant Becerra—the California executive officer constitutionally charged with enforcing California law. The first and eighth causes of action contain constitutional challenges to Cal. Penal Code § 632 (Compl., ¶¶ 129–42, 216–25); the second, third and eighth causes of action contain constitutional challenges to Cal. Penal Code § 632.01 (Compl., ¶¶ 143–71, 216–25); and the seventh cause of action seeks declaratory relief concerning Cal. Penal Code § 633.5 (Compl., ¶¶ 208–15).

Two other causes of action are brought against all Defendants. The fourth cause of action alleges that all Defendants conspired to bring an invidious and selective prosecution of Plaintiff Daleiden in violation of his First Amendment rights (Compl., ¶¶ 172–87). The fifth cause of action alleges that all Defendants conspired to violate Plaintiff Daleiden's constitutional rights in violation of 42. U.S.C. § 1985(3) (Compl., ¶¶ 188–200).

Finally, the sixth cause of action alleges that Defendants Cardwell and Diaz violated 42 U.S.C. § 1986 by knowing of, and failing to hinder, the above conspiracy to violate Plaintiff Daleiden's constitutional rights (Compl., ¶¶ 201–07).

On July 17, 2020, Planned Parenthood moved to transfer this case from the Central District to the Northern District of California. (ECF No. 57.) That motion was joined by the remaining Defendants (ECF Nos. 62–65), and granted by Judge Staton on November 12, 2020. (ECF No. 148.) In the Northern District, the action was initially assigned to the Hon. William Alsup. (ECF No. 159.) But it was then related to two other cases proceeding before this Court, and the action was reassigned. (ECF Nos. 167–68.)

None of Defendants have answered the Complaint. Instead, Defendants have collectively filed six motions to dismiss. Defendants Becerra, Cardwell and Diaz filed only one motion to dismiss, under Rules 12(b)(1) and 12(b)(6), and as such that is the only motion that addresses six of the eight causes of action. (ECF No. 81.) The remaining Defendants all filed separate motions to dismiss, largely repeating the same arguments concerning the two causes of action directed at all Defendants. (*See* ECF Nos. 77, 79, 88 (Planned Parenthood); ECF No. 105 (NAF); ECF No. 72 (Jill Habig).)

With respect to all claims, Defendants allege that *Younger* abstention (*see* ECF No. 81-1 at 4–11) and *Rooker-Feldman* abstention (*see* ECF No. 77 at 8–14; ECF No. 81-1 at 11–13) divest this Court of subject-matter jurisdiction. These Rule 12(b)(1) arguments are addressed in this brief.

With respect to the fourth, fifth, and sixth causes of action, all Defendants allege that the statute of limitations has passed. (ECF No. 72 at 13–20; ECF No. 81-1 at 17–18.) Defendants Becerra, Harris, and Habig also raise prosecutorial immunity. (ECF No. 81-1 at 19–20; ECF No. 72 at 20–22.) These legal arguments—raised by the Attorney General Defendants but joined by all parties—are addressed in Plaintiffs' second opposition brief.

With respect to the fourth, fifth, and sixth causes of action, all Defendants also argue first that Plaintiffs have implausibly pleaded an actual conspiracy to selectively and invidiously use Cal. Penal Code § 632 to suppress First Amendment protected speech. (ECF No. 79 at 11–16, 23–25.) Defendants Habig, Planned Parenthood, and NAF argue that there is inadequate pleading of their various roles in the selective prosecution and conspiracy to selectively prosecute. (ECF No. 72 at

22–23; ECF No. 79 at 20–21; ECF No. 88 at 33–34; ECF No. 105 at 8–14.) All parties also argue against the fifth and sixth causes of action for failing to allege that Daleiden is a member of a suspect class, as opposed to merely a member of a class of one. (ECF No. 81-1 at 22–23; ECF No. 79 at 18–20; ECF No. 88 at 34; ECF No. 105 at 13–14.) Planned Parenthood and NAF also contend that there is inadequate pleading to show that they effectively acted under "color of state law" (ECF No. 79 at 21–23; ECF No. 88 at 30–33; ECF No. 105 at 8), and inadequate pleading to show that their constitutionally protected "petitioning" was illegal in light of the *Noerr-Pennington* doctrine (ECF No. 79 at 16–18; ECF No. 88 at 18–29; ECF No. 105 at 14–24.) These inadequate pleading arguments are addressed in Plaintiffs' third opposition brief.[1]

## LEGAL STANDARD

A complaint over which there is a "lack of subject-matter jurisdiction" is subject to a motion to dismiss. Fed. R. Civ. P. 12(b)(1). Subject-matter jurisdiction can be challenged either "facially" or "factually," i.e., based on the face of the complaint or upon asking the court to make disputed factual determinations. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 & n.3 (9th Cir. 2014). Here, only two of the motions to dismiss raise Rule 12(b)(1). (ECF No. 77 & 81.) One of those motions makes expressly clear that it is raising a facial attack (ECF No. 81-1 at 3:4–7), while the other is unclear. (ECF No. 77 at 8:3–11.)

