ARNOLD & PORTER KAYE SCHOLER LLP
Rhonda R. Trotter (Bar No. 169241)
Oscar Ramallo (Bar No. 241487)
Laura Watson (Bar No. 317155)
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:     (213) 243-4000
Facsimile:     (213) 243-4199
Rhonda.Trotter@arnoldporter.com
Oscar.Ramallo@arnoldporter.com
Laura.Watson@arnoldporter.com

Attorneys for Defendant
*Planned Parenthood Federation of America*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CENTER FOR MEDICAL PROGRESS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>XAVIER BECERRA, et al.,<br><br>　　　　Defendants. | Case No. 3:20-CV-07978-WHO<br><br>**DEFENDANT PLANNED PARENTHOOD FEDERATION OF AMERICA'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**<br><br>Date: March 24, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2, 17th Floor<br><br>*Moving Papers:  Dkt. 88, 89*<br>*Opposition:  Dkt. 213* |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.  THE FIRST AMENDMENT PROTECTS DEFENDANTS' PETITIONING TO
    THE ATTORNEY GENERAL. .....................................................................................3

    A.  SUCCESSFUL PETITIONING CANNOT BE A SHAM. ......................................3

    B.  PLAINTIFFS FAIL TO PLEAD THE FRAUD EXCEPTION. ...............................4

    C.  THERE IS NO "USURPATION" EXCEPTION TO THE FIRST
       AMENDMENT .............................................................................................5

II. THE FIRST AMENDMENT PROTECTS DEFENDANTS' PETITIONING TO
    THE SUPERIOR COURT. ...........................................................................................7

    A.  THE CRIMINAL COMPLAINT IS NOT A SHAM. ..............................................7

    B.  PLAINTIFFS FAIL TO PLEAD THE FRAUD EXCEPTION. ...............................9

III. PRIVATE DEFENDANTS DID NOT ACT UNDER COLOR OF STATE LAW. ...........10

    A.  PLAINTIFFS MISAPPLY THE "DECISIVE STEP" TEST. .................................10

    B.  PLAINTIFFS DO NOT PLAUSIBLY PLEAD JOINT ACTION. .........................12

IV. SECTION 1985(3) DOES NOT PROTECT A CLASS OF ONE ANTI-ABORTION
    "JOURNALIST." ......................................................................................................14

V.  PLAINTIFFS DO NOT PLAUSIBLY ALLEGE PPFA ATTEMPTED TO
    INFLUENCE THE ATTORNEY GENERAL. ...............................................................14

CONCLUSION .................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 2

*BCD, LLC v. BMW Mfg. Co.*,
  No. 6:05-CV-2152-GRA, 2008 WL 304878 (D.S.C. Jan. 31, 2008).................................. 3

*Boone v. Redev. Agency of City of San Jose*,
  841 F.2d 886 (9th Cir. 1988)................................................................................. 2, 4, 6

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993) ........................................................................................................ 3

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
  690 F.2d 1240 (9th Cir. 1982)......................................................................................... 4

*Collins v. Womancare*,
  878 F.2d 1145 (9th Cir. 1989)....................................................................................... 13

*County of Santa Clara v. Superior Court*,
  50 Cal. 4th 35 (2010) ..................................................................................................... 6

*Forro Precision, Inc. v. Int'l Bus. Machines Corp.*,
  673 F.2d 1045 (9th Cir. 1982)......................................................................................... 4

*Franklin v. Fox*,
  312 F.3d 423 (9th Cir. 2002)..................................................................................... 10, 11

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005)......................................................................................... 9

*Gray v. Hernandez*,
  651 F. Supp. 2d 1167 (S.D. Cal. 2009) ............................................................................ 8

*Hakopian v. Mukasey*,
  551 F.3d 843 (9th Cir. 2008)........................................................................................... 8

*Hambarian v. Super. Ct.*,
  27 Cal. 4th 826 (2002) ................................................................................................... 6

*Harman v. Valley Nat'l Bank of Ariz.*,
  339 F.2d 564 (9th Cir. 1964)........................................................................................... 7

*Holmes v. Harris*,
  No. CV 18-3739 PSG (EX), 2019 WL 2895632 (C.D. Cal. May 15, 2019) ......................... 4

*Kearney v. Foley & Lardner, LLP,*
  590 F.3d 638 (9th Cir. 2009) ............................................................................... 4

*Kenna v. U.S. Dist. Court for C.D. Cal.,*
  435 F.3d 1011 (9th Cir. 2006) ........................................................................... 12

*Kottle v. Nw. Kidney Ctrs.,*
  146 F.3d 1056 (9th Cir. 1998) ............................................................... 2, 4, 5, 7

*Macko v. Byron,*
  576 F. Supp. 875 (N.D. Ohio 1983) ..................................................................... 6

*NAF v. CMP,*
  685 F. App'x 623 (9th Cir. 2017) ........................................................... 6, 11, 12

*Nat'l Collegiate Athletic Ass'n v. Tarkanian,*
  488 U.S. 179 (1988) ........................................................................................... 10

*Oregon Nat'l Res. Council v. Mohla,*
  944 F.2d 531 (9th Cir. 1991) ............................................................................... 8

*Planned Parenthood of Greater Texas Family Planning & Preventative Health*
  *Servs., Inc. v. Kauffman,*
  981 F.3d 347 (5th Cir. 2020) ............................................................................. 12

