UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR MEDICAL PROGRESS, et al., | Case No. 20-cv-07978-WHO |
| Plaintiffs, | **ORDER ON MOTIONS TO DISMISS OR STAY** |
| v. | Re: Dkt. Nos. 66, 72, 77, 79, 80, 81, 87, 88, |
| XAVIER BECERRA, et al., | 105, 171 |
| Defendants. | |

The California Department of Justice is prosecuting David Daleiden for alleged crimes stemming from conduct that was the subject of two civil cases in this court, one of which went to a jury verdict, the other of which I decided on summary judgment, both of which were decided against Daleiden and others and both of which are or will be on appeal.  This lawsuit by Daleiden and the Center for Medical Progress asserts eight causes of action essentially attacking the decision to prosecute him as unconstitutional.

Given the significant overlap between issues raised in the criminal state court proceedings, as well as those on appeal or soon on appeal to the Ninth Circuit in the related civil cases, *Younger* abstention applies.  To benefit from guidance those cases may provide, and for purposes of efficiency, I will stay proceedings in this case until the state court and Ninth Circuit proceedings have progressed further.

That said, to avoid unnecessary delay once the stay is lifted, I will decide the defendants' motions to dismiss based on the Complaint's deficiencies.   As explained below, I dismiss with prejudice the Fifth and Sixth Causes of Action because plaintiffs cannot allege that they are a "suspect" or "quasi suspect" class sufficient for a 42 U.S.C. § 1985(3) claim.  Defendants Diaz

and Caldwell are dismissed with prejudice as a result.  The remaining six causes of action are dismissed with leave to amend.  Once the stay is lifted in this case, plaintiffs will be able to file an amended complaint that addresses the defects identified in this Order and the impact of any relevant state court and Ninth Circuit rulings.

**BACKGROUND**

## I. CIVIL PROCEEDINGS IN FEDERAL COURT

The parties are intimately aware of the factual background in this and the two related civil cases.  In 2015, the National Abortion Federation (NAF) filed a lawsuit in this district against David Daleiden, the Center for Medical Progress (CMP), and others.  *NAF v. CMP et al*., Case No. 15-cv-03522 N.D.C.A. (*NAF* case).  In 2016, Planned Parenthood Federal of America (PPFA) and some of its affiliates filed their own lawsuit against Daleiden, CMP, and others in this district. *Planned Parenthood, et al. v. CMP et al*., Case No. 16-cv-0236 N.D.C.A. (*PPFA* case).  Both cases stemmed from Daleiden and CMP's actions misrepresenting their identities, securing access to PPFA and NAF conferences, and surreptitiously recording of PPFA and NAF staff and members.  Daleiden and CMP were acting as part of CMP's Human Capital Project (HCP), created to investigate and uncover evidence of PPFA and NAF members' and affiliates' alleged violation of federal laws regarding the collection and sale of fetal tissue.

The *PPFA* case went to trial.  On November 15, 2019, the jury entered a verdict finding that Daleiden, CMP, and other defendants were liable for trespass, breach of conference agreements, fraud, violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) and conspiracy to violate RICO, and violation of federal and various state recording laws (including violation of California Penal Code section 632).  *PPFA* case, Dkt. No. 1016.  On post-trial motions, I determined that Daleiden, CMP, and the other defendants' conduct violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.), denied defendants' post-trial motions, and entered judgment and a permanent injunction against the defendants. *PPFA* case, Dkt. Nos. 1074, 1116.  The jury's verdict and my decisions are now on appeal to the Ninth Circuit.

In the *NAF* case, I entered a preliminary injunction prohibiting Daleiden, CMP, and the

other defendants from disclosing recordings and any information they learned at the NAF

conferences.  *NAF* case, Dkt. No. 354.  Following the determination in the *PPFA* case that the

NAF conference agreements were breached by Daleiden, CMP, and others, NAF moved for entry

of judgment and a permanent injunction on its breach of contract claim under issue preclusion

principles.  On April 7, 2021, I granted that motion and subsequently entered judgment against

defendants and in favor of NAF and issued a permanent injunction.  Dkt. No. 723.  That order and

the judgment resolves all pending substantive issues in the *NAF* case.  There is no doubt that it

will be appealed.

## II.  STATE COURT PROCEEDINGS

On March 28, 2017, the California Department of Justice filed a fourteen-count criminal

complaint against Daleiden and an associate under California Penal Code Sections 632 and 182(a)

in San Francisco Superior Court, *People v. Daleiden*, No. 2502505 (the "State Prosecution").  In

October 2017, Daleiden sought discovery in support of the criminal defendants' belief that the

California Attorney General's Office was selectively prosecuting him and the other defendant after

colluding with Planned Parenthood Federal of America (PPFA), Planned Parenthood Affiliates of

California (PPAC), and its General Counsel, Beth Parker.[1]  State Defendants' Request for Judicial

Notice ("State RJN," Dkt. No. 83) Exs. S, T.[2]

On August 18, 2018, Daleiden moved to dismiss the criminal complaint on selective

prosecution grounds (alleging that the Attorney General "committed invidious discrimination by

bringing this case as a favor to a political ally—Planned Parenthood").  In the alternative, he

moved to recuse the California Attorney General because of the allegedly close relationship

between former Attorney General Harris with Planned Parenthood. State RJN, Ex. L (Motion to

Dismiss, *People v. Daleiden* August 20, 2018) at 1, 26.  The Hon. Christopher Hite, the judge

---

[1] The Planned Parenthood entities, Parker and the National Abortion Federation (NAF) are
collectively referred to as the "Private Defendants" in this Order.

[2] Defendants request that I take judicial notice of various court filings, discovery submissions, and
court transcripts from the federal civil actions and the state criminal proceedings.  *See* Dkt. Nos.
72-1 (Habig); 78, 80 (PPAC/Parker); 83 (State Defendants); 89 (PPFA); and 106 (NAF).  Those
requests are GRANTED.  I take judicial notice of the arguments made or considered, but not for
the truth of disputed facts therein.