But "[a] factual attack requires a factual dispute, and there is none here." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The Rule 12(b)(1) arguments—*Younger* and *Rooker-Feldman* abstention—are raised "solely on the basis of the allegations in the complaint (together with documents attached to the complaint, judicially noticed facts and any undisputed facts evidenced in the record)" and so are facial. VIRGINIA A. PHILLIPS, ET AL., RUTTER GROUP PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 9:78 (2020); *see also Li v. Chertoff*, 482 F. Supp. 2d 1172, 1175 (S.D. Cal. 2007); *cf. Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 852–53 (N.D. Cal. 2016) (pleading challenge in anti-

---

[1] The Attorney General Defendants also argue that this Court should enter a *Colorado River* stay as to all claims. (ECF No. 81-1 at 13–17.) This non-dismissal argument is addressed in Plaintiffs' concurrently filed opposition to Planned Parenthood's motion to stay. (ECF No. 105.)

SLAPP motion does not require a factual response). A facial attack under Rule 12(b)(1) is treated similarly to a pleading challenge under Rule 12(b)(6). *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Under Rule 12(b)(6), a motion to dismiss can be granted for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the claims. *Navarro v Block*, 250 F.3d 729, 732 (9th Cir. 2001). To state a cognizable claim under federal notice pleading, a plaintiff is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must provide "fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007) (citation and quotes omitted).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In this respect, the Court should construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded facts alleged. *United States v. LSL Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004). Further, the Court should draw all possible inferences in plaintiff's favor. *Id.* "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## ARGUMENT

Defendants argue this case is not properly before the Court for at least two reasons. First, they argue the "*Younger* abstention" doctrine requires this Court to dismiss. Second, they argue this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine. Defendants are wrong on both counts.

As discussed in detail below, *Younger* abstention is not proper for two reasons: (1) Plaintiffs have adequately pled that Defendants investigated and pursued charges against Daleiden in bad faith;

1    and (2) Cal. Penal Code § 632.01, which imposes an enhanced penalty for publishing recordings

2    made within the healthcare context, is a blatant content-based regulation of speech in facial violation

3    of the First Amendment.

4         Additionally, *Rooker-Feldman* is not applicable for at least four reasons: (1) the state court

5    has not considered the constitutionality of Cal. Penal Code § 632.01; (2) general constitutional

6    challenges to state statutes are not subject to *Rooker-Feldman*; (3) the state court's refusals to dismiss

7    on selective prosecution grounds have been interlocutory and have not finally resolved the issue; and

8    (4) Plaintiffs' claims in this case are not a de facto appeal of state court decisions because their alleged

9    injuries have been caused by Defendants and not by state court judgments.

10        This brief considers both arguments in turn.

11   **I.    The Bad Faith Exception to *Younger* Abstention Applies**

12        Defendants argue this court should abstain from exercising its jurisdiction under *Younger v.*

13   *Harris*, 401 U.S. 37, 45 (1971). (ECF No. 81-1 at 4–11.) *Younger* abstention is an "extraordinary and

14   narrow exception to the general rule" that "a federal court's obligation to hear and decide a case is

15   virtually unflagging." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (cleaned up). As

16   Defendants explain, *Younger* abstention is warranted only when the following four conditions exist:

17   (1) there is an "ongoing" state proceeding; (2) that implicates important state interests; (3) that also

18   affords an adequate opportunity to raise constitutional challenges; and (4) the requested relief in

19   federal court seeks to enjoin or would effectively enjoin the ongoing state proceeding. *Id.*

20        "However, even if *Younger* abstention is appropriate, federal courts do not invoke it if there

21   is a 'showing of bad faith, harassment, or some other extraordinary circumstances that would make

22   abstention inappropriate.' " *Id.* at 765–66 (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar*

23   *Ass'n*, 457 U.S. 423, 435 (1982)). *Younger* abstention also does not apply "where the challenged

24   statute is flagrantly and patently violative of express constitutional prohibitions in every clause,

25   sentence and paragraph, and in [whatever] manner and against whomever an effort might be made to

26   apply it." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975) (internal quotations omitted).

27        Here, both exceptions to *Younger* abstention apply. Plaintiffs have adequately pled that

28   Defendants pursued criminal charges against Daleiden in bad faith. And every aspect of Cal. Penal

Code § 632.01 violates the First Amendment, insofar as it is a facially content-based regulation of speech. Accordingly, this Court must not abstain under *Younger*.

> **A.     Defendants Brought Their State-Court Prosecution against Daleiden in Bad Faith**.

Plaintiffs have pled numerous facts establishing that Defendants' prosecution against Daleiden has been in bad faith—indeed, Plaintiffs pled that the selective and invidious prosecution is just the most immediate fruit of a detailed conspiracy to weaponize California's recording statute to silence disfavored speech. As the Complaint explains, no other journalist in history has been prosecuted under Cal. Penal Code § 632. Further, the Attorney General investigated and pursued charges against Daleiden notwithstanding that every local prosecutor to consider the issue refused to do the same. And the Attorney General has done so at the behest of Planned Parenthood and NAF and despite numerous procedural irregularities in its investigation and prosecution. To top it off, Defendants have admitted their primary goal is to muzzle Daleiden's First Amendment speech. Defendants' conduct is thus quintessentially in bad faith under *Younger*.

Defendants note that bad faith for purposes of *Younger* "generally means that a prosecution has been brought without reasonable expectation of obtaining a valid conviction." (ECF No. 81-1 at 8:28–9:1 (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975).) But more recently, courts have held that even where the prosecution has a reasonable expectation of success, the bad-faith exception still applies "where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994) (citing *Lewellen v. Raff*, 843 F.3d 1103, 1109–10 (8th Cir. 1988), *cert. denied*, 489 U.S. 1033 (1989)). Indeed, where there is "a showing of retaliatory or bad faith prosecution . . . [,] the expectations for success of the party bringing the action need not be relevant." *Id.* at 104; *see also Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995) (stating that although a bad-faith prosecution will "ordinarily" be based on probable cause, prosecutions that "are brought for the purpose of chilling or preventing a defendant from exercising his or her constitutional rights" may be in bad faith "even though the charges are predicated on probable cause"); *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (per curiam) ("A [showing of retaliation] will justify an injunction regardless of whether valid

1    convictions could conceivably be obtained"), *cert. denied*, 452 U.S. 916 (1981)).