*Planned Parenthood of Greater Texas Family Planning & Preventative Health*
  *Servs., Inc. v. Smith,*
  236 F. Supp. 3d 974 (W.D. Tex. 2017) .............................................................. 12

*PPFA v. CMP,*
  480 F. Supp. 3d 1000 (N.D. Cal. 2020) .......................................................*passim*

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,*
  508 U.S. 49 (1993) ..................................................................................... 1, 3, 7

*Radcliffe v. Rainbow Const. Co.,*
  254 F.3d 772 (9th Cir. 2001) ....................................................................... 2, 10

*Rehberg v. Paulk,*
  566 U.S. 356 (2012) ..................................................................................... 7, 10

*Sims v. Jefferson Downs Racing Ass'n, Inc.,*
  778 F.2d 1068 (5th Cir. 1985) ........................................................................... 13

*Sosa v. DIRECTV, Inc.,*
  437 F.3d 923 (9th Cir. 2006) ......................................................................... 3, 5

*Spiegel v. McClintic,*
  916 F.3d 611 (7th Cir. 2019) ............................................................................. 11

*Thomas v. Hous. Auth. of Cty. of L.A.*,
    No. CV-046-970-MMM(RCX), 2006 WL 5670938 (C.D. Cal. Feb. 28, 2006) ........................ 5, 9

*Tuggle v. City of Tulare*,
    No. 1:19-CV-01525-NON-ESAB, 2020 WL 3977892 (E.D. Cal. July 14, 2020) ...................... 10

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*,
    793 F.3d 85 (D.C. Cir. 2015) ...................................................................................................... 7

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................................................. 2, 7

**Statutes**

42 U.S. Code § 1983 ................................................................................................... 10, 12, 14

42 U.S. Code § 1985(3) ................................................................................................... 3, 14

Cal. Penal Code § 632 .......................................................................................................... *passim*

Cal. Penal Code § 633.5 ............................................................................................................. 8

**Other Authorities**

Cal. Const., art. I, § 28(b) ...................................................................................................... 12

U.S. Const. amend. I ................................................................................................................ *passim*

U.S. Const. amend. VI ............................................................................................................. 10

## INTRODUCTION

Plaintiffs are suing Private Defendants because they allegedly influenced the Attorney General to investigate Daleiden and charge him with a crime.  The Court should dismiss PPFA from this lawsuit for one simple and straightforward reason:  PPFA did not attempt to influence the Attorney General to investigate or charge Daleiden, and the Complaint contains no factual allegations otherwise.  The Complaint only alleges individuals employed by entities other than PPFA attempted to influence the Attorney General.  The Complaint attributes the alleged conduct of other entities' employees to PPFA without any legal or factual basis for doing so.  Plaintiffs' opposition simply ignores this deficiency rather than addressing it.  Plaintiffs' failure to set forth any basis for including PPFA as a defendant in this lawsuit requires the Court to dismiss PPFA from the action.

Even if the Complaint properly alleged that PPFA had attempted to influence Daleiden's prosecution, the Court would still be required to grant PPFA's motion because petitioning an Attorney General to enforce the law is protected by the First Amendment.  Plaintiffs' contention that Private Defendants' alleged petitioning to the Attorney General to investigate and prosecute Daleiden is a "sham," fails as a matter of law because the Complaint concedes the petitioning was successful.  "[A] successful effort to influence governmental action ... certainly cannot be characterized as a sham."  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993).

Plaintiffs also fail to plead the fraud exception to the First Amendment right to petition.  The "fraud" that Plaintiffs are alleging is that Defendants advocated the position that Penal Code § 632 applies to conversations in restaurants and conferences.  The First Amendment, however, does not permit Plaintiffs to sue Defendants for having or advocating a different interpretation of Penal Code § 632 than Plaintiffs.  Given that PPFA's interpretation prevailed when PPFA, Daleiden, and CMP litigated exactly the same issue in *PPFA v. CMP*, Plaintiffs' contention that Defendants are committing fraud by advocating this position is totally devoid of merit.  Additionally, the fraud exception does not apply to petitioning of the Attorney General's office because it is a "political entity" with sufficient investigative resources and power to "accommodate false statements and

-1-

1  reveal their falsity." *Boone v. Redev. Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988)

2  (internal quotation omitted).

3  The Attorney General's petitioning of the Superior Court, allegedly at Private Defendants'

4  behest, is likewise not a sham.  A litigation position is a sham only if it is not supported by even a

5  "good faith argument for the extension, modification, or reversal of existing law." *White v. Lee*,

6  227 F.3d 1214, 1232 (9th Cir. 2000) (internal quotation omitted).  While Plaintiffs argue that § 632

7  should not apply to their "journalistic" enterprise, they do not and cannot allege that advocating for

8  the application of § 632 to their conduct is so unreasonable as to constitute a sham.  Indeed,

9  Plaintiffs are estopped from arguing that Defendants' position is incorrect, much less that it is so

10  incorrect that it cannot be asserted in good faith.  *PPFA v. CMP*, 480 F. Supp. 3d 1000, 1021-22

11  (N.D. Cal. 2020) (affirming verdict on Penal Code § 632).  Furthermore, litigation is a sham only if

12  the litigant has no subjective hope of prevailing.  *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060

13  (9th Cir. 1998).  But Plaintiffs' Complaint affirmatively alleges that Defendants' goal is to "***brand***

14  ***[Plaintiffs] as criminals***" by obtaining a conviction.  Dkt. 1 ¶ 182.