United States District Court
Northern District of California

1   presiding over the prosecution in San Francisco Superior Court, denied the motion in full on

2   October 5, 2018.  State RJN, Ex. M (Hr'g Tr., *People v. Daleiden* Oct. 5, 2018) at 32-40.

3          On December 21, 2018, Daleiden filed a Petition for Writ of Mandate to the California

4   Court of Appeal seeking to set aside Judge Hite's October 5th Order denying his motion to

5   dismiss.  State RJN, Ex. E (Pet. for Writ of Mandate, *Daleiden v. Superior Ct*. of San Francisco

6   Cty., Dec. 4, 2018) at 1.  The Court of Appeal denied the writ on January 23, 2019, finding that

7   Daleiden "fail[ed] to establish an abuse of discretion by the superior court," and "fail[ed] to

8   demonstrate error in respondent's finding that his claim of discriminatory prosecution was

9   unsupported by the evidence."  State RJN, Ex. G (Order, *Daleiden v. Superior Ct. of San*

10  *Francisco Cty*., Jan. 23, 2019) at 1-2.

11         In January 2019, Planned Parenthood entities and NAF filed a motion to intervene in the

12  Superior Court proceedings to ensure that information about their staff or members were not

13  publicly disclosed in the preliminary hearing in *People v. Daleiden*.  State Supp. RJN, Dkt. No.

14  146, Ex. B (Feb. 14, 2019) at 18-19.  The Superior Court denied the motion to intervene "in the

15  traditional legal sense of the term" on February 14, 2019, but found that defendant entities had an

16  interest and a limited right to be heard under the California Constitution, Article I, Section 28,

17  known as "Marsy's Law." *Id*. at 19 n.4 & 20.

18         On March 29, 2019, Daleiden filed a writ of mandate in the California Court of Appeal

19  requesting review and a stay of the criminal proceedings.  State RJN, Ex. K (Pet. for Writ) at 6.

20  He challenged the defendants' attempt to intervene in the state court proceedings as well as the

21  constitutionality and application of Marsy's law by the superior court (characterizing it as "an

22  issue of first impression and of profound public importance").  *Id*. at 11.  He also argued the

23  evidence showed discriminatory prosecution given the alleged coordination between the Attorney

24  General's office and the Private Defendants here, and that recusal of the Attorney General was

25  required given former Attorney General Harris' connections to Planned Parenthood.  *Id*.  The

26  Court of Appeal summarily denied the writ on April 15, 2019.   State RJN, Ex. L (Docket,

27  *Daleiden v. Superior Ct. of San Francisco Cty*.).

28         Judge Hite held a preliminary hearing from September 3, 2019 to September 18, 2019.

United States District Court
Northern District of California

State RJN, Ex. M (Commitment Order, *People v. Daleiden* Dec. 6, 2019) at 1.  Following the preliminary hearing, Judge Hite issued a Commitment Order, finding that the People had met their probable cause burden and could proceed on Counts 1, 2, 3, 5, 6, 7, 10 and 11 of the Amended Complaint, alleging violations of California Penal Code Section 632(a). *Id.* at 8-9.

On April 30, 2020, Daleiden filed a motion to set aside the information under California Penal Code Section 995, claiming that the prosecution had failed to prove that there was probable cause and because he was entitled to an evidentiary hearing on his claim of discriminatory prosecution (based both the connections between the former Attorneys General and Planned Parenthood as well as Planned Parenthood and NAF's attempt to intervene in the lawsuit with the support of the AG under Marsy's law).  State RJN, Ex. N (Motion to Set Aside, *People v. Daleiden* Apr. 30, 2020) at 17-23.  The Court of Appeal denied Daleiden's writ in September 2020 and the California Supreme Court denied review in November 2020.

The State Prosecution is expected go to trial sometime in 2021.

## III.   THIS LITIGATION

On May 12, 2020, Daleiden and CMP filed this suit.[3]  Plaintiffs assert eight causes of action, each of which is related to the criminal prosecution against Daleiden in California Superior Court:  **First Cause of Action** "Free Speech—Overbreadth of Cal. Penal Code § 632 under 42 U.S.C. § 1983" asserted by plaintiffs against defendant former Attorney General Becerra, alleging that California Penal Code Section 632 categorizes so much protected speech as "criminal," it is unconstitutionally overbroad; **Second Cause of Action** "Free Speech—Content & Viewpoint Discrimination" under 42 U.S.C. § 1983, asserted by plaintiffs against defendant Becerra, alleging that California Penal Code Section 632.01 is unconstitutional on its face under the First Amendment, as together Sections 632 and 632.01 limit the ability of journalists and others to create images relating only to one particular activity: healthcare;[4] **Third Cause of Action** "Equal

---

[3] This case was filed originally in the Central District of California and transferred to the Northern District of California.  Dkt. No. 148.  It was subsequently deemed related to 15-cv-03522-WHO, *National Abortion Federation v. Center for Medical Progress* and reassigned to me.

[4] Cal. Penal Code 632.01 provides:
    (a)(1) anyone who violates Section 632(a) shall be punished pursuant to subdivision (b) if

United States District Court
Northern District of California

Protection & Due Process—The Daleiden Amendment" asserted by plaintiffs against defendant Becerra, alleging that Section 632.01 is illegal 42 U.S.C. § 1983 and unconstitutional on its face under the Fourteenth Amendment as the motivating purpose behind it was animus towards pro-life groups, and specifically animus towards plaintiffs; **Fourth Cause of Action**, "Equal Protection & Due Process—Invidious & Selective Prosecution" in violation of 42 U.S.C. § 1983, asserted by plaintiffs against Becerra, PPFA, PPAC, Parker, NAF, Harris, and Habig,[5] alleging that plaintiffs rights to Equal Protection and Due Process when they were invidiously and selectively prosecuted;

_____

the person intentionally discloses or distributes, in any, manner, in any forum. . . the contents of a confidential communication with a health care provider that is obtained" in violation of 632(a) of Section 632. . . .

(b) A violation of subdivision (a) shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per violation, by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

. . . .