2        In arguing that Plaintiffs have failed to satisfy the bad-faith exception (ECF No. 81-1 at 9:13–

3    11:3), Defendants entirely ignore Plaintiffs' allegation that Daleiden is the first journalist ever

4    prosecuted under Cal. Penal Code § 632. (*See, e.g.*, Compl., at ¶ 5.) Relatedly, Defendants ignore the

5    fact that, indeed, numerous reporters have previously made undercover recordings in places in

6    California where conversations could not be overheard, in ostensible violation of Cal Penal Code

7    § 632, and yet they faced no charges. (*Id*. at ¶¶ 36–40.) Accordingly, Defendants' discriminatory

8    application of such a broad, generally applicable law in this singular case—involving a pro-life

9    journalist who engaged in undercover journalism behind the scenes at one of the Attorney General's

10    top political donors—is key evidence of their bad faith.

11        A recent decision by the District of Colorado is on point. The court there found that the

12    Colorado Civil Rights Division and the Colorado Civil Rights Commission acted in bad faith for

13    purposes of *Younger* when they pursued discrimination charges against Jack Phillips for refusing to

14    make a custom cake in celebration of a would-be-customer's "transition from male to female."

15    *Masterpiece Cakeshop Inc. v. Elenis*, 445 F.Supp.3d 1226, 1236, 1241 (D. Colo. 2019). The court

16    noted that, in a previous iteration of the case, the U.S. Supreme Court found that Colorado Civil

17    Rights Commission showed "clear and impermissible hostility" toward Phillips when it prosecuted

18    him for not making custom cakes that violated his conscience (*i.e.*, those celebrating same-sex

19    marriage), while it excused other cake-bakers who refused to make custom cakes with messages that

20    opposed same-sex marriage. *Id*. at 1240 (quoting *Masterpiece Cakeshop, Ltd. v. Colorado Civil*

21    *Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018)). Additionally, given the Supreme Court's recognition

22    that Phillips' previous exercise of discretion was based on the message of the cake and not on a

23    customer's status, Colorado's choice to prosecute Phillips again (this time for alleged discrimination

24    based on transgender status) ignored his "message-based reason for declining to create the cake." *Id*.

25    at 1241. The court thus held that Colorado's "disparate treatment" of Phillips—excusing other cake-

26    bakers from making cakes with messages they deemed offensive, while finding probable cause and

27    filing a formal complaint against Phillips for declining to make a pro-gender-transition cake—

28    "reveals [the defendants'] hostility towards Phillips, which is sufficient to establish they are pursuing

1   the discrimination charges against Phillips in bad faith." *Id*. The district court thus refused to abstain

2   from Phillips's federal-court action. *Id*.

3       In like manner, Plaintiffs' allegations of Defendants' selective and invidious enforcement of

4   Cal. Penal Code § 632 to this particular incident of reporting, but to no others, reveal Defendants'

5   hostility toward Daleiden. The Complaint describes three examples of prominent journalistic reports

6   based on undercover recordings in places where, on information and belief, conversations could not

7   be overheard. (Compl., at ¶¶ 37–39.) Yet the Attorney General filed no charges in those cases. (*Id*.

8   at ¶ 40.) Additionally, despite Planned Parenthood's best efforts, a prosecution against Daleiden was

9   rejected by multiple local agencies and prosecutors—specifically by the Los Angeles Police

10  Department, the Pasadena City Attorney, the El Dorado County District Attorney, and the Los

11  Angeles District Attorney. (*Id*. at ¶¶ 84, 89, 176.) As the Los Angeles Police Department concluded:

12  "[D]ue to the area in which [the other provider] was being recorded (in a public restaurant) the

13  conversation could easily be overheard by other people" and thus the recording did not violate § 632.

14  (*Id*. at ¶89.) The Attorney General took up the charge against Daleiden nonetheless.

15      The intimate involvement of Planned Parenthood and NAF in Daleiden's prosecution is yet

16  more evidence of Defendants' hostility—and of their retaliatory motive based on Daleiden's exercise

17  of free speech. The Complaint explains that after the extremely negative public fallout for Planned

18  Parenthood and NAF following the release of Plaintiffs' videos (*id*. at ¶¶ 55–56), Planned Parenthood

19  and NAF almost immediately began working with the Attorney General to investigate Daleiden,

20  suppress his videos, and chill any future investigations into their practices of transferring aborted

21  fetal tissue for monetary fees.[2] (*Id*. at ¶¶ 75–81, 86–108.) This included communications from PPAC

22  Chief Legal Counsel Parker to Defendant Habig informing Habig that Parker was advising Planned

23  Parenthood clinics nationwide to file criminal reports against mere peaceful protests, and asking

24  Habig to advise "if your office thinks we should be doing anything else." (*Id*. at ¶ 91.) Planned

25  Parenthood and NAF then worked together to falsely and artificially inflate the number of "threats"

26

27  ---
    [2] Indeed, at that time one Planned Parenthood provider told Pasadena detectives her goal was to
28  "brand [Daleiden and CMP] as criminals" since "they've thrown out charges against us that we're
    criminals"—an explicitly retaliatory motive. (Compl., at ¶ 82.)

and violent incidents that occurred outside Planned Parenthood locations following the release of Plaintiffs' videos, and then reported those numbers to law enforcement and the Attorney General as a basis for pursuing charges against Daleiden. (*Id*. at ¶¶ 93–94.) Defendant Parker was then put in touch with several Attorney General investigators, whom she told that "Planned Parenthood would like the computers used to produce the videos seized." (*Id*. at ¶ 94.)