15  Plaintiffs' Complaint also fails because they do not plausibly allege that Private Defendants

16  acted under color of state law.  Plaintiffs argue that Private Defendants should be treated as state

17  actors because their alleged petitioning was the "decisive step" in convincing the Attorney General

18  to prosecute Daleiden.  The Ninth Circuit, however, has rejected such reasoning because, if it were

19  accepted, "every citizen who complained to a prosecutor would find himself in a conspiracy."

20  *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).

21  Plaintiffs also contend that Private Defendants engaged in "joint action" with the Attorney

22  General because they allegedly seized control of the Attorney General's office.  Plaintiffs'

23  contention, however, is not supported by any factual allegations.  Instead, Plaintiffs recast

24  constitutionally protected activities such as sending an email, holding a meeting, and discussing the

25  logistics of securing a protective order for confidential material as an "usurpation" of state

26  authority.  Grandiose assertions are not a substitute for factual allegations.  *Ashcroft v. Iqbal*, 556

27  U.S. 662, 680 (2009) (rejecting conclusory allegations that FBI Director and Attorney General were

28  "instrumental" in adopting policy harmful to plaintiff).

Finally, Plaintiffs' § 1985(3) claim fails because they do not allege they are part of a class protected by the statute.  Plaintiffs seek protection as a class of anti-abortion "journalists."  But "the goal of preventing abortion … does not remotely qualify" for protection under the statute.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 274 (1993).

For all these reasons, the Court should grant PPFA's motion to dismiss.

**ARGUMENT**

**I.      The First Amendment Protects Defendants' Petitioning to the Attorney General.**

     **A.      Successful petitioning cannot be a sham.**

The Supreme Court has "explicitly observed that a successful effort to influence governmental action ... certainly cannot be characterized as a sham."  *Prof'l Real Estate Inv'rs*, 508 U.S. at 58 (internal quotation omitted).  As Plaintiffs admit in their opposition, their lawsuit seeks to hold Private Defendants liable for successfully lobbying the Attorney General to prosecute Daleiden.  Dkt. 214 at 18 (stating Plaintiffs seek to hold Defendants liable "based upon:  (1) Defendants['] 'decisive step to send the Attorney General Defendants an email *that initiated the criminal investigation and prosecution that ultimately harmed Plaintiffs* … and (2) their wilful participation and joint action with the Attorney General Defendants" to selectively prosecute him) (emphasis added).  Because the Complaint is based on admittedly successful petitioning activity, the sham exception cannot apply.  Indeed, PPFA's moving papers established exactly this point (Dkt. 88 at 26), and Plaintiffs have identified no authority to the contrary.

Instead, Plaintiffs offer a convoluted hypothetical discussion about how Defendants could have intended to "brand" Plaintiffs "as criminals" in the "court of public opinion" without actually securing an indictment.  Dkt. 214 at 16.  Because, contrary to this hypothetical discussion, Plaintiffs have alleged that Private Defendants "successfully influenced governmental actors to take actions harmful to Plaintiffs," the sham exception does not apply as a matter of law.  *BCD, LLC v. BMW Mfg. Co*., No. 6:05-CV-2152-GRA, 2008 WL 304878, at *14 (D.S.C. Jan. 31, 2008).  And even if Private Defendants' goal was to harm Plaintiffs only in the court of public opinion, that too is squarely within the scope of the First Amendment's protection.  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) (noting that Supreme Court in *Noerr* "extended immunity not only to the

railroads' direct communications with legislators but also to its public relations campaign").

### B.    Plaintiffs fail to plead the fraud exception.

PPFA's moving papers established that the fraud exception applies to lobbying of the executive branch only if the "executive entity … more resembled a judicial body" than "a political entity." Dkt. 88 at 26 (quoting *Kottle.*, 146 F.3d at 1061).[1]  Plaintiffs contend the Attorney General is not a political entity because it would be "hard to swallow" that the Attorney General is "tasked with undertaking political prosecutions."  Dkt. 214 at 15.

Plaintiffs' argument is a word game that invokes an inapplicable connotation of the term "political."[2]  As the term is used in the *Noerr* context, a court will categorize an entity as "political" if the entity "acting in the political sphere, can accommodate false statements and reveal their falsity."  *Boone*, 841 F.2d at 894 (internal quotation omitted).  By contrast, the fraud exception is applicable to courts and administrative tribunals because "[t]hey seldom, if ever have the time or resources to conduct independent investigations." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1262 (9th Cir. 1982).  Because the Attorney General has substantial investigative capabilities and is not required to accept allegations at face value before charging a crime, it is a "political entity" as the term is used in the *Noerr* context.[3]  Indeed, the Complaint concedes that the Attorney General's office spent eighteen months investigating Daleiden before deciding to charge him. Dkt. 1 ¶¶ 66, 85.  Because Plaintiffs accuse Private Defendants of

---

[1] *Kearny*, on which Plaintiffs rely, states "there is no first amendment protection for furnishing with predatory intent false information to an ... ***adjudicative body***."  *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 647 (9th Cir. 2009) (emphasis added; internal quotation omitted).  Plaintiffs' opposition misleadingly clips the quote early and replaces "adjudicative body" with "the government."  Dkt. 214 at 14.