(d)(1) Subdivision (a) does not apply to the disclosure or distribution of a confidential communication pursuant to any of the following:

(A) Any party as described in Section 633 acting within the scope of his or her authority overhearing or recording a confidential communication that he or she may lawfully overhear or record pursuant to that section.

(B) Any party as described in Section 633.02 overhearing or recording a confidential communication related to sexual assault or other sexual offense that he or she may lawfully overhear or record pursuant to that section, or using or operating a body-worn camera as authorized pursuant to that section.

(C) A city attorney as described in Section 633.05 overhearing or recording any communication that he or she may lawfully overhear or record pursuant to that section.

(D) An airport law enforcement officer recording a communication received on an incoming telephone line pursuant to Section 633.1.

(E) A party to a confidential communication recording the communication for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of a crime as specified in Section 633.5.

(F) A victim of domestic violence recording a prohibited communication made to him or her by the perpetrator pursuant to Section 633.6.

(G) A peace officer using electronic amplifying or recording devices to eavesdrop on and record the otherwise confidential oral communications of individuals within a location when responding to an emergency situation that involves the taking of a hostage or the barricading of a location pursuant to Section 633.8.

(2) This section does not affect the admissibility of any evidence that would otherwise be admissible pursuant to the authority of any section specified in paragraph (1).

_____

[5] Another defendant, StemExpress, was named in the Fourth and Fifth Causes of Action but was voluntarily dismissed by plaintiffs on June 15, 2020.  Dkt. No. 49.

United States District Court
Northern District of California

1  **Fifth Cause of Action** "Violation of 42 U.S.C. § 1985(3)" by plaintiffs against defendants

2  Becerra, PPFA, PPAC, Parker, NAF, Harris, and Habig for conspiring to have Daleiden

3  prosecuted in violation of his constitutional right to equal protection as a member of his own class

4  of one; **Sixth Cause of Action** "Violation of 42 U.S.C. § 1986" asserted by Daleiden against

5  Agents Cardwell and Diaz based on the California Department of Justice Agents' failure to stop

6  violations of Daleiden's and CMP's rights through the conspiracy of the other defendants;

7  **Seventh Cause of Action** "Declaratory Relief—Purpose of Recording Under Sections 632 and

8  633.5" asserted by plaintiffs against defendant Becerra, and seeking a declaration regarding

9  plaintiffs' right to record based on a reasonable belief to uncover illegal activity; and the **Eighth**

10  **Cause of Action** "Supremacy Clause: Preemption of Cal. Penal Code §§ 632, 632.01" asserted by

11  plaintiffs against defendant Becerra for the laws alleged undermining of the objectives of the

12  Federal False Claims Act with respect to health care centers.

13  Defendants Becerra and Harris are former California Attorney Generals.  Harris and

14  Becerra are alleged to have used their former positions to facilitate the prosecution of Daleiden in

15  retaliation for the content of his and CMP's videos by the Financial Fraud and Special

16  Prosecutions unit of the Attorney General's office.  *Id*. ¶¶ 66, 85, 106, 108.[6]  Defendants Diaz and

17  Cardwell are California Department of Justice agents who are alleged to have been members of

18  the team tasked with investigating, preparing, and serving the search warrant of Daleiden's home,

19  despite their alleged knowledge that the warrant was not supported by probable cause, was not

20  being sought in good faith, and should not have issued.  *Id*. ¶¶ 102-103.

21  Becerra, Harris, Diaz and Cardwell (collectively, the "State Defendants") move to dismiss,

22  arguing that I should: (i) abstain under the *Younger* doctrine to avoid interfering with the ongoing

23  state criminal proceedings; (ii) dismiss the selective prosecution claims as barred by the *Rooker-*

24  *Feldman* doctrine; and (iii) stay this matter under the *Colorado River* doctrine as the pending state

25  court criminal proceedings and the civil proceedings in the *Planned Parenthood v. CMP* case on

26

27

---

28  [6] Harris is sued only in her "personal capacity" and Becerra only in his "official capacity."
Compl. ¶¶ 12, 18.  Becerra, however, is no longer the California Attorney General.  After the stay
is lifted, plaintiffs may amend to name the current California Attorney General.

United States District Court
Northern District of California

1    appeal are likely to have preclusive effect on this case.  Dkt. No. 81.  They further contend that

2    plaintiffs' claims must be dismissed because they are (iv) time-barred and (v) fail to state claims

3    under the Fourth through Sixth Causes of Action (alleging selective prosecution in violation of

4    equal protection under 42 U.S.C. § 1983, conspiracy to violate constitutional rights under 42

5    U.S.C. § 1985(3), and violation of 42 U.S.C. § 1986) because Harris and Becerra are entitled to

6    absolute prosecutorial immunity and because plaintiffs do not fall with a protected class for their

7    equal protection claim under Section 1983 or a suspect class under Sections 1985(3) or 1986.

8         Defendant Jill Habig is a former Special Assistant California Attorney General who is

9    alleged to have worked and conspired with the other State Defendants to have the Attorney

10   General's office prosecute Daleiden in retaliation for the content of his videos.  *Id.* ¶¶ 19, 85.

11   Habig moves to dismiss the claims asserted against her (the Fourth and Fifth Causes of Action for

12   selective prosecution and conspiracy in violation of Section 1985(3)), arguing that the claims are

13   time-barred, her prosecutorial acts are immune, and plaintiffs fail to adequately allege what role

14   she played in the conspiracy.  Dkt. No. 72.

15        Defendants Planned Parenthood Affiliates of California (PPAC, the "umbrella group" for

16   seven Planned Parenthood franchises located in California) and Beth Parker (General Counsel for

17   several California Planned Parenthood affiliates, and through early 2018 the Chief Legal Counsel

18   of PPAC), are alleged to have worked and conspired with California Attorney General's office to

19   selectively prosecute Daleiden in order to prevent release of the CMP videos and cover up their

20   alleged violations of federal law with respect to the sale of fetal tissue.  *Id.* ¶¶ 14-15, 75.