The Attorney General's office continued to work with and at the behest of Parker and Planned Parenthood on additional steps of their Daleiden pursuit, including: the adoption of Cal Penal Code § 632.01, *i.e.*, the "Planned Parenthood Amendment" to California's Invasion of Privacy Act; the interview of witnesses for the Attorney General's developing prosecution of Daleiden; and a private meeting with Attorney General Harris herself, Habig, and several representatives of PPAC at the Attorney General's Los Angeles Office on March 23, 2016. (*Id*. at ¶¶ 95–99.) At the time of the meeting, Planned Parenthood was one of Harris's top 12 campaign contributors in the country, having donated more than $80,000 in direct contributions for her gubernatorial and Senate campaigns. (*Id*. at ¶ 99.) Then on April 5, 2016, the California Department of Justice raided Daleiden's home and seized his computers—exactly as Defendant Parker had requested—and, on the same day, Defendant Habig emailed Planned Parenthood a list of 8 "Action Items" from the March 23 meeting. (*Id*. at ¶ 101.)

All told, the symbiotic relationship among the top brass at the Attorney General's office, Planned Parenthood, and NAF is rife with overtones of hostility toward Daleiden and retaliation for his release of the videos (which inarguably showed top Planned Parenthood officials acknowledging their practice of engaging in the transfer of aborted fetal body parts for monetary payment). The fact the primary subjects of Daleiden's reporting happened to be top campaign contributors to the Attorney General and were so intimately involved in Daleiden's prosecution only further reveals Defendants' lack of good faith in pursuing charges against him under Cal Penal Code § 632.

Additionally, Plaintiffs have pled numerous irregularities in Defendants' prosecution that also show bad faith. Indeed, on May 13, 2019, Daleiden was contacted by Jason Davis, who on information and belief represents one of the California Department of Justice special agents. (Compl., at ¶ 119.) Davis informed Daleiden that those in the Attorney General's office responsible for

investigating, preparing, and serving the search warrant, including Defendants Cardwell and Diaz, believed it was not supported by probable cause, was not being sought in good faith, and should not issue. (*Id.* at ¶ 103.) As a result, one special agent took a leave of absence due to stress, and Agent Donohue left the California Department of Justice. (*Id.*) And all this was after Supervising Deputy Attorney General Peter Williams resigned in January 2016 after a 15-year career in the Department of Justice, at the same time Defendants pursued an investigation against Daleiden. (*Id.* at ¶ 85.) Williams had previously drafted an internal memo (which Defendants have refused to produce) concluding, on information and belief, that there was no good-faith basis to prosecute Daleiden under Cal. Penal Code § 632. (*Id.*)

The preliminary hearing in September 2019 revealed even more irregularities. There, Defendant Cardwell testified that when tasked him with investigating Daleiden's undercover footage, he was told to merely identify faces and names of defendant individuals from Planned Parenthood and NAF, without any investigation into the elements of § 632 or the safe harbor provided by § 633.5. (*Id.* at ¶ 121.) Accordingly, Defendant Cardwell testified that he merely "perused" and "fast-forward[ed]" through the videos without looking at them in specific detail. (*Id.*) Also at the preliminary hearing, DAG Jauron erroneously stated "there is no definition of confidentiality in § 632," indicating that Defendant Becerra did not even attempt to apply the actual legal elements in pursuing charges against Daleiden. (*Id.* at ¶ 122.) And Defendant Cardwell further testified that he did not at all consider whether Daleiden satisfied the safe-harbor provisions of § 633.5. (*Id.* at ¶ 123.)

Finally, on August 31, 2018, DAG Jauron admitted on behalf of Becerra that an essential reason Defendants have investigated and pursued Daleiden is the "shock value" of his videos, which Defendants have wrongly asserted were deceptively edited. (*Id.* at ¶ 108); *see Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 380 n.8 (5th Cir. 2020) (en banc) (Elrod, J., concurring, & Higginson, J., concurring) (seven of sixteen judges of en banc court expressly concluding that there is no evidence Daleiden's videos "were deceptively edited or otherwise unreliable" and ten of sixteen would affirm Texas' decision to debar Planned Parenthood on basis of Daleiden's videos). Defendants' content-based purpose for conspiring to investigate and prosecute Plaintiffs is the exact type of speech-based retaliation that

precludes this Court from abstaining under *Younger*.

Because all of these facts are well pled, Plaintiffs' allegations are hardly conclusory. And these facts are more than sufficient to establish that Defendants' "prosecution . . . has been brought to retaliate for [Daleiden's] constitutionally protected conduct." *Cullen*, 18 F.3d at 103. Thus, contrary to Defendants' argument (ECF No. 81-1 at 10:24), Plaintiffs have indeed shown they will suffer irreparable injury if this Court abstains, since "a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the *Younger* doctrine." *Cullen*, 18 F.3d at 104. This Court must accordingly refuse to abstain under *Younger*.[3]

**B.      Additionally, Cal. Penal Code § 632.01 is unconstitutional in every respect and thus also triggers a *Younger* exception.**

Cal. Penal Code § 632.01 is a blatantly content-based regulation of speech and thus "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in [whatever] manner and against whomever an effort might be made to apply it." *Huffman*, 420 U.S. at 611 (internal quotations omitted). Accordingly, this Court must not abstain under *Younger* for yet another reason with respect to Plaintiffs' constitutional challenges to § 632.01. *Id*. (stating *Younger* abstention does not apply to challenges regarding statutes that "flagrantly and patently" violate "express constitutional prohibitions").