[2] *Politics*, Merriam Webster (last visited Mar. 1, 2021) ("English is a flexible language, and it is not uncommon for a word to have multiple related meanings that run the connotative gamut from good to bad."), https://www.merriam-webster.com/dictionary/politics

[3] *Holmes v. Harris*, No. CV 18-3739 PSG (EX), 2019 WL 2895632, at *8 (C.D. Cal. May 15, 2019), on which Plaintiffs rely, is distinguishable because it involves making false reports to police departments, not the Attorney General.  Plaintiffs' opposition states they "Do Not Seek to Hold Defendants Liable for Filing Police Reports."  Dkt. 214 at 18.  Furthermore, *Holmes* relied on, *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982), which reaffirmed that "informing the attorney general of alleged [wrongs by the plaintiff] and persuading him to take enforcement action was essentially political in nature."

1    petitioning an entity with substantial investigative resources, Plaintiffs' attempt to invoke the fraud

2    exception fails as a matter of law.

3          Even if the fraud exception applied, Plaintiffs have not pleaded any actual

4    misrepresentations.  Rather, Plaintiffs contend Defendants made "misrepresentations" by asserting

5    that Penal Code § 632 is applicable in restaurants and conferences where conversations "could be

6    easily overheard by other people."  Dkt. 1 ¶ 176.  That legal position is not a misrepresentation.  It

7    is a reasonable interpretation of the Penal Code, and Plaintiffs are collaterally estopped from

8    denying its correctness.  *PPFA v. CMP*, 480 F. Supp. 3d at 1021-22 (affirming verdict on Penal

9    Code § 632); *see also Sosa*, 437 F.3d at 940 (holding misrepresentations about the law are protected

10   "absent representations so baseless that the threatened litigation would be a sham").

11         Although not raised in response to PPFA's First Amendment arguments, Plaintiffs'

12   oppositions repeatedly accuse Private Defendants of inflating the number of violent incidents

13   attributable to Plaintiffs and misrepresenting Defendants' compliance with abortion regulations.

14   While Plaintiffs' accusations are baseless, even if the Court accepted them, the alleged

15   misrepresentations are not the type that "deprive[] the entire … proceeding of its legitimacy."

16   *Kottle*, 146 F.3d at 1063.  To establish an exception to *Noerr*, a misrepresentation must "affect[] the

17   very core of a litigant's … case." *Thomas v. Hous. Auth. of Cty. of L.A.*, No. CV-046-970-

18   MMM(RCX), 2006 WL 5670938, at *9 (C.D. Cal. Feb. 28, 2006).  The number of violent incidents

19   attributable to Plaintiffs and whether Defendants comply with abortion regulations are irrelevant to

20   determining whether Daleiden violated Penal Code § 632  *See, e.g.*, *PPFA v. CMP*, 480 F. Supp. 3d

21   1000, 1011 (N.D. Cal. 2020) ("[T]he accounting issues regarding the fetal tissue programs of the

22   four affiliate-plaintiffs is not directly and significantly relevant to the remaining claims and defenses

23   in this case").  These alleged misrepresentations, accordingly, do not go to the very core of whether

24   Daleiden should have been charged with a crime.  Plaintiffs thus fail to plead any exception to

25   Private Defendants' First Amendment petitioning immunity.

26         **C.    There is no "usurpation" exception to the First Amendment.**

27         Plaintiffs contend that their claims can be saved by recharacterizing petitioning activity as

28   "usurpation [of the prosecution] in violation of the constitution."  Dkt. 214 at 17.  As a threshold

matter, Plaintiffs' allegations that Private Defendants took control of the Attorney General's office are not merely implausible; they are absurd.  For example, the Complaint alleges that the Attorney General's office told Derek Foran (NAF's attorney) that it would seek a protective order in the criminal proceeding before using materials subject to the *NAF* injunction.  Dkt. 1 ¶ 113.  The Complaint characterizes this communication as "shock[ing]" and infers from it that "Defendant NAF and Defendant PPFA closely directed and oversaw Defendant Becerra's selective prosecution." *Id.*  The inference of control drawn in the Complaint is preposterous.  Similarly, the allegation that Attorney General Becerra became Private Defendants' "puppet" because PPFA allegedly made a campaign contribution to Vice President Harris' Senate campaign (*id.* ¶ 99) is both implausible and non-cognizable as a matter of law.  *Boone*, 841 F.2d at 894-95 (holding contributions are "a legal and well-accepted part of our political process").

Furthermore, none of the authority Plaintiffs cite support a "usurpation" exception to the First Amendment right to petition.  *Hambarian v. Super. Ct.*, 27 Cal. 4th 826, 839 (2002), does not discuss the First Amendment.  It held a prosecutor's office need not recuse itself despite having an expert witness on its team paid for by the victim and who was the victim's expert in a related civil suit.  The alleged contacts between Private Defendants and the Attorney General are far more modest than the contacts blessed in *Hambarian* (see Section III, *infra*), and nothing in *Hambarian* suggests the victim could be held liable to the criminal defendant for damages based on alleged cooperation with the prosecutor.

Similarly, *County of Santa Clara v. Superior Court*, 50 Cal. 4th 35, 62 (2010), held prosecutors are permitted to delegate civil enforcement authority to private counsel on contingency fee.  Nothing about *County of Santa Clara* suggests that crime victims' communications with prosecutors are unprotected by the First Amendment.  Dkt. 214 at 18.