21   PPAC/Parker move to dismiss the claims asserted against them (the Fourth and Fifth Causes of

22   Action for selective prosecution and conspiracy in violation of Section 1985(3)) as barred by the

23   *Rooker-Feldman* doctrine because Daleiden has asserted and continues to argue the selective

24   prosecution defense in the state court criminal proceedings.  Dkt. No. 77.  PPAC/Parker also move

25   to dismiss because the selective prosecution and conspiracy claims are not and cannot be

26   sufficiently pleaded on plausible facts.  Dkt. No. 79.

27        Defendant Planned Parenthood Federal of America (PPFA) is alleged to have directed and

28   participated in the Attorney General's selective prosecution of plaintiffs in order to suppress

8

evidence of PPFA's affiliates' violation of federal laws regarding the sale of fetal tissue.  Compl. ¶ 113.  PPFA moves to stay this case under *Younger* abstention, under the Court's inherent discretion, and under the *Pullman* doctrine with respect to Daleiden's challenge to California Penal Code § 632.01.  Dkt. No. 87.  PPFA also moves to dismiss the two causes of action asserted against it (the Fourth and Fifth Causes of Action for selective prosecution and conspiracy), arguing that PPFA's alleged conduct is protected by the First Amendment, Daleiden fails to allege facts showing that the non-governmental actors engaged in state action or controlled the prosecution of Daleiden, and Daleiden is not in a suspect class protected by Section 1985(3).  Dkt. No. 88.

Defendant National Abortion Federation (NAF) is alleged to have communicated with and provided false information to California Department of Justice agents to encourage the State Defendants' selective enforcement of the California Penal Code section 632 against plaintiffs and to silence plaintiffs' speech and prevent release of the videos.  *Id*. ¶¶ 100, 113-114.  NAF moves to dismiss the two causes of action asserted against it (Fourth and Fifth Causes of Action for selective prosecution and conspiracy) because plaintiffs have failed to allege facts supporting NAF's conspiracy with the State Defendants, Daleiden is not a member of a suspect class protected under Section 1985(3), and plaintiffs cannot meet the heightened pleading standard to challenge NAF's right to petition under the First Amendment.  Dkt No. 105.

## DISCUSSION

## I.    MOTIONS TO ABSTAIN AND DISMISS OR STAY

The State Defendants and PPFA move to dismiss or stay, arguing that I lack jurisdiction over and should abstain from ruling on plaintiffs' claims under the *Younger* doctrine.  Dkt. Nos. 81 (State Defendants' Motion to Dismiss or Abstain); 87 (PPFA Motion to Stay).

*Younger* abstention "is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism."  *San Jose Silicon Valley Chamber of Com. Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008) (citations omitted).  Federal courts "must abstain under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from

litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, *i.e.*, would interfere with the state proceeding in a way that *Younger* disapproves." *Id*. at 1092.

There are exceptions to *Younger*. The Tenth Circuit in *Phelps v. Hamilton*, 59 F.3d 1058 (10th Cir. 1995) described *Younger* abstention as inappropriate where plaintiffs show that the state court proceedings are: "(1) [] frivolous or undertaken with no reasonably objective hope of success,[] (2) [] motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights, [] and (3) [] conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Id*. at 1065 (internal citations omitted). Exceptions to *Younger* abstention, however, are "narrow" and a plaintiff "must provide something more than conclusory allegations that the state proceeding is the product of bad faith or harassment." *Scarlett v. Alemzadeh*, 19-CV-07466-LHK, 2020 WL 3617781, at *5 (N.D. Cal. July 2, 2020).

The State Defendants argue that I should abstain from hearing and dismiss or stay all of the claims asserted against them – the constitutional, declaratory relief, and preemption challenges to California Penal Code Sections 632, 632.01, and 633.5, as well as the selective prosecution and conspiracy claims – because addressing those claims would interfere with the pending state court criminal proceedings that implicate important interests of California in enforcing its criminal laws, because plaintiffs have raised their constitutional concerns in state court, and because their request for declaratory and injunctive relief will directly interfere with the criminal proceedings. PFFA asserts that I should abstain from hearing and dismiss or stay the claims asserted against the Private Defendants –the Fourth and Fifth causes of action for selective prosecution and conspiracy – because plaintiffs seek damages against the Private Defendants for their alleged participation in the criminal prosecution. PPFA contends that allowing these claims to proceed would not only interfere with the ongoing prosecution but also impact the ability and willingness of witnesses to testify in the state court proceedings, effects the *Younger* doctrine exists to avoid. PPFA Mot. at 18-19.

Plaintiffs do not dispute that the four *Younger* abstention factors have been established by

United States District Court
Northern District of California

defendants. *See San Jose Silicon Valley*, 546 F.3d at 1091. Instead, they argue that bad-faith exceptions to *Younger* abstention apply because the criminal case was a selective prosecution based on invidious discrimination to silence their protected but disfavored pro-life speech. Dkt. No. 212. Plaintiffs contend that they have adequately alleged bad faith because two local prosecutors were encouraged to file criminal charges against Daleiden for recording abortion providers but did not.[7]

There is no dispute that the criminal charges the Attorney General filed against Daleiden were tested on an evidentiary basis in the State Prosecution. The majority of the charges survived the preliminary hearing before Judge Hite. As a result, the typical bad-faith exception to *Younger* abstention does not apply. *See, e.g.*, *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) ("In the *Younger* abstention context, bad faith 'generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'" (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6 (1975)).

In addition, Daleiden's selective prosecution theory has been tested in state court. He has argued twice that the criminal proceedings should be dismissed based on that basis. He also repeatedly asserted that the Attorney General should recuse given the close relationship between former Attorney General Harris and Planned Parenthood and the acts of the Attorney General's office facilitating PPFA and NAF's alleged control of the criminal prosecution. Both of those attempts were unsuccessful at trial court and were rejected on writ petitions by the state appellate court. Given this undisputed procedural history, plaintiffs cannot meet the high burden to show that the typical "bad faith exception" to *Younger* applies.