§ 632.01 imposes an additional penalty for violating § 632 if the violator "discloses or distributes, in any manner, in any forum . . . the contents of a confidential communication with a healthcare provider." Cal. Penal Code § 632.01(a)(1). The Supreme Court has held that a speech regulation is content-based and subject to strict scrutiny if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). This can occur where the law defines regulated speech "by a particular subject matter" or, more subtly, "by its function or purpose." *Id*. Importantly, a law is most certainly content based

---

[3] Even if the bad-faith exception did not apply, which it does, Plaintiffs agree with Defendants' concession that this Court may not dismiss claims IV through VI, since Plaintiffs seek damages against all Defendants for those claims and under *Younger* "a damages claim is stayed until the state proceeding concludes." (ECF No. 81-1 at 11:5-8 (citing *Herrera v. Cty. of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019)).)

"if it require[s] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (internal quotations omitted).

Here, whether someone violates § 632.01 plainly requires enforcement authorities to evaluate the content of a published undercover recording to determine whether it discloses communication *with a healthcare provider*. That is a quintessential content-based regulation of speech insofar as it singles out only recordings of conversations with healthcare providers. Additionally, Plaintiffs have pled that § 632.01 was drafted and adopted shortly after the release of Daleiden's videos and was the joint product of the Attorney General and Planned Parenthood in the midst of their pursuit of criminal charges against Daleiden. (Compl., at ¶ 96.) As such, § 632.01 blatantly violates a separate First Amendment rule against even facially content-neutral laws "that were adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 576 U.S. at 164. Thus, all aspects and applications Cal. Penal Code § 632.01 are a content-based regulation of speech that must survive strict scrutiny.

However, § 632.01 inherently fails strict scrutiny because it is not narrowly tailored in furtherance of a compelling state interest. Where a law is substantially underinclusive—that is, where it leaves unprohibited appreciable damage to its supposedly vital interests—it plainly fails strict scrutiny. *Reed*, 576 U.S. at 172. Here, § 632.01 regulates only recordings of confidential communications with healthcare providers, while allowing more lenient treatment for undercover recordings in numerous other professional relationships with similarly critical interests in preserving confidentiality, including attorney/client and clergy/penitent relationships. Thus by its very terms § 632.01 is "hopelessly underinclusive," *id*. at 171, and fails strict scrutiny.

Accordingly, § 632.01 in all its aspects is a "flagrant and patent" violation of the express protection for free speech under the under the First Amendment. For this separate reason, therefore, *Younger* abstention does not apply to Plaintiffs' constitutional challenge to § 632.01.

## II.    *Rooker-Feldman* Does Not Apply

Defendants argue this Court lacks subject matter jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine. (ECF No. 81-1 at 8–11; ECF No. 77 at 8–14.) The *Rooker-Feldman*

doctrine derives from a negative implication in the text of 28 U.S.C. § 1257, which grants the U.S. Supreme Court exclusive authority to consider appeals of "[f]inal judgments or decrees rendered by the highest court of a State." The U.S. Supreme Court construes that language to preclude lower federal courts from considering direct or *de facto* appeals from injuries caused by state-court judgments. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (citing *Lance v. Dennis*, 546 U.S. 459, 463 (2006)). However, the Supreme Court has made clear that *Rooker-Feldman* "occupie[s]" only "narrow ground," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), and thus "has been very sparing in its invocation of the doctrine," *Cooper*, 704 F.3d at 778. Accordingly, *Rooker-Feldman* "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those arguments." *Exxon Mobil*, 544 U.S. at 284.

Applied here, *Rooker-Feldman* does not strip this court of subject matter jurisdiction over any of Plaintiffs' claims for at least four reasons: (1) Cal. Penal Code § 632.01 is simply not at issue in the criminal case in any fashion (*see* Count II, III and VIII), (2) *Rooker-Feldman* does not preclude general constitutional challenges to rules and statutes as such (e.g., Plaintiffs' constitutional challenges to Cal. Penal Code § 632 in Counts I and VIII); (3) state-court interlocutory decisions rejecting Daleiden's selective-prosecution defense have not been a final determination of that issue and thus do not trigger *Rooker-Feldman* in this Circuit; and (4) Plaintiffs' selective prosecution and civil-rights-conspiracy claims challenge injuries caused by Defendants themselves and not by the legal judgments of state courts.

### A. *Rooker-Feldman* does not apply to Challenges to Cal. Penal Code § 632.01

First, Cal. Penal Code § 632.01 is not at issue in the criminal case. Rather, the statute was passed in September 2016—long after the recordings at issue in the criminal case took place. (*See* Compl., ¶¶ 46–51, 65.) As a result, the statute does not apply to them and is absent from the underlying criminal complaint. (*See* ECF No. 78-1, PPAC & Parker MJN, Ex. A.) This Court will be the first court to rule on the constitutionality of Cal. Penal Code § 632.01.