*Macko v. Byron*, 576 F. Supp. 875, 879 (N.D. Ohio 1983), stated in dictum that a person who conspires to give false testimony may be liable to a criminal defendant who is ultimately acquitted.  *Macko* does not concern allegations that a civil defendant overtook a prosecutor's office, and Plaintiffs have expressly disclaimed a claim based on a conspiracy to give false testimony.  Dkt 214 at 18.  Indeed, *Macko* is directly contrary to the Supreme Court's more recent decision in

1   *Rehberg v. Paulk*, 566 U.S. 356 (2012), categorically barring such conspiracy claims.

2          Finally, *Harman v. Valley National Bank of Arizona*, 339 F.2d 564, 566 (9th Cir. 1964), held

3   that an antitrust complaint alleging petitioning of the Attorney General should not have been

4   dismissed because petitioning "was but one element in a larger, long-continued scheme to restrain

5   and monopolize commercial banking."  Here, on the other hand, Plaintiffs' claim is based solely on

6   Private Defendants' alleged petitioning of the Attorney General, not a broader course of conduct

7   unrelated to their alleged attempts to influence the Attorney General.

8          Because advocating for enforcement of the law "fits squarely within the traditional mold of

9   a petition to government protected by the *Noerr–Pennington* doctrine," the Court should reject

10  Plaintiffs' attempt to recast petitioning activity as an illegal "usurpation" of state authority.

11  *Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 793 F.3d 85, 90 (D.C. Cir. 2015).

12  **II.     The First Amendment Protects Defendants' Petitioning to the Superior Court.**

13         **A.     The criminal complaint is not a sham.**

14         Plaintiffs argue that the complaint to the Superior Court is a sham because Defendants

15  subjectively "believed it lacked merit."  Dkt. 214 at 217.  In making this argument, Plaintiffs ignore

16  that "an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent."

17  *Prof'l Real Estate Inv'rs*, 508 U.S. at 57.  A litigation position is reasonable if it is supported by at

18  least a "good faith argument for the extension, modification, or reversal of existing law."  *White v.*

19  *Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) (internal quotation omitted).

20         Plaintiffs do not argue the criminal complaint falls below this minimal standard of

21  reasonableness. Plaintiffs' failure to address the objective prong is, by itself, sufficient to reject the

22  application of the sham exception.

23         Furthermore, none of Plaintiffs' arguments raise a plausible inference that Defendants do not

24  subjectively seek the "governmental result" of conviction.  *Kottle*, 146 F.3d at 1060.  First,

25  Plaintiffs state that "the thought of applying Cal. Penal Code § 632 to Plaintiffs only arose after

26

27

28

1   several other, more tenable, legal theories[4] proved" unsupported by facts.  Dkt. 214 at 17.  That

2   Defendants allegedly investigated multiple legal theories before pursuing a § 632 complaint is

3   consistent only with the notion that they want the prosecution to succeed.  Only someone

4   unconcerned with the success of the prosecution would indict on the first legal theory that came to

5   mind, even if it proved unsupported by the facts.

6        Second, Plaintiffs state "the prosecution could only succeed through fraudulent

7   misrepresentation of multiple facts."  Dkt. 214 at 17.  Plaintiffs, however, fail to identify even a

8   single example of a factual misrepresentation that would be necessary to support a conviction.

9   *Oregon Nat'l Res. Council v. Mohla,* 944 F.2d 531, 533 (9th Cir. 1991) (holding complaint must

10  plead "the specific activities" that support a *Noerr* exception).

11       Third, Plaintiffs contend that Penal Code § 632 has never been applied to a purported

12  "undercover investigative journalist" and that a conviction would violate California public policy

13  reflected in Penal Code § 633.5.  Dkt. 214 at 17.  However, as this Court has ruled in the context of

14  many of the same recordings that are the subject of the prosecution, neither Daleiden's alleged

15  status as a journalist nor Penal Code § 633.5 would prevent finding Daleiden guilty of violating

16  Penal Code § 632.  *PPFA v. CMP*, 480 F. Supp. 3d at 1011 (rejecting § 633.5 defense).

17       Finally, the Complaint itself alleges that Private Defendants' goal was to "***brand [Plaintiffs]***

18  ***as criminals***" by securing a conviction.  Dkt. 1 ¶ 82; *see also Hakopian v. Mukasey*, 551 F.3d 843,

19  842 (9th Cir. 2008) ("Allegations in a complaint are considered judicial admissions.").  Plaintiffs'

20  opposition attempts to backtrack from their admission by claiming the goal was to brand Plaintiffs

21  only in the "court of public opinion."  Dkt. 214 at 16.  The Complaint, however, alleges that Private

22  Defendants were attempting to draw a distinction between themselves and Plaintiffs on the grounds

23  that the courts had "thrown out charges against [Private Defendants] that we're criminals."  Dkt. 1

24  ¶ 82.  If Private Defendants' alleged goal is to draw a distinction between themselves and Plaintiffs

---

26  [4] Plaintiffs' opposition does not explain what other "legal theories" they believe were more tenable,
27  and the Complaint does not actually plead that other legal theories were considered.  Thus, the
    Court may also reject this argument on the grounds that an opposition to a motion to dismiss cannot
28  rely on facts outside the Complaint.  *Gray v. Hernandez*, 651 F. Supp. 2d 1167, 1182 (S.D. Cal.
    2009) (holding court may not consider new allegations raised in opposition memo).

on the grounds that the courts have "thrown out" charges of criminality against Private Defendants,

then that alleged goal can only be achieved if Daleiden is convicted in a court of law, not the court

of public opinion.