Plaintiffs argue that they fall within a different bad faith exception to *Younger*, alleging that the criminal case was brought in retaliation for or to "deter constitutionally protected conduct." The cases they rely on show why this exception is inapplicable. In *Cullen v. Fliegner*, 18 F.3d 96, 101 (2d Cir. 1994), the Second Circuit affirmed the district court's denial of a stay

---

[7] Compl. ¶¶ 84, 89, 95 (alleging that local prosecutors did not file criminal complaints against Daleiden despite police reports made in Pasadena and Los Angeles regarding Daleiden's recording of an abortion providers in those two cities).

United States District Court
Northern District of California

1    under *Younger* and its issuance of an injunction against disciplinary proceedings that sought to

2    impose discipline against a teacher who allegedly violated school district policies in his attempt to

3    influence a school board election.  The panel concluded that the district court was within its

4    discretion to determine that the disciplinary proceedings were brought in retaliation for the

5    exercise of plaintiff's First Amendment right to protest the school board elections.  The extensive

6    factual allegations showed the "past history of personal conflict" between the parties, that the

7    district's desire "to do something about" plaintiff rose to the "level of animus," and that the

8    disciplinary hearing followed prior actions against the teacher (including other charges, hearings,

9    and imposition of fines).  There is no such history of past retaliatory or retributive actions by the

10   California Attorney General's office or its agents against plaintiffs here.  *See also Masterpiece*

11   *Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1241-1242 (D. Colo. 2019) (*Younger* exception

12   applied given well-pled allegations of a second, successive proceeding "sufficient to establish

13   [state defendants] are pursuing the discrimination charges against Phillips in bad faith, motivated

14   by Phillips' suspect class (his religion).").[8]

15         In *Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988), the district court's determination that

16   the bad faith *Younger* exception applied was affirmed where there was significant evidence

17   showing that the prosecutors (aided by the state court judge) initiated charges against an attorney

18   because of his race, because he had vigorously defended his clients in other matters, and because

19   the defendants were attempting to (and did) thwart plaintiff's campaign for state office against a

20   their political ally.  *Id*. at 1110-1113.  There are no similar allegations of a history of retaliation for

21   prior protected conduct.  The sole prosecution here stems from the past recordings.  There is no

22   allegation of race-based or other class-based discrimination.  The allegations are solely that the

23   charge was brought because of plaintiffs' disfavored speech.

24         Finally, while plaintiffs argue that their challenge to Section 632.01 as facially

25   unconstitutional triggers yet another *Younger* exception, they do not plead and do not attempt to

26

27   _____

     [8] Significantly, plaintiffs plead no similar facts regarding a history of past retaliatory conduct or
     retributive actions against plaintiffs despite having received discovery on their selective
28   prosecution theories in the state court proceedings.

show in opposition that they can argue in good faith that Section 632.01 is unconstitutional in every possible respect.[9]  They instead assert that Section 632.01 is facially unconstitutional in every application because it requires law enforcement to determine whether a published undercover recording discloses a "communication with a healthcare provider," and is therefore a content-based regulation of speech that must but cannot meet strict scrutiny.  Dkt. No. 212 at 12-13.

Plaintiffs cite no apposite caselaw in support.  Numerous laws require government employees in general and law enforcement personnel specifically to consider the content of speech to determine if a Penal Code or other statutory provision might regulate it, such as, to determine whether speech constitutes a criminal threat or whether writings falsely portray someone as a member of law enforcement.[10]  Simply because government officials have to consider the content of speech to determine whether a specific Penal Code provision applies does not necessarily make those laws content-based regulations subject to strict-scrutiny.  But even if it did, that different laws address different types of criminal speech in different circumstances does not make them facially invalid for "under-inclusivity" or unconstitutional in every possible application.[11]

In sum, taking plaintiffs' allegations as true along with judicially noticeable facts regarding the arguments and rulings made in the state court criminal proceedings, *Younger* abstention applies. None of the *Younger* exceptions are applicable.

The question then becomes whether to dismiss or stay the claims.  Plaintiffs argue that if

---

[9] This exception covers only "flagrantly and patently" unconstitutional statutes: a statute must be unconstitutional in every "clause, sentence and paragraph, and in whatever manner" it is applied is "very narrow."  *Dubinka v. JJ. of Super. Ct. of State of Cal. for County of Los Angeles*, 23 F.3d 218, 225 (9th Cir. 1994).  It may not be utilized "if the constitutionality of the state statute is unclear or if the statute may be applied constitutionally in some cases."  *Id.*

[10] For example, California Penal Code section 538d prohibits using a writing to falsely portray someone as law enforcement officer.

[11] The State Defendants argue that plaintiffs lack standing to challenge the constitutionality of Section 632.01 because they have not been charged with violation that section in the criminal proceedings and fail to allege facts showing that they will reasonably be in danger of prosecution under that law in the future (given their repeated defense of their undercover recordings as having taken place where no reasonable expectation of confidentiality could exist).  I need not reach this argument now.

United States District Court
Northern District of California

no *Younger* exception applies, because the Fourth through Sixth Causes of Action seek damages those claims cannot be dismissed but must be stayed.  *See Herrera v. Cty. of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019) (noting the district court dismissed claims for injunctive and declaratory relief, but stayed damages claims).  During the hearing on these motions, plaintiffs and some of the defendants agreed that in light of the number of issues involved and the potential impact of the state court or Ninth Circuit proceedings on the scope of the claims that may be left in this case given those proceedings, a stay is more appropriate than outright dismissal under *Younger*.  I agree.[12]

Each set of defendants also moves to dismiss the claims asserted against them under Rule 12(b)(6), arguing that some of the claims and related defendants must be dismissed with prejudice based on immunity or as barred under applicable statutes of limitations.  They also contend that the bulk of the claims asserted against them must be dismissed for failure to allege plausible facts in support.  To avoid unnecessary delay, I will address these arguments now.