**B.** **Plaintiffs' General Constitutional Challenges to State Statutes Do Not Implicate** *Rooker-Feldman*.

Second, it is manifest that *Rooker-Feldman* does not apply to Daleiden's direct constitutional challenges to Cal. Penal Code §§ 632 and 632.01. As the Ninth Circuit has stated, "[t]he doctrine does not . . . prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2004), *as amended on denial of reh'g*, 2005 WL 1692466 (9th Cir. July 21, 2005). Thus, in the Supreme Court's eponymous decision in *District of Columbia v. Feldman*, federal-court plaintiffs were allowed to challenge the general constitutionality of a D.C. bar rule requiring applicants to have graduated from an accredited law school. 460 U.S. 462, 466 (1983). The Supreme Court held that, unlike the plaintiffs' challenge to the D.C. Court's denial of their request for a waiver from that rule, their "general challenge[] to [a] state bar rule[] . . . d[id] not require review of a final state-court judgment in a particular case" and thus was within the federal district court's subject matter jurisdiction. *Id*. at 486; *see also Mothershed*, 410 F.3d at 608 (holding district court had subject matter jurisdiction over plaintiff's challenge to Arizona Supreme Court bar admissions requirements because "claims pertain the rules' validity as applied to all attorneys within Arizona . . . and thus do not present an individualized challenge to [plaintiff's] bar disciplinary proceedings").

Here, Plaintiffs have brought multiple generally applicable legal challenges to California recording statutes as such that are clearly within this court's jurisdiction. Specifically, Count I challenges Cal. Penal Code § 632 as facially overbroad in violation of the First Amendment, given that it regulates substantially more speech than the First Amendment permits. (Compl., at ¶¶ 129–142.) Count II argues that Cal. Penal Code § 632.01 is likewise facially unconstitutional as a content- and viewpoint-based regulation of speech, since it limits the ability to report on activity only within the healthcare industry. (*Id*. at ¶¶ 143–159.) Count III argues § 632.01 is facially unconstitutional for the additional reason that it violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (*Id*. at ¶¶ 160–171.) Finally, Count VIII argues that §§ 632 and 632.01 are preempted under the Supremacy Clause because they are inconsistent with the False Claims Act under 31 U.S.C.

§§ 3729 and 3730. (*Id*. at ¶¶ 216–225.)[4] All these claims are "a general constitutional attack" on particular California statutes, and, as such, they are not prohibited by *Rooker-Feldman* and "may be heard by lower federal courts." *Mothershed*, 410 F.3d at 608.

C.   **Rooker-Feldman Does Not Apply to Prior State Court Interlocutory Rulings Refusing to Dismiss Daleiden's Selective Prosecution Defense "Without Prejudice."**

As to Counts IV through VI, which arise from the conspiracy by all Defendants to violate Plaintiffs' First Amendment and equal protection rights, *Rooker-Feldman* does not apply for a separate reason: Thus far the state trial court has not issued a "final" decision rejecting these theories, and accordingly it has not prevented this Court from having jurisdiction over Plaintiffs' claims. Defendants note that the Ninth Circuit has previously held that *Rooker-Feldman* "bars review of interlocutory state court decisions by the lower federal courts." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001). But following the Ninth Circuit's decision in *Doe*, the Supreme Court observed that *Rooker-Feldman* applies only where "the state court proceedings *ended*." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005) (emphasis added); *see also Feldman*, 460 U.S. at 466 (recognizing that *Rooker-Feldman* does not apply to actions that do not require lower federal courts to "review . . . a *final* state-court court judgment in a particular case") (emphasis added). As a result, the Ninth Circuit later held that "[p]roceedings end for *Rooker-Feldman* purposes when the state courts *finally resolve* the issue that the federal court plaintiff seeks to litigate in a federal forum, even if other issues remain pending at the state trial level." *Mothershed*, 410 U.S. at 604 n.1 (emphasis added). In other words, only where a state court's "interlocutory ruling . . . constitutes the final determination of an issue" will *Rooker-Feldman* apply. *Id*.[5]

---

[4] Count VII is also clearly within this Court's jurisdiction because it merely seeks a declaratory judgment on the general scope of Cal. Penal Code §§ 632 and 633.5, the interpretation of which would apply to all California residents. (*Id*. at ¶¶ 208–215.)

[5] Various unpublished Ninth Circuit decisions continue to cite *Doe* and other cases for the general proposition that *Rooker-Feldman* still applies to state-court interlocutory decisions. *See, e.g.*, *Feldman v. McKay*, NO. CV 15-04892 MMM (JEMx), 2015 WL 7710145 at *6 (C.D. Cal. Nov. 25, 2015) (collecting cases). But these cases do not purport to reverse the rule in *Mothershed* that, after

The Superior Court and state appeals courts in *People v. Daleiden* have not finally resolved the particular issue of whether Defendants here engaged in selective prosecution against Daleiden and CMP. While the Superior Court has thus far rejected Daleiden's motions to dismiss for selective prosecution, it has expressly done so "without prejudice" to raising that defense again in the future. (*See* ECF No. 89 at 858, PPFA MJN, Ex. 20 at 24.) Further, though it's true that Daleiden has unsuccessfully pursued two writs of mandamus in the state appellate courts alleging discriminatory prosecution (*see* ECF No. 77 at 6–7), writs of mandate are granted only where the facts adduced at that point support only one decision. *See Nathanson v. Superior Court*, 12 Cal. 3d 355, 361 (1974). Therefore, Daleiden's writ denials have not finally resolved whether he was selectively prosecuted insofar as they have all been before trial. The same is true with respect to Daleiden's motion to set aside the information under Cal. Penal Code § 995 (*see* ECF No. 77 at 7), given that "995 motions" do not even trigger res judicata. *People v. Gephart*, 93 Cal. App. 3d 989, 998 (1979). Accordingly, the state-court proceedings in *People v. Daleiden* have not "ended" with respect to Daleiden's selective-prosecution defense. *See Exxon Mobil*, 544 U.S. at 291. Thus, *Rooker-Feldman* does not strip this Court of jurisdiction over Counts IV through IV.