Because the Complaint contends that Defendants' subjective intent is to secure a conviction

and because Plaintiffs do not dispute the criminal complaint satisfies the minimal reasonableness

standard, the sham exception does not apply as a matter of law.

## B.    Plaintiffs fail to plead the fraud exception.

Plaintiffs contend that the fraud exception applies because Judge Hite expressed concerns

with the credibility of a StemExpress witness at the preliminary hearing.  Dkt. 214 at 16 (citing Dkt.

1 ¶ 125).  This allegation fails to establish the fraud exception for three reasons.

First, the credibility issue is not one that goes to the "very core" of the case.  *Thomas*, 2006

WL 5670938, at *9.  Judge Hite expressed a concern because the witness testified in the preliminary

hearing that Daleiden signed a non-disclosure agreement before recording her; whereas, in

StemExpress' civil suit, she testified that the agreement was sent to Daleiden after the recording.

Dkt. 89, Ex. 26 at 14.  That one credibility issue establishes, at most, an "isolated instance of

litigation misconduct," which is insufficient to "deprive the [prosecution] as a whole of its

legitimacy" as required to establish the fraud exception.  *Freeman v. Lasky, Haas & Cohler*, 410

F.3d 1180, 1185 n.1 (9th Cir. 2005).  Indeed, despite doubting this testimony, Judge Hite found

sufficient evidence to hold Daleiden to answer on the vast majority of charged counts.  Dkt. 89, Ex.

26 at 8-9.  Furthermore, the Court in StemExpress' civil case held that StemExpress provided

enough evidence to overcome an anti-SLAPP motion without relying on the non-disclosure

agreement.  Dkt. 88, Ex. 31 at 3-4.  Thus, whether StemExpress misstated when Daleiden received a

non-disclosure agreement is not something that could undermine the legitimacy of the entire

prosecution.

Second, Plaintiffs provide no factual support for the allegation "on information and belief"

that Defendants conspired with StemExpress to provide false testimony during the prosecution.

Dkt. 1 ¶ 125.  For example, the Complaint points to no other instance of allegedly false testimony

given by any other witness during the ten-day preliminary hearing or at any other time throughout

the course of the five-year-old criminal case.  Because Plaintiffs "provide little more than conclusory allegations to allege their conspiracy," these allegations are insufficient to establish the fraud exception.  *Tuggle v. City of Tulare*, No. 1:19-CV-01525-NON-ESAB, 2020 WL 3977892, at *3 (E.D. Cal. July 14, 2020).

Finally, the Supreme Court has held that false witness testimony is not a proper basis for a § 1983 claim and that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony."  *Rehberg*, 566 U.S. at 369; *see also id.* at 375 (stating the same rule applies to a "witness at a preliminary hearing").  Plaintiffs' opposition concedes this point and states that "**Plaintiffs[] Do Not Seek to Impose Liability Based on Witness Testimony.**" Dkt. 214 at 18.

Because Plaintiffs have not pleaded and cannot plead any exception to Private Defendants' First Amendment immunity, the Court should grant PPFA's motion to dismiss.

## III.   Private Defendants Did Not Act Under Color of State Law.

### A.   Plaintiffs misapply the "decisive step" test.

Plaintiffs contend that Private Defendants should be treated as state actors because Beth Parker sent an email to the Attorney General's office that was allegedly the "decisive step[]" in causing Daleiden's prosecution.  Dkt. 214 at 18 (quoting *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002)).  *Fox* does not support Plaintiffs' contention that a private person causing state action transforms the private person into a state actor.  To the contrary, the Ninth Circuit has confirmed that "[a] relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy."  *Radcliffe*, 254 F.3d at 783.

The "decisive step" test applies only if a private individual takes a decisive step in causing harm after "the State provided a mantle of authority that enhanced the power of the harm-causing individual actor."  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 192 (1988).  In *Fox*, for example, a private individual caused the wrongful conviction of her father by extracting a jailhouse confession from him in violation of the Sixth Amendment.  *Fox*, 312 F.3d at 445.  The Ninth Circuit held the daughter's visit to the jail was not attributable to the state because the state

1    merely acquiesced in the visit without initiating it.  *Id.* at 445.

2          As in *Fox*, there are no allegations that the State imbued Beth Parker with a mantle of state

3    authority.  Rather, Ms. Parker simply sent an email to a public official, which any ordinary citizen

4    with access to a computer is able to do.[5]

5          None of Plaintiffs' other allegations plausibly allege that the Attorney General provided

6    Private Defendants a mantle of authority turning them into state actors.  For example, Plaintiffs

7    allege that Private Defendants lied about Plaintiffs' conduct causing increasing threats of violence.

8    Dkt. 214 at 12.  But a person stating an opinion on the cause of violence does not imbue that person

9    with any state authority.  Moreover, the Ninth Circuit has already affirmed this Court's ruling that

10   Plaintiffs' conduct, in fact, did cause violence.  *NAF v. CMP*, 685 F. App'x 623, 626 (9th Cir. 2017)

11   ("After the release of the recordings, incidents of harassment and violence against abortion

12   providers increased, including an armed attack at the clinic of one of the video subjects that resulted

13   in three deaths").  Thus, Plaintiffs cannot plausibly allege that Defendants expressing their beliefs

14   about the effect of Plaintiffs' conduct to the Attorney General is so beyond the pale that it somehow

15   turns ordinary petitioning activity into illegal state action.  Moreover, even if Private Defendants'

16   allegations were false, "the mere act of filing false police reports is not actionable under § 1983."