## II.    MOTIONS TO DISMISS

### A.    State Defendants' Motion to Dismiss

The State Defendants move to dismiss all of plaintiffs' Section 1983 claims as time-barred given that plaintiffs sought and secured discovery in the state court proceedings in October 2017 to support Daleiden's selective prosecution theories that underlie each of the Section 1983 claims here.  They also move to dismiss the Fourth through Sixth Causes of Action because the former

---

[12] Given my conclusions that a stay is appropriate under *Younger*, I need not reach the defendants' other grounds for a stay or for dismissal.  *See* Dkt. Nos. 77, 81, 87.  However, a stay under the *Colorado River* doctrine would be appropriate, given the desire to avoid piecemeal litigation, that state law provides the rule of decision on some of the claims arising from and being litigated in the state court proceedings, that the state forum can adequately address and protect plaintiffs' federal rights, and given the importance of avoiding the existence or appearance of forum shopping.  *See R.R. St. & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011).  A stay is also appropriate under *Pullman* abstention, as the California proceedings may address defendants' right to petition under Marsy's law given plaintiffs' arguments regarding selective prosecution that have been raised in the state court proceedings.  *See Smelt v. County of Orange*, 447 F.3d 673, 679 (9th Cir. 2006).  Finally, a stay is also appropriate under my inherent discretion to promote the orderly course of justice and given the lack of any prejudice to plaintiffs (who themselves moved to stay this case earlier on other grounds).  *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

At this juncture, I decline to reach the argument that *Rooker-Feldman* requires dismissal.  That argument may be revisited after the stay is lifted.

United States District Court
Northern District of California

Attorney General defendants (Harris and Becerra) are absolutely immune for their prosecutorial conduct (Fourth COA) and because plaintiffs fail to allege that they are members of a protected class for purposes of their equal protection claim (Fourth COA) and cannot allege they are members of a suspect or quasi-suspect class for their Sections 1985(3) and 1986 claims (Fifth and Sixth COAs). Dkt. No. 81-1.

### 1.    Time-Barred

Both sides agree that the statute of limitations for the constitutional selective prosecution claims is two years. The State Defendants contend that the facts underlying plaintiffs' selective prosecution theory were known by October 2017, when Daleiden moved to compel discovery in the State Prosecution to show the alleged "symbiotic relationship" between the State Defendants and the Private Defendants in support of his selective prosecution theory and attempt to recuse the Attorney General. This means that plaintiffs necessarily had adequate notice or a reason to suspect the facts underlying their selective prosecution theories in October 2017 and that their Section 1983 claims should have been filed no later than October 2, 2019. The State Defendants also separately contend that the very latest that Daleiden had all of the information relevant to his Section 1983-based selection prosecution claims was on May 10, 2018, when Daleiden replied to the prosecution's opposition to the state court motion to compel discovery. That would mean that the claims here should have been filed no later than May 10, 2020. Because this case was filed on May 12, 2020, the State Defendants argue that the claims are barred as a matter of law.

Both of those arguments are facially persuasive. In response, plaintiffs attempt to split their selective prosecution theory into two separate claims. The first, the "speech-based claim," is based on the theory that the State Defendants and Private Defendants were motivated to infringe Daleiden's right to free speech. The second, the "class-based claim," is based on the theory that the State Defendants retaliated against plaintiffs as a pro-life adversary. Dkt. No. 213. Plaintiffs contend that the facts underlying their speech-based claim were not discovered until August 31, 2018, when the Attorney General admitted in the state court proceedings that the charges against Daleiden were pursued because the CMP videos were "edited to enhance their shock value, and published online." Compl. ¶¶ 108, 177. Daleiden contends that it was not until that date that he

15

discovered he was singled out based on the content of the videos.[13]

Defendants respond, first, that the speech-based claim is not a separate claim because it simply recasts Daleiden's basic theory – asserted in October 2017 – that he was prosecuted in order to punish his politically disfavored speech. They also contend that Daleiden's new argument – that it was not the pro-life content of the videos, but instead the allegation that the videos were misleadingly edited, that caused his prosecution– is specious and wholly unsupported by any fact or allegation in the Complaint. Given the current state of the pleadings, defendants are correct.

Plaintiffs admit that they were on notice of the class-based claim given their motion to compel and assertions of selective prosecution in state court. Nevertheless, they argue that they may still pursue the class-based claim under the "continuing violations" theory, as the State Defendants continue to pursue the prosecution. Dkt. No. 213 at 5-6. But the continuing violations theory does not apply where the harm alleged stems from the same prosecution. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) ("However, this court has repeatedly held that a 'mere 'continuing impact from past violations is not actionable.'" (quoting *Grimes v. City and County of San Francisco*, 951 F.2d 236, 238–39 (9th Cir.1991)); *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) ("But in determining when an act occurs for statute of limitations purposes, we look at when the "operative decision" occurred [], and separate from the operative decisions those inevitable consequences that are not separately actionable."). Without new acts creating new harm, the continuing violations theory lacks merit.

Accordingly, the motion to dismiss the Section 1983 selective prosecution claims are DISMISSED as barred by the statute of limitations. Plaintiffs, however, are given leave to amend

---

[13] Plaintiffs rely on *U.S. v. P.H.E., Inc*., 965 F.2d 848, 854 (10th Cir. 1992), but that case does not help them. There the court addressed "whether the First Amendment right to be free from pretextual criminal prosecutions, brought not by a desire to enforce the law, but by a desire to pressure a defendant into surrendering First Amendment rights, can be vitiated by requiring a defendant to await post-trial vindication." Here, given the rulings by the state courts flatly rejecting plaintiffs' selective prosecution claims (and there is no contention that the state courts *themselves* are biased against plaintiffs), there is no ground to argue it is a wholly "pretextual criminal prosecution." In addition, unlike here, in *P.H.E.*, there was "substantial evidence of an extensive government campaign, of which this indictment is only a part, designed to use the burden of repeated criminal prosecutions to chill the exercise of First Amendment rights." *Id*. at 855. Under those limited and rare circumstances the Tenth Circuit was persuaded that *Younger* should not apply. There is no similar showing here.