### D.  Plaintiffs' Federal Suit is Not a De Facto Appeal Because it Raises Only Independent Claims For Harms Caused by Defendants Themselves.

Finally, this Court has jurisdiction over Counts IV through VI (and the remaining counts, for that matter) for yet another reason: they are all "independent claims" alleging injuries caused *by Defendants themselves* before any state-court decisions and thus are not de facto appeals from those decisions. As Defendants acknowledge, whether *Rooker-Feldman* applies is a *two*-step process. (ECF No. 77 at 9:11–14.) First, a court must decide whether the federal action is a de facto appeal from a state-court judgment. *Cooper*, 704 F.3d at 778. Only if the court answers in the affirmative

---

*Exxon Mobil*, only interlocutory orders that "finally resolve" the relevant issue trigger *Rooker-Feldman*. *See, e.g.*, *Santos v. Superior Court of Guam*, 711 F. App'x 419, 420 (9th Cir. 2018) (unpublished) (holding that *Rooker-Feldman* applied to state court's interlocutory probable cause determination); *but see McCutchen v. City of Montclair*, 73 Cal. App. 4th 1138, 1145–46 (1999) (holding that probable cause determination is a final judgment on the merits for purposes of collateral estoppel).

1    does it consider whether the issues raised in federal court are "inextricably intertwined" with those

2    already decided in state court. *Id*.

3        To determine whether the federal action is a de facto appeal, the Ninth Circuit says courts

4    should ask the following question: "[I]s the federal plaintiff seeking to set aside a state judgment, or

5    does he present some independent claim, *albeit one that denies a legal conclusion that a state court*

6    *has reached in a case to which he was a party*?" *Noel v. Hall*, 341 F.3d 1148, 1165 (9th Cir. 2003)

7    (emphasis added) (quoting *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.

8    1993)). An affirmative only to the former, not the latter, prevents a lower federal court from having

9    subject matter jurisdiction. *Id*. Indeed, "the [Supreme] Court [has] emphasized that *Rooker-Feldman*

10   does not displace concurrent state and federal jurisdiction over parallel cases or normal preclusion

11   law." *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 642 (N.D. Cal. 2007) (citing *Exxon Mobil*,

12   544 U.S. at 292–93). Rather, the doctrine applies "only when the federal plaintiff both asserts as her

13   injury legal error or errors by the state courts *and* seeks as her remedy relief from the state court

14   judgment." *Id*. (internal quotes omitted) (emphasis in original). The Supreme Court adds that *Rooker-*

15   *Feldman* "does not 'stop a district court from exercising subject matter jurisdiction simply because

16   a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id*. (quoting

17   *Exxon Mobil*, 544 U.S. at 293). Indeed, *Rooker-Feldman* does not apply where the constitutional

18   "attack is collateral, not frontal." *Id*.

19       The Northern District of California's decision in *Khanna* is illustrative. There, the federal

20   plaintiff alleged the California State Bar had violated numerous constitutional rights and committed

21   conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(2) when, after a hearing before

22   the State Bar Court, it recommended that the plaintiff be disbarred. *Khanna*, 505 F.Supp.2d at 638.

23   He sought review in the California Supreme Court, which rejected his petition and ordered him

24   disbarred. *Id*. In his subsequent federal lawsuit, the district court rejected the notion that *Rooker-*

25   *Feldman* applied, emphasizing that the plaintiff "does not assert as a legal wrong an erroneous

26   decision of the California Supreme Court, but rather the illegal acts of other parties—the named

27   defendants herein." *Id*. at 642. It did not matter that the plaintiff sought "a result which would be

28   based upon findings inconsistent with those underpinning the California Supreme Court's decision,"

1  as that reality merely "implicate[d] conventional preclusion rules . . . , not lack of jurisdiction." *Id*.

2  True, the court also highlighted that the plaintiff "does not seek relief from the order of the California

3  Supreme Court disbarring him" since he sought only money damages from the alleged wrongdoers

4  and not reinstatement to the bar. *Id*. But the Ninth Circuit has held elsewhere—in a case relied on in

5  *Khanna*—that "for *Rooker-Feldman* to apply, a plaintiff must seek not only to set aside a state court

6  judgment; he or she must also allege a legal error by the state court as the basis for that relief."

7  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).