17   *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

18         Similarly, Plaintiffs provide no cogent explanation of how Private Defendants asserting that

19   they comply with abortion regulations should result in Private Defendants being treated as if they

20   were prosecutors.  Private Defendants' compliance with abortion regulations is not even relevant to

21   whether Plaintiffs violated Penal Code § 632.  *PPFA v. CMP*, 480 F. Supp. 3d at 1011.  A criminal

22   defendant should not be permitted to sue his victim for damages any time his victim denies an

23   accusation that she committed a different crime or ethical violation.[6]

24   _____

25   [5] Moreover, Plaintiffs do not plausibly allege the email was the cause-in-fact of the prosecution.
     The email states that Ms. Parker believed "we are fully compliant with all federal and state laws are
26   investigating the situation.  Please feel free to reach out to me if you have any questions or
     concerns."  Dkt. 1 ¶ 81. Thus, the email does not even request prosecution of Daleiden.
27
     [6] Furthermore, Plaintiffs' assertion that a majority of the en banc Fifth Circuit has found one
28   Planned Parenthood affiliate—who is not a party to this case—violated the abortion regulations and

1      The only alleged misrepresentation that Plaintiffs cite relevant to determining whether

2   Daleiden violated Penal Code § 632 is that NAF allegedly told the Attorney General that

3   conversations at the 2014 NAF conference were confidential for purposes of Penal Code § 632.

4   Dkt. 214 at 12.  But, as discussed in Section I.B., *supra*, this is not a misrepresentation at all.  To the

5   contrary, Plaintiffs are collaterally estopped from denying that their conversations at the 2014 NAF

6   conference are "confidential" under Penal Code § 632.  *PPFA v. CMP*, 480 F. Supp. 3d at 1011.

7   Private Defendants' alleged advocacy of a correct interpretation of the law does not turn them into

8   state actors.

9      Finally, Plaintiffs cite a litany of conduct protected by Marsy's Law (Cal. Const., art. I, §

10  28(b)) and the First Amendment, such as meeting with officials, developing a list of "action items"

11  after the meeting, requesting an investigation, and coordinating with the Attorney General's office

12  on how the Superior Court should handle materials subject to the preliminary injunction in the *NAF*

13  case.  Dkt. 214 at 12.  But none of this alleged conduct is a form of state action.  While Plaintiffs

14  portray crime victims advocating for themselves as an illicit usurpation of state power, the Ninth

15  Circuit has rejected the notion that "crime victims should behave like good Victorian children—

16  seen but not heard."  *Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006).

17     If a person who petitioned the government could be treated as a state actor and sued for

18  damages any time that the petitioning was a "decisive step" in influencing official action, there

19  would no longer be a right to petition.  Because § 1983 is not intended to convert constitutionally

20  protected petitioning into a tort, the Court should grant PPFA's motion to dismiss.

21     **B.     Plaintiffs do not plausibly plead joint action.**

22     Under the "joint action" test, courts look to whether "the state has so far insinuated itself

23  into a position of interdependence with [the private entity] that it must be recognized as a joint

24  _____

25  ethical standards is false.  Dkt. 212 at 1.  There, the district court, on a preliminary injunction
    motion, found there was no factual support for Daleiden's accusations.  *Planned Parenthood of*
26  *Greater Texas Family Planning & Preventative Health Servs., Inc. v. Smith*, 236 F. Supp. 3d 974,
    990 (W.D. Tex. 2017).  The en banc Court reversed because individual patient plaintiffs lacked
27  standing.  *Planned Parenthood of Greater Texas Family Planning & Preventative Health Servs.,*
    *Inc. v. Kauffman*, 981 F.3d 347, 353 (5th Cir. 2020).  The majority expressly stated it did not reach
28  the merits of the accusations that the affiliate violated any laws or ethical standards.  *Id.*

1   participant in the challenged activity." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989).

2   Because crime victims advocating for themselves is to be encouraged, courts have repeatedly held

3   that "complaining to the police does not convert a private party into a state actor." *Id.* at 1155.

4   "Nor is execution by a private party of a sworn complaint which forms the basis of an arrest enough

5   to convert the private party's acts into state action." *Id.* (citing *Sims v. Jefferson Downs Racing*

6   *Ass'n, Inc.*, 778 F.2d 1068, 1078-79 (5th Cir. 1985)).

7          To establish "joint action" in the law enforcement context, "[t]he plaintiff must show that

8   the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person

9   merely because he was designated for arrest by the private party, without independent

10  investigation." *Sims*, 778 F.2d at 1079.  An arrest without an independent investigation "constitutes

11  an abdication of state authority to a private party that is sufficient to cause the private party's acts to

12  become state action." *Id.* (internal quotation omitted).  On the other hand, the prosecutor's

13  "exercise [of] independent judgment," breaks the connection between the private party's acts and

14  state action.  *Collins*, 878 F.2d at 1156.