United States District Court
Northern District of California

United States District Court
Northern District of California

once the stay is lifted.  If plaintiffs want to pursue their new two-pronged claim, they need to allege it.  Defendants' argument that both claims are barred because defendants were on reasonable notice of them has at least some facial merit.  But plaintiffs may have an opportunity to lay out their theories in an amended complaint along with plausible facts that would support their lack of reasonable notice.

### 2. Prosecutorial Immunity

State Defendants Becerra and Harris separately move to dismiss the Fourth Cause of Action for "selective prosecution" because they are entitled to absolute prosecutorial immunity for their acts as former California Attorneys General.

Generally, the Supreme Court has explained that a selective prosecution claim:

> [I]s not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.  Our cases delineating the necessary elements to prove a claim of selective prosecution have taken great pains to explain that the standard is a demanding one. These cases afford a "background presumption," [] that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims.

*U.S. v. Armstrong*, 517 U.S. 456, 463–64 (1996).  Therefore, prosecutions have a "presumption of regularity" and "in the absence of clear evidence to the contrary," courts presume that they have properly discharged their official duties.  *Id*. at 464.  In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Given Judge Hite's probable cause determination in the criminal case, prosecutorial immunity applies as a matter of law to Harris and Becerra.

Harris and Becerra acknowledge that prosecutors are not entitled to immunity for administrative and investigative functions.  But plaintiffs allege no facts regarding Harris or Becerra's conduct in investigating plaintiffs; the only facts alleged are related to their decision to file and pursue the state court criminal complaint.  Accordingly, their prosecutorial actions are absolutely immune from damages. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also*

United States District Court
Northern District of California

1    Compl. ¶¶ 182-187 (referring repeatedly to acts of "prosecution").  Because neither Harris nor

2    Becerra is currently the California Attorney General, they cannot provide the injunctive relief

3    plaintiffs seek either.  For those reasons, the Becerra and Harris must be dismissed in full.

4            Plaintiffs do not dispute that Harris and Becerra are immune for their prosecutorial

5    decisions but argue that they seek to hold these two liable for their investigative functions.

6    Relying on *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), where a prosecutor was not

7    immune from claims that he allegedly fabricated evidence during the investigation, plaintiffs

8    contend that their Fourth Cause of Action is "based on Defendants Harris, Habig, and Becerra's

9    involvement in the investigative process, initiated by the PPAC and NAF Defendants' conduct and

10   joint action, that culminated in the prosecution of Daleiden." Dkt. No. 213 at 8.  The problem is

11   that this new "investigatory" theory is not actually alleged in the Complaint.  It is wholly

12   unsupported by the existing allegations that focus exclusively on *prosecutorial* acts by Harris and

13   Becerra.[14]

14           Plaintiffs also argue that prosecutions based on arbitrary classifications directed against a

15   particular class of persons may be unconstitutional and that prosecutors may be liable despite

16   prosecutorial immunity.  They rely on settled Supreme Court precedent recognizing that

17   "'arbitrary classification[s] directed so exclusively against a particular class of persons' are

18   unconstitutional and violate 42 U.S.C. § 1983." Dkt. No. 213 (quoting *U.S. v. Armstrong*, 517

19   U.S. 456, 464 (1996)).  But Daleiden identifies no "class" to which he belongs other than his

20   profession as a journalist and his pro-life beliefs.  Neither of those suffice.  *See, e.g., Armstrong*,

21   517 U.S. at 464-65 (requiring a defendant to demonstrate "that the administration of a criminal

22   law is 'directed so exclusively against a particular class of persons'" based on "an unjustifiable

23   standard such as race, religion, or other arbitrary classification" such that "the system of

---

24

25   [14]  The only allegation in the Complaint that might come close to the "fabrication" situation
     recognized in *Buckley* is plaintiffs' allegation that unidentified defendants knowingly and willfully
26   conspired to suppress information about Cal. Penal Code § 633.5 from unidentified magistrates
     and those defendants "instructed" unidentified investigators in the Attorney General's office to
27   ignore this critical statutory element.  Compl. at ¶ 179.  This allegation is not sufficient as alleged.
     Leave to amend is granted so plaintiffs can identify the specific defendants involved and facts
28   plausibly showing their direct role in that alleged conduct.

United States District Court
Northern District of California

prosecution amounts to 'a practical denial' of equal protection of the law." (internal quotations and citations omitted)).  Plaintiffs' allegations – accepted as true – that Daleiden is the first journalist to be charged for violation of Section 632 and that he was charged *only* because of his pro-life politically disfavored speech are not the types of suspect classifications that would clear the high hurdle of prosecutorial immunity.  If Daleiden could point to a pattern of California Attorney Generals not charging pro-choice journalists for similar conduct or only charging pro-life journalists, that result might be different.  But being the admitted first does not – on this record – create a plausible inference that his profession as a pro-life journalist is an arbitrary or otherwise suspect classification that led to his selective prosecution in violation of Section 1983.

Therefore, the Fourth Cause of Action is DISMISSED.  Once the stay is lifted, plaintiffs have leave to amend to attempt to allege facts regarding Harris and Becerra's personal conduct with respect to the investigation of plaintiffs and to name the current California Attorney General for purposes of their injunctive relief claim.[15]

### 3.    Suspect or Quasi-Suspect Class

The State Defendants move to dismiss the Fifth and Sixth claims (under Sections 1985(3) suspect-class denial of equal protection and conspiracy under Section 1986) given plaintiffs failure to allege that they are within a "suspect" or "quasi-suspect" class.  State Defendants rely on Supreme Court and Ninth Circuit precedent that require evidence of racial- or class-based animus or other recognized categories of "invidious discrimination."  As those cases demonstrate, Daleiden's theory that he was singled out as a journalist or for his pro-life beliefs cannot, as a matter of law, state an actionable claim under Section 1985(3).  *See Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) (noting section 1985(3) has been extended "beyond race only when the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights.' [] More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect

---

[15] The State Defendants also move to dismiss the Fourth Cause of Action based on a "class of one theory." Dkt. No. 81-1 at 20-21.  In opposition, plaintiffs clarified their "class of one" theory was not relevant to the selective prosecution claim, but only to their Section 1985(3) claim. Dkt. No. 213 at 11.  As discussed below, that claim is dismissed with prejudice.