8       In like manner, here Plaintiffs have alleged violations of their rights under the Constitution

9  and 42 U.S.C. §§ 1985 and 1986 by Defendants themselves, not the state courts. (*See* Compl., at

10 ¶¶ 129–225.) The injuries alleged arise from unconstitutional state statutes and Defendants'

11 conspiracy to violate Daleiden's equal protection and First Amendment rights. *Id*. They do not arise

12 from any prior state court judgments. *Cf. Feldman*, 460 U.S. at 486–88 (holding that plaintiffs'

13 challenge to the D.C. Court of Appeals' denial of their request for waiver from the bar rule, but not

14 their challenge to the bar rule itself, were outside the federal district court's subject matter

15 jurisdiction). Additionally, Plaintiffs have not brought a "frontal" attack on the state court judgments,

16 as they have not sought a declaration that those judgments are wrong or even that they be formally

17 set aside. Rather, the first four paragraphs of their prayer for relief seek injunctions against the

18 application of Cal. Penal Code §§ 632 and 632.01 to Plaintiffs along with declarations of their

19 unconstitutionality—but not an injunction against the state court decisions themselves. (Compl., at

20 ¶¶ 51–52); *cf. Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923) (holding district court lacked

21 jurisdiction where plaintiffs sought judgment declaring the state-court ruling "null and void"). And

22 paragraphs five through nine seek only money damages or interest and in no way ask to set aside a

23 prior state court ruling. *Cf. Khanna*, 505 F.Supp.2d at 642 (same). Therefore, Plaintiffs here are

24 "complaining of legal injury caused by the adverse part[ies]," not "by a state court judgment." *Noel*

25 *v. Hall*, 341 F.3d at 1164. Thus *Rooker-Feldman* does not apply here.[6]

26 ─────────────────────

27 [6] Defendants attempt a sinister game of "gotcha" by seizing on a fraction of a single paragraph in
Plaintiffs' Complaint to argue that Plaintiffs are actually challenging "purportedly erroneous
decisions by the state courts." (*See* ECF No. 77 at 9–10, 10–11, 14; ECF No. 81-1 at 13:20–23)

28 (citing Compl., at ¶ 128.) On the contrary, Paragraph 128 of the Complaint is simply a (true)
descriptive observation that the Superior Court has thus far denied motions to dismiss for selective

1  Contrary to Defendants' arguments, this case is easily distinguishable from *Bianchi v.*

2  *Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003). That applied *Rooker-Feldman* where the federal plaintiff

3  alleged the state appeals court itself caused his injury by including a judge who had previously been

4  disqualified from considering the plaintiff's post-trial motions. *Id*. at 897. The Ninth Circuit held that

5  the federal and state issues were "inextricably intertwined" and that *Rooker-Feldman* applied—but

6  only the action was a de facto appeal of a state court judgment insofar as the plaintiff's alleged injury

7  resulted from a state court judgment itself. *Id*. at 899–901.

8  Nor is this case like *Cooper v. Ramos* (*see* ECF No. 77 at 10:2–14), because there the plaintiff

9  directly attacked the state Superior Court's judgment itself by arguing that *its* holding and erroneous

10 statutory interpretation deprived the federal plaintiff of his constitutional rights. *Cooper*, 704 F.3d at

11 779. That case also held that the federal plaintiffs' conspiracy claims were "inextricably intertwined"

12 with issues decided by the Superior Court and thus also barred by *Rooker Feldman*—but that was

13 only possible because the federal action was a de facto appeal from injuries inflicted by the Superior

14 Court. *Id*. at 781–83. That is manifestly not the case here, where Plaintiffs bring independent claims

15 as a result of constitutional and civil-rights injuries inflicted by Defendants and not by any state court

16 judgment.

17 In sum, because *Rooker-Feldman* does not apply to Cal Penal Code § 632.01, which is not at

18 issue in the criminal case; does not apply to Plaintiffs' general constitutional challenges to state

19 statutes; does not apply to state court rulings that have not finally resolved Daleiden's selective

20 prosecution defense; and does not apply to Plaintiffs' independent claims against harms caused by

21 Defendants themselves, this Court has subject matter jurisdiction over all of Plaintiffs' claims.

22

23 prosecution. (Compl., at ¶ 128.) Its statement that "Plaintiffs therefore bring this lawsuit in federal
   court to vindicate their federal constitutional rights" (*see id.*) in no way asserts that the Superior Court
24 rulings themselves have inflicted the harms giving rise to this lawsuit. That should go without saying
   given the first sentence of that very same paragraph (*see id.*) (stating Attorney Jauron admitted the
25 purpose of prosecuting Daleiden was the content of his undercover videos)) as well as from the other
   224 paragraphs of the 52-page complaint, all of which paint the picture of *Defendants' constitutional*
26 *violations*, and none of which allege constitutional harms inflicted by any state court. (*See id.* at ¶¶ 1–
   225, pp. 1–52.) Indeed, that is the very nature of the legal claim at issue in Plaintiffs' argument. *See,*
27 *e.g.*, *Poe v. City of Rolling Hills Estates*, 59 F.3d 175 (9th Cir. 1995) (stating that the "primary injury"
   of a selective prosecution claim "arises from being subjected to prosecution, not from being
28 convicted").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, Plaintiffs David Daleiden and the Center for Medical Progress respectfully request that the Court deny the various Defendants' Rule 12(b)(1) motions to dismiss in full or, alternatively, grant Plaintiffs leave to amend their complaint to cure any pleading deficiencies.

Dated: February 24, 2021

/s/ Mark P. Meuser

Harmeet K. Dhillon (SBN: 207873)
Mark P. Meuser (SBN: 231335)
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
Tel: 415-433-1700
Fax: 415-520-6593
harmeet@dhillonlaw.com
mmeuser@dhillonlaw.com
ksweigart@dhillonlaw.com

Thomas Brejcha, *pro hac vice*
Peter Breen, *pro hac vice*
THOMAS MORE SOCIETY
309 W. Washington St., #1250
Chicago, IL 60606
Tel:    (312) 782-1680
Fax:    (312) 782-1887
tbrejcha@thomasmoresociety.org
pbreen@thomasmoresociety.org
*Attorneys for Plaintiffs*