15         Here, the Complaint alleges the exact opposite of a preconceived plan to arrest without

16  independent judgment or investigation.  The Complaint alleges Private Defendants began urging

17  Daleiden's prosecution as early as August 2015.  Dkt. 1 ¶ 85.  However, the Attorney General's

18  office did not file the criminal complaint until March 2017, after it had conducted *eighteen months*

19  of investigation.  *Id.* ¶ 66.  Furthermore, while the Complaint alleges the prosecution was motivated

20  by then-Attorney General Harris' alleged "patronage relationship" with Planned Parenthood, it

21  concedes that Harris *did not actually file any charges* against Daleiden in the sixteen month period

22  between the start of the investigation and her taking her Senate seat.  *Id.*  ¶ 105.  It was instead

23  Attorney General Becerra—who is not even alleged to be a "patron" of Private Defendants—who

24  actually charged Daleiden with a crime.  *Id.* ¶ 106.  Moreover, the Complaint does not allege that

25  Becerra had *any* contact with Private Defendants or any other role in the initial sixteen months of

26  the investigation, a period of time during which he was not even employed by the State of

27  California.  Under the facts alleged in the Complaint, the contention that Attorney General Becerra

28  charged Daleiden as part of a pre-conceived plan with Private Defendants without investigation or

1   independent judgment is utterly implausible.

2          Because the Complaint alleges that two separate Attorneys General took eighteen months to

3   investigate Daleiden's conduct before one charged him with a crime, Plaintiffs fail to plausibly

4   allege that Private Defendants engaged in "joint action" with the Attorney General.

5   **IV.     Section 1985(3) Does Not Protect a Class of One Anti-Abortion "Journalist."**

6          PPFA's moving papers established that § 1985(3) is narrower than § 1983 because it

7   protects fewer classes of people and only covers constitutional provisions directly applicable to

8   private parties.  Dkt. 88 at 34.  In particular, § 1985(3) does not protect the classes of people who

9   are either pro-choice or anti-abortion.  *See id.*

10         In response, Plaintiffs, classifying themselves as anti-abortion journalists, rely on the

11  "class-of-one theory" developed in § 1983 cases.  Dkt. 214 at 10.  Plaintiffs do not cite a single case

12  applying the class-of-one theory to § 1985(3).  Plaintiffs' arguments are thus totally non-responsive

13  to PPFA's arguments.  The Court should accordingly grant PPFA's motion for the reasons stated in

14  its moving papers.

15  **V.      Plaintiffs Do Not Plausibly Allege PPFA Attempted to Influence the Attorney General.**

16         PPFA's moving papers established that the Complaint does not plausibly allege a claim

17  against PPFA because "it fails to provide the name of any individual natural person employed by

18  PPFA who allegedly conspired with the AG to violate Daleiden's rights."  Dkt. 88 at 33.  In

19  response, Plaintiffs' opposition describes only the conduct of Beth Parker and an unnamed "senior

20  Planned Parenthood abortion provider."  Dkt. 214 at 6.

21         Beth Parker, however, is only alleged to be General Counsel "for several California Planned

22  Parenthood affiliates" and a former Chief Legal Counsel for PPAC.  Dkt. 1 ¶ 15.  Plaintiffs do not

23  allege Ms. Parker was ever employed by PPFA.  Moreover, the Complaint contains no factual

24  allegations that PPFA was involved in any way with Ms. Parker's interactions with the Attorney

25  General's office.

26         As to the unnamed senior abortion provider, the Complaint alleges only that this person filed

27  a complaint with the Pasadena Police Department, which resulted in no action by the Pasadena City

28  Attorney or Los Angeles County District Attorney.  Dkt. 1 ¶¶ 83-84.  The Complaint does not allege

-14-

that this individual attempted to influence the Attorney General, much less that she did so at the direction of PPFA.

Notably, the Complaint reveals that Plaintiffs have already obtained voluminous documents and other evidence of the Attorney General's investigative process through public records requests and discovery in the criminal case. Dkt. 1 ¶¶ 85-88, 90-92, 94-95, 97-101, 103-104, 109-112, 121, 123 (describing the Attorney General's communications and deliberations). It is no coincidence that the fifty-three page Complaint drafted after extensive discovery lacks any factual allegations describing PPFA's role in the Attorney General's decision to investigate and charge Daleiden. PPFA had no such role. Because Plaintiffs have not and cannot allege that PPFA had any role in the Attorney General's decision-making concerning Daleiden, the Court should dismiss the claims against PPFA without leave to amend.

## CONCLUSION

For the foregoing reasons, the Court should grant PPFA's motion to dismiss without leave to amend.

Dated: March 10, 2021                    ARNOLD & PORTER KAYE SCHOLER LLP


                                         By:   _/s/ Rhonda R. Trotter_____
                                               Rhonda R. Trotter
                                               Oscar Ramallo
                                               Laura Watson
                                               Attorneys for Defendant
                                               *Planned Parenthood Federation of America*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on March 10, 2021, the foregoing document was filed with the Clerk of the U.S. District Court for the Northern District of California, using the court's electronic filing system (ECF), in compliance with Civil L.R. 5-1. The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under Civil L.R. 5-1 to accept that Notice as service of this document.

Dated:  March 10, 2021

             */s/ Rhonda R. Trotter*
             Rhonda R. Trotter

PPFA'S REPLY ISO MOTION TO DISMISS COMPLAINT
3:20-CV-07978-WHO