United States District Court
Northern District of California

classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection."); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) (rejecting opposition to abortion as a protected class "alongside race discrimination, as an 'otherwise class-based, invidiously discriminatory animus' covered by the" section 1985(3) and explaining whatever "may be the precise meaning of a 'class' for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors."); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1537 (9th Cir. 1992) (noting that neither "a transitory coalition of state representatives," nor a class of "Holocaust revisionists," nor "individuals who wish to petition the government" fell "within the meaning of section 1985 because neither group has been singled out for special federal protection, neither legislative nor judicially crafted.").

Plaintiffs respond that they can bring a section 1985(3) claim as a "class of one."  They rely on *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011), where Section 1983 equal protection claims based on allegations that individuals were "irrationally singled out" were addressed.  However, neither of those cases addressed a section 1985(3) claim and plaintiffs provide no Ninth Circuit or Supreme Court authority supporting an extension of Section 1985(3) protections to a similarly situated "class of one" like Daleiden.  Plaintiffs' Fifth Cause of Action under Section 1985(3) claim is DISMISSED with prejudice.

The Sixth Cause of Action likewise fails as a matter of law.  This cause of action is asserted only against Agents Diaz and Cardwell under Section 1986, alleging that the agents conspired to violate Section 1985(3) when they refused or failed to prevent the "wrongs conspired to be done under Section 1985 as alleged in Plaintiffs' Fifth Claim for Relief."  As this claim is tethered only to the dismissed Section 1985(3) claim, it and agents Diaz and Cardwell are DISMISSED with prejudice.

The State Defendants' motion to dismiss based on the statute of limitations and prosecutorial immunity is GRANTED with leave to amend.  The motion to dismiss the Fifth and

Sixth Causes of Action, and defendants Diaz and Cardwell, is GRANTED with prejudice.

### B.      Habig's Motion to Dismiss

The other state defendant, Jill Habig, is alleged to have served as a Special Assistant Attorney General and Special Counsel to former-Attorney General Harris from 2013 to 2016, and from 2016 to 2017 is alleged to have served as Harris' campaign manager for U.S. Senate. Compl. ¶ 19.  Plaintiffs sue Habig in her personal capacity as a defendant under the Fourth and the now-dismissed with prejudice Fifth Cause of Action.  I am dismissing the Fourth Cause of Action for invidious and selective prosecution with leave to amend, as discussed above.  Once the stay is lifted, plaintiffs can attempt to plead theories and facts against Habig to allege a viable theory of unconstitutional conduct occurring during the investigation of Daleiden in order to avoid the statute of limitations, as they can against Harris and Becerra.  *See supra*.

Therefore, Habig's motion to dismiss is GRANTED.  The Fifth Cause of Action is DISMISSED with prejudice and the Fourth Cause of Action is DISMISSED with leave to amend.

### C.      Private Defendants' Motions to Dismiss for Pleading Failures

Each set of Private Defendants – PPFA, PPAC/Parker, and NAF – also moves to dismiss for pleading failures.  The only claims asserted against the Private Defendants are the Fourth and Fifth Causes of Action.  As noted above, the Fifth Cause of Action has been dismissed with prejudice for all defendants.  The Fourth Cause of Action has also been dismissed for all defendants, but with leave to amend so that plaintiffs can attempt to plead around the statute of limitations and state a plausible claim against defendants Harris, Becerra, and Habig.  If plaintiffs cannot cure the deficiencies identified against those three, the Private Defendants cannot be separately liable for acting in concert with them.

However, even if plaintiffs attempt to cure the deficiencies with their claims against Harris, Becerra and Habig, their claims against the Private Defendants may still founder based on the Private Defendants' arguments that: (i) the Private Defendants' alleged conduct is First Amendment activity protected under the *Noerr-Pennington* doctrine[16] and plaintiffs have not

---

[16] Under the *Noerr–Pennington* doctrine, "[t]hose who petition government for redress are generally immune from [] liability."  *Professional Real Estate Investors, Inc. v. Columbia Pictures*

alleged plausible facts showing the sham exception to that doctrine applies; and (ii) plaintiffs have not alleged sufficient facts plausibly supporting that Private Defendants' acts were taken under color of state law or that the State Defendants allowed Private Defendants unbridled authority over the investigation or prosecution of Daleiden.[17]  I will not delve deeply into these arguments now, but plaintiffs are advised to plead facts that support of application of the *Noerr-Pennington* sham exception as well as facts showing that the Private Defendants and Harris, Becerra and Habig agreed to work together to violate plaintiffs' constitutional rights through the investigation or prosecution of Daleiden.

## CONCLUSION

This case is STAYED as a matter of *Younger* abstention.  The Fifth and Sixth Causes of Action, and defendants Diaz and Cardwell, are DISMISSED WITH PREJUDICE now.  The remaining claims are DISMISSED WITH LEAVE TO AMEND.  The dismissal with leave to amend is stayed until further order.  Once the stay is lifted – after the state court and Ninth Circuit proceedings are either final or have progressed sufficiently to provide guidance on plaintiffs' remaining claims – plaintiffs will be given reasonable time to file an amended complaint that addresses the deficiencies identified in this Order.

**IT IS SO ORDERED.**

Dated: May 7, 2021

William H. Orrick
United States District Judge

---

*Indus., Inc.*, 508 U.S. 49, 56 (1993).  "The doctrine immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies." *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).

[17] Private individuals "cannot be liable unless they conspired or acted jointly with state actors to deprive the plaintiffs of their constitutional rights." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).  However, a "relationship of cause and effect between the complaint and the prosecution is not sufficient, or every citizen who complained to a prosecutor would find himself in a conspiracy. The plaintiffs must provide evidence of 'an agreement or meeting of the minds to violate constitutional rights.'"  *Id*. at 783–84 (quoting *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir.1989) (en banc)).