Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Orrick, Judge

```
CENTER FOR MEDICAL PROGRESS,   )
et al.,                        )
                               )
          Plaintiffs,          )
                               )
  VS.                          )      NO. C 20-07978 WHO
                               )
XAVIER BECERRA, et al.,        )
                               )
          Defendants.          )
_____)
```

San Francisco, California
Wednesday, March 24, 2021

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**:  (via videoconference)

For Plaintiff:

        DHILLON LAW GROUP LLP
        177 Post Street - Suite 700
        San Francisco, California  94108
     **BY:  MARK P. MEUSER, ATTORNEY AT LAW**

        THOMAS MORE SOCIETY
        309 West Washington Street - Suite 1250
        Chicago, Illinois  60606
     **BY:  PETER C. BREEN, ATTORNEY AT LAW**

For Defendant Jill Habig:

        KEKER, VAN NEST & PETERS LLP
        633 Battery Street
        San Francisco, California  94111
     **BY:  ERIN E. MEYER, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
        United States District Court - Official Reporter

**APPEARANCES:**   (cont'd, via videoconference)

For Defendant Planned Parenthood Federation of America:

ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street - 44th Floor
Los Angeles, California  90017
BY:  **OSCAR D. RAMALLO, ATTORNEY AT LAW**
**RHONDA R. TROTTER, ATTORNEY AT LAW**
**LAURA E. WATSON, ATTORNEY AT LAW**

For Defendant National Abortion Federation:

TADJEDIN THOMAS & ENGBLOOM LAW GROUP LLP
6101 West Centinela Avenue - Suite 270
Culver City, California  90230
BY:  **WENDY M. THOMAS, ATTORNEY AT LAW**

For Defendant Planned Parenthood Affiliates of California:

SPERTUS, LANDES and UMHOFER
1990 South Bundy Drive - Suite 705
Los Angeles, California  90025
BY:  **MATTHEW D. UMHOFER, ATTORNEY AT LAW**

For Defendants Xavier Becerra, Kamala Harris, Brian Cardwell
and Reye Diaz:

OFFICE OF THE ATTORNEY GENERAL
1300 I Street - Suite 125
Sacramento, California  95814
BY:  **DIANA ESQUIVEL, ATTORNEY AT LAW**
**VICKIE P. WHITNEY, ATTORNEY AT LAW**

1   <u>**Wednesday - March 24, 2021**</u>                    <u>**2:07 p.m.**</u>

2                    **P R O C E E D I N G S**

3                        ---oOo---

4       **THE CLERK:**  We will go ahead and proceed then in Case

5   Number 20-7978, Center For Medical Progress versus Becerra, et

6   al.

7       Counsel, if you would please state your appearance for the

8   record.

9       **MR. MEUSER:**  Mark Meuser on behalf of Plaintiff.  With

10  me also is Peter Breen on behalf of the Plaintiff.

11      **MS. THOMAS:**  Good afternoon, Your Honor, Wendy Thomas

12  on behalf of Defendant National Abortion Federation.

13      **MS. WHITNEY:**  Good afternoon, Your Honor, Vickie

14  Whitney from the Attorney General's Office on behalf of the

15  State Defendants, Becerra, Harris, Cardwell, and Diaz.

16      **MR. RAMALLO:**  Good afternoon, Your Honor, Oscar

17  Ramallo on behalf of Planned Parenthood Federation of America,

18  and also with me Rhonda Trotter and Laura Watson.

19      **MR. UMHOFER:**  Good afternoon, Your Honor, Matthew

20  Umhofer on behalf of Planned Parenthood Affiliates of

21  California and individual Beth Parker.

22      **MS. MEYER:**  Good afternoon, Your Honor, Erin Meyer

23  from Keker, Van Nest & Peters on behalf of Defendant Jill

24  Habig.

25      **MS. ESQUIVEL:**  Good afternoon, Your Honor, Diana

1   Esquivel also on behalf of the State Defendants.

2          **THE COURT:**  Great.

3      Good afternoon to all of you and welcome back to many of

4   you.

5      The -- I have -- let me go through my tentative with

6   respect to the --

7                    (Pause in the proceedings.)

8          **THE COURT:**  You wouldn't want that.  That would be a

9   bad thing.

10     So the -- let me go through the doctrines that have been

11  argued, and then I will go to the specific classes of action.

12     *Younger* seems clearly to apply in this case, and the four

13  requirements are met.  The bad faith exemption does not apply,

14  I don't think, because the majority of the counts survive the

15  preliminary hearing.

16     The selective prosecution theories were denied by Judge

17  Hite and have been denied on the writs.

18     Most of the causes of action implicate Section 632 or

19  selective prosecution, and that's at the heart of the case or

20  it's being litigated in the criminal case.

21     I also think *Colorado River* applies to avoid piecemeal

22  litigation and to avoid forum shopping and making sure that the

23  correct law provides the rule of decision.

24     I think *Pullman* is also implicated regarding Marsy's Law

25  because that could play into the decisions in the criminal

1    matter regarding selective prosecution.

2         I also think just with respect to my inherent power, it

3    does make sense to me that a good portion of this case, if not

4    the whole thing, ought to be stayed until we know what is going

5    to happen in the Ninth Circuit, when we know what is going to

6    happen in the criminal case.  And so it is going to impact this

7    case, I think, pretty substantially.

8         Finally, *Rooker-Feldman*, I think, does not currently apply

9    at the moment.  There has been no direct appeal of the

10   selective prosecution argument so that you could have a final

11   judgment in state court.

12        So that's -- that is sort of -- those are overarching

13   arguments that need to be addressed.

14        When I look at the fourth cause of action for selective

15   prosecution, the prosecutorial immunity defenses seem strong

16   and ripe.

17        And the question in my mind is whether the case should be

18   dismissed without leave or whether leave as to that cause of

19   action is appropriate to allow the Plaintiffs to flesh out

20   their claims.

21        The fifth and sixth causes of action, again, I don't think

22   1985(3) applies to journalists or pro-life classes as alleged

23   or even a class of one based on those characteristics.

24        I think you need race or another suspect class, which

25   isn't -- and could be alleged.  And so those causes of action

1   might be dismissed without leave.

2        The others are the issue with *Younger* is whether to stay

3   or dismiss the claims.  With respect to 632-01, there hasn't

4   been an argument -- at the moment there is nothing in the

5   complaint that shows that there is no good-faith basis to argue

6   that it is unconstitutional in every possible respect.

7        There has been no opposite case law provided.  I'm not

8   sure that there could be because I think there are lots of

9   cases where law enforcement has to interpret speech to see if

10  the penal code applies.

11       And then there are, I think, in a number of other ways,

12  there are facts that are -- would need to be further alleged in

13  order for the causes of action to survive; but I'm not inclined

14  at the moment to go through rounds of pleading on that until we

15  have more information from the courts that are dealing with

16  this issue right now, which is the Ninth Circuit and more

17  especially the San Francisco Superior Court.

18       So that's my -- that's my analysis of things.  And,

19  Mr. Breen or Mr. Meuser, I think the ball should start with you

20  to address any of those issues that you are concerned about.

21       **MR. MEUSER:**  Thank you, Your Honor.  This is Mark

22  Meuser with the Dhillon Law Group.

23       Peter and I kind of have this argument split, and he said

24  that I should go first; and he will clean up whatever I missed.

25       But to start off with, Plaintiffs had made a motion to

1   stay a few weeks ago.  So if this -- if Your Honor does feel

2   like he wants to just stay everything, Plaintiffs will be in

3   the position that, you know, we would agree with that.

4        Let's let what happens in the Ninth Circuit, let's let

5   what happens in the criminal court take place.  And then we can

6   come back and clean up any of the pleadings with the evidence

7   and all that.

8        Regarding the one issue that you mentioned that is -- that

9   Peter -- that I'm expected to address is the issue of

10  prosecutorial immunity, and we do believe that any problems

11  with pleading can be cleaned up in an amended complaint and

12  would request the ability to do so.

13       I think we raised the argument in the complaint -- I mean,

14  in our responses regarding when equal protection will bring --

15  will take you out of a prosecutorial immunity.

16       Also, things regarding investigation are -- there is no --

17  it is not an absolute immunity regarding the aspects of

18  investigation.  That went on.  And we can clean up the

19  pleadings to further specify those actions.

20       **THE COURT:**  All right.  Thank you.  Mr. Breen, do you

21  have anything more that you would like to add?  You do.  So,

22  I'm looking forward to it.

23       **MR. BREEN:**  Yes, Your Honor, and thank you for hearing

24  us today.

25       Your Honor started with *Younger* and that -- that is a good

1   place to start.

2       You know, the parties had had a bit of a dispute there and

3   elsewhere about this issue of bad faith.  You know, we would

4   respectfully contend that we have alleged that sufficiently and

5   that the decision -- you know, the issues in front of Judge

6   Hite -- and this goes to several points -- you know, his

7   decision on *Murgia* and *Eubanks* is a different decision and of a

8   different character than what we are looking at here to some

9   extent in terms of seeking, you know, injunctive and other

10  relief on the basis of selective prosecution.

11      And while, Your Honor, we understand your -- the idea that

12  632 may be -- is at the heart of some of our claims, the idea

13  that selective prosecution, of course -- one can allege and

14  prove a selective prosecution even if one is convicted of the

15  actual underlying crime, which we -- certainly hasn't happened

16  here but it can occur.

17      And certainly the basis of the targeting and the First

18  Amendment violations doesn't require an analysis into 632, one

19  way or another.

20      As well -- and I don't know if Your Honor -- I had wanted

21  early on to take on this idea that we didn't have standing to

22  raise the 632.01 claims.

23      And I just -- I did want to make sure -- I don't know if

24  Your Honor -- where the Court was looking at that or if the

25  Court was looking at that to rule.

1      **THE COURT:**  I wasn't looking at standing.  I just -- I

2   didn't think that you had been able to state a claim

3   specifically with respect to it, and I don't -- I don't think

4   you can.

5      I'm thinking that you are not going to be able to because

6   the -- you have to show that there is -- it's unconstitutional

7   in every respect, and I just -- that's -- that just seems

8   unlikely to me, but I wasn't saying that you had the inability

9   to raise the issue.

10      **MR. BREEN:**  Okay, okay, because that was something

11   that the State Defendants had urged; that we were unable to

12   raise it.  And, of course, the law was specifically targeted at

13   our client.  So it seems a little odd that he would not be able

14   to challenge that on the First Amendment grounds.

15      And, Your Honor, I think we laid out in our papers that

16   certainly the -- you know, it is overbroad, and that is a way

17   under the First Amendment to take out an entire statute.  I

18   know we have put that in our papers more distinctly.

19      And, Your Honor, I understand -- I hear the Court's ruling

20   on the Colorado -- the tentative on the Colorado River issues.

21   You know, we have covered that for the most part in our briefs.

22      And, Your Honor, we had -- we had felt that the issues

23   here were distinct enough from the criminal court and the other

24   cases that have been pending that we are able to proceed.

25      Really this -- because of what we have been talking about

here being really more the process and less about the substance

in the selective prosecution area, and then as well with the

632.01 being a unique -- that's a new area.  Nobody anywhere in

any of the cases that are pending is covering it.

So even that being able to proceed, even if everything

else -- and we don't concede it -- but even if everything else

were somehow properly -- it was a proper extension argument, I

don't see why 632.01 couldn't continue certainly because of

the -- I mean, it's in effect right now.

No other Court has -- is considering the issue nor has it

anywhere in the country as far as we can -- as far as we know.

And let's see.  And, Your Honor, I hear the Pullman

abstention argument under Marsy's Law.  And, Your Honor,

that -- that particular defense, it seems ancillary to the

issues that are at bar here when, you know, that -- certainly

it was raised in the criminal case; but it is the sort of thing

that was -- that is, it might have a bearing here.

But it really -- it wouldn't have a bearing on -- we

wouldn't see it having a bearing on the investigation part,

really the majority of the process leading up into the, you

know, pre-criminal proceedings, you know, which is where you

would see the Marcy's Law -- where Marcy's Law came up in the

criminal court was really in that part where we were trying to

figure out what can a -- you know, what can an alleged victim

do without actually becoming the prosecutor in the courtroom

1  where both NAF and Planned Parenthood had actually sought to

2  intervene directly into a criminal case, which we thought was

3  extraordinary and unconstitutional and raised that issue with

4  Judge Hite and he limited their involvement.

5       He didn't limit it enough, you know, by our position; but

6  certainly that part of the fact pattern here doesn't

7  predominate anywhere over the rest of the majority of the facts

8  that are at issue.

9       And, Your Honor, understanding your inherent power, you

10  know, Mr. Meuser has stated that, you know, at the end of the

11  day, we are the ones who came in front of you asking for a stay

12  a month or two ago.

13       So certainly it would be difficult for us to then oppose a

14  stay of at least some reasonable length now that we are here a

15  few -- a month or two later.  So I certainly -- that was the

16  position there.

17       Then let's see, the immunity defense Mr. Meuser covered.

18  And, Your Honor, we laid out in our papers, obviously the case

19  law on this business of the 1985, sub 3, that is -- that is a

20  unique, unique area.

21       But it is something that we would contend when you are

22  dealing with a First Amendment attack, so the -- when the

23  Plaintiff was targeted based on his speech and activity, as we

24  have seen here, under that basis, class of one as well, that

25  that appears to be allowed based on the case law that we have

 1  found, again sparse.

 2      And so there is nothing -- there is nothing preventing it,

 3  and there is no reason to throw us out on that -- on that

 4  front.

 5      And I know Your Honor urged that maybe future -- maybe we

 6  would put off to another day the issue of whether we can get

 7  further facts -- factual allegations, which we would be glad to

 8  add in a variety of ways, as Your Honor sees fit.

 9      And you said your tentative against *Rooker-Feldman* -- and

10  we agree with that obviously, so we will -- if the Defense

11  wants to come after it, we will address that after they are

12  done there.

13      Standing we have taken care of.  I just want to make sure

14  we covered the waterfront as best we can so.

15      And, Your Honor --

16                  (Pause in proceedings.)

17      **MR. BREEN:**  I would say some of these I don't know --

18  I don't know if Your Honor addressed our points about

19  *Masterpiece* and *Cullen* and others; but, again, we would stand

20  on those cases in our briefs.  We think they are the better of

21  the line of argument for those particular points.

22      So, but, again, we can respond to anything the Defense

23  wants to raise.

24      **THE COURT:**  All right.  Thank you, Mr. Breen.

25      All right.  For the Defendants who -- who would like to go

1    first?

2            **MR. UMHOFER:**  Your Honor, this is Matthew Umhofer on

3    behalf of Planned Parenthood Affiliates and Parker.

4        I appear to have, at least based on the tentative, the

5    short stick.  My job was to argue *Rooker-Feldman*.  So I would

6    like to talk a little bit about that because I think that -- I

7    think there is a significant *Rooker-Feldman* issue here.  And,

8    of course, it goes to the Court's subject matter jurisdiction.

9        If *Rooker-Feldman* applies here, the Court doesn't have

10   jurisdiction to enter even a stay.

11           **THE COURT:**  So let me be clear about what I'm

12   thinking.  I think *Rooker-Feldman* could as well be implicated

13   in this case, but there is no final decision yet on -- on

14   selective prosecution.  So I think that -- that I -- I think I

15   need to wait before I make any determination.

16       And then there is, of course, the arguments that Mr. Breen

17   makes that this is a separate kind of an issue that -- than is

18   faced in state court.

19           **MR. UMHOFER:**  Understood, Your Honor.  So what I heard

20   the Court say at the outset is that there is no direct appeal

21   here and there is no final decision.  And what I want to

22   suggest to the Court is that neither of those is apply -- is

23   required here.

24       What is required is a de facto appeal.  That is that the

25   Defendant -- the criminal Defendants -- here, the Plaintiffs --

lost in state court and are now coming to federal court to
vindicate rights that they couldn't get vindicated in state
court.

That is precisely what has happened here.  The selective
prosecution issue was raised on more than one occasion within
the context of the criminal case.

The First Amendment issue was raised on more than one
occasion.  There were adverse decisions there.

And in here, what the -- what the Plaintiffs seek to do is
have a district court step in to a -- whether it is a final
decision or an ongoing situation -- a situation where they are
losing, and they want the federal court to reverse the state
court.  That is the definition of a de facto appeal.

And the Ninth Circuit has been quite clear in case over
case that it agrees with the other circuits; that even when the
decision on the State side is not final, even when it is
interlocutory in nature, which is the best case scenario for
the Plaintiffs on the selective prosecution issue,
*Rooker-Feldman* can and does apply.

And so when you look at *Worldwide Church*, when you look at
*Keene versus Cass* and you look at *Doe versus Napolitano*, all of
those were interlocutory situations.

And the Court said in *Worldwide Church of God*, the Ninth
Circuit, we agree with the Second and Fifth Circuits that the
*Feldman* doctrine should apply to State judgments even though

1   the state court judgments are not final.

2       And so I think that that language requires this Court to

3   not defer the question of *Rooker-Feldman* until later but to get

4   to the heart of the question here, which is, is this a de facto

5   appeal.  The answer is, absolutely, yes, it is because they

6   lost repeatedly on the State side on these very issues using --

7   using the very same kind of language in the arguments they made

8   there that are in this complaint.

9       And now here we are.  They are trying to get this Court to

10  step in and reverse that.  And then the only other question if

11  it is a de facto appeal is whether the issues are inextricably

12  intertwined with the State proceeding.  And, of course, they

13  are.

14      And the only way for them to get the relief that they are

15  seeking in that prayer for relief, the first four paragraphs,

16  all of which are seeking injunctions, to stop the state court

17  in particular from enforcing 632, which would absolutely have

18  the effect of reversing the state court's decisions because

19  they have been trying to stop the state court proceeding for

20  more than a year, I believe.

21      They have been filing motion after motion.  They have lost

22  every single one, and they come to this court and they say:  We

23  want you to enjoin the enforcement of the very statute we are

24  being charged with.

25      I think we are squarely in the category of *Rooker-Feldman*.

1   I don't think that we can avoid focusing on it and trying to --

2   and having the Court plumb its jurisdiction here, which I think

3   the Court is obligated to do, just because there is no final

4   decision because the Ninth Circuit has made it clear that even

5   when the decisions aren't final, *Rooker-Feldman* can apply.

6       I would be happy to answer any questions the Court has or

7   address any of the other decisions the Ninth Circuit has made

8   on this, all of which I think come down in favor of applying

9   *Rooker-Feldman* and a conclusion that there is no subject matter

10  jurisdiction here.

11          **THE COURT:**  All right.  Thank you.

12          **MS. ESQUIVEL:**  Your Honor --

13          **MS. MEYER:**  Your Honor -- sorry.  Go ahead, Diana.

14          **MS. ESQUIVEL:**  Okay.  I was going to go next, since we

15  are talking about abstention and Mr. Umhofer went.

16      So, I just want to briefly address the *Younger* abstention

17  and not to belabor that, in terms of Mr. Breen's reference to

18  *Masterpiece*, we did address that in our reply distinguishing

19  that because the allegations here do not parallel those to the

20  *Masterpiece* case in the sense that you had two individuals

21  there that -- one was brought up on charges; whereas the other

22  individual that engaged in almost the identical conduct was

23  not, for the Court to determine that the Plaintiff in

24  *Masterpiece* was being singled out.

25      You don't have those similar allegations in the complaint

1   here.

2       The Plaintiffs reference these various other four

3   undercover activities that occurred; but as we point out in our

4   reply, there is nothing to indicate there that any individual

5   intended those communications to be confidential as required

6   under Penal Code Section 632.

7       The other thing I just want to just briefly address is the

8   constitutionality of Penal Code Section 632.01.

9       We agree with the Court that this is not the correct forum

10  to address whether the statute is proper.

11      As we asserted in our reply, not only do Plaintiffs

12  lack -- Plaintiffs lack standing because they have not alleged

13  that they are at risk of any type of harm or being prosecuted

14  under 632.01.  They have not alleged that they intend to engage

15  in such conduct.

16      I understand Mr. Breen's position because they have

17  alleged that this section was adopted in response to the

18  Plaintiffs' conduct, there have been no allegations that they

19  have been threatened to be prosecuted under that section or

20  that they even engaged in conduct that falls under the scope of

21  632.01.

22      So the constitutionality of that statute simply is not

23  proper for this Court to take up because it is not ripe, and

24  the Plaintiffs don't have standing to address that.

25      So if the Court has any other questions on *Younger*, I will

1  be happy to address that; but I just wanted to briefly address

2  those issues raised by Counsel.

3          **THE COURT:**  All right.  Thank you.

4          **MR. RAMALLO:**  Your Honor, may I be heard on the First

5  Amendment issues?

6          **THE COURT:**  You may.

7          **MR. RAMALLO:**  Thank you.  So, for PPFA we believe the

8  Court should dismiss the claims against PPFA and other private

9  Defendants now rather than staying the case and waiting for

10 either the Ninth Circuit or the superior court.

11      And I'm going to tell you why you don't need to and why it

12 wouldn't be a good idea to wait for them.

13      The basic background is the First Amendment says private

14 parties have the right to petition the Government to enforce

15 the laws.  That is generally immunized unless their petitioning

16 is beyond the pale unreasonable.

17      And that reasonableness is judged from the standard at the

18 time that the petitioning occurred.

19      So, if you are asking about the Ninth Circuit, it is

20 correct that the Ninth Circuit may give us more guidance on

21 whether PPFAs or the other private Defendants' position on

22 Penal Code 632 is correct; but that is not going to be

23 dispositive in any way on the first amended petition at issue

24 here.

25      All of the petitioning occurred obviously before any

1  future Ninth Circuit decision.  And it is very clear now that

2  PPFAs and other private Defendants petitioning was reasonable.

3       We have a jury verdict that said that Mr. Daleiden

4  violated the penal code.  Your Honor affirmed that jury

5  verdict.  Judge Hite also found that there was probable cause

6  on most of the charges against him.

7       So we believe right now on this point, that alone allows

8  you to dismiss PPFA and other private Defendants.

9       With respect to the superior court, the superior court is

10  going to whether the prosecution engaged in a selective

11  prosecution or was motivated by bad faith versus some other

12  inappropriate reason.

13       But the superior court is not going to address what PPFA

14  did, what NAF did, what other private Defendants did.  That is

15  something that is only at issue in this court.  And the Court

16  can resolve that now.  It makes sense to resolve those now.

17  They can be done on the pleadings.

18       There are no factual issues that Plaintiffs are going to

19  be able to plead around given the reasonableness of the

20  petitioning activity and our interest in having a speedy

21  resolution of the case and not having us -- having a lawsuit

22  hanging over our heads where we are accused of violating

23  someone's civil rights wrongfully.

24       So for that reason, we believe the Court should grant

25  PPFA's motion to dismiss on the First Amendment now without

1   waiting for any other proceedings.

2          **THE COURT:**  Thank you, Mr. Ramallo.

3          **MS. MEYER:**  Your Honor, this is Erin Meyer for

4   Defendant Jill Habig.

5      I did want to address one issue that I don't believe you

6   covered in your tentative.  We had moved to dismiss the fourth

7   and fifth causes of action as time barred.  We think that they

8   fall beyond the statute of limitations, and I would love to

9   present the Court with some argument on that or if you have

10  specific questions, I can answer them.

11         **THE COURT:**  You can.  I would be -- if I was going to

12  be, you know, ruling on this as a normal motion to dismiss

13  without thinking about the other doctrines that apply, I would

14  dismiss on the statute of limitations ground.  And I would give

15  leave to amend.

16     And the problem that most defendants have with -- on the

17  first complaint when you are dealing with a motion to dismiss

18  is that leave is freely given.  And this case is no different.

19     So unless there was an impossible to plead around -- and I

20  do think the issue for your client may be one of those -- but

21  it's -- for prosecutorial immunity, it is not for the statute

22  of limitations it seems to me.

23         **MS. MEYER:**  Your Honor, I would just respond to say

24  that, you know, I do think in many cases a motion to dismiss

25  the first complaint on a statute of limitations theory might be

appropriate if it were going to be dismissed to be dismissed with leave to amend.

I think this is a pretty remarkable case, however. Because in their opposition, the Plaintiffs have conceded that they obviously knew about their causes of action, about their theory of this case as of fall 2017, and at the very latest as of May 10th, 2018, which is beyond the two-year statute of limitations that we are dealing with here.

So I don't think this is a place where the Plaintiffs are going to be able to plead around the statute of limitations when they have admitted that they knew about all of the facts that we raised in our motion well before the two-year mark before they filed their complaint.

You know, Your Honor, in -- and I think this applies to all of the Defendants; but with respect to my client, Ms. Habig, in particular, we provided the Court with a chart, you know, where 9 of the 11 e-mails that the Plaintiffs are relying on in their initial complaint, we have proven that they had access and they had possession of those e-mails more than two years before filing in this case.

And they don't dispute that.  They don't dispute that those -- that the criminal pleadings are appropriate for judicial notice before this Court.

And I certainly haven't seen in their opposition any -- any proposed facts that they think they could plead that would

 1  get them beyond the statute of limitations.

 2      The legal argument that they make in response to our

 3  argument with respect to the continuing violations doctrine

 4  are -- you know, we think lack merit.

 5      I don't know if the Court had any questions about that;

 6  but under Ninth Circuit precedent, the Plaintiffs, in fact,

 7  cite in *RK Ventures* the maintenance of a prosecution is not a

 8  continuing violation.  It is simply a continuing impact that

 9  doesn't -- doesn't rescue a claim from a statute of limitations

10  defense.

11      I don't see a way in which the Plaintiffs could plead

12  around, and I do think this is the unusual case in which

13  granting a motion to dismiss on statute of limitations grounds

14  without leave to amend would be appropriate.

15          **THE COURT:**  Thank you.

16          **MS. MEYER:**  And as to the issue with my client in

17  particular on prosecutorial immunity -- Ms. Whitney, we had

18  coordinated beforehand on those issues.  So I do want to let

19  Ms. Whitney address the issue of prosecutorial immunity and

20  maybe it would make more sense for her to do that.

21      And then I have some very brief comments about my client's

22  specific situation.  So maybe that would make the most sense in

23  terms of efficiency.

24          **THE COURT:**  Thank you.

25          **MS. WHITNEY:**  Thank you, Your Honor, Vickie Whitney on

behalf of the State Defendants.

I have the issue of prosecutorial immunity here.  So, I know the Court's concern is whether that could be something that they could amend around as well.

And I don't think so because it would be like rewriting history.  If you look at the very title that they have affixed to the fourth claim, it is that of invidious and selective prosecution.  It has nothing to do with investigation.

And every allegation in the complaint, as we have pointed out in the reply -- and there were more than those that I just pointed out -- it involves the prosecution itself.

And that is their alleged constitutional injury.  If they try to amend to say it was the investigation itself, there are a couple of significant issues that arise.

One of which is they are rewriting history then.  And that is something that with all the allegations in the complaint, we are probably far beyond that.

The second issue would concern the statute of limitations itself which Ms. Meyer has addressed; that you can't go back in time well beyond the two-year period within which they should have filed the claim -- the complaint here.

So on those two bases they simply can't just rewrite history now and call it something other than what they have named it in the fourth claim which is invidious and selective prosecution.

1    It is the prosecution that is the basis of their

2   constitutional injury here, and that is also borne out by the

3   relief that they are requesting in their complaint.

4    If you look at the causes of action alleged against

5   Attorney General -- I should say now -- Secretary Becerra, they

6   are all to enjoin the prosecution of Daleiden and to enjoin the

7   enforcement of Section 632.

8    They have nothing to do with the investigation.  It has to

9   do with the prosecution.

10    So, their ability to amend around prosecutorial immunity

11   to try and fit it within their definition here is just

12   something that is not feasible.

13    And so we would request that that prosecutorial immunity

14   be upheld and that that fourth claim be dismissed, not only

15   against Secretary Becerra and Vice President Harris but also

16   against Jill Habig, who was working in the Attorney General's

17   office at the time.

18    So that particular claim, the fourth, needs to be

19   dismissed altogether before a stay is put in place because of

20   the prosecutorial immunity.

21    As to the 1985-3 and the 1986 claims, I just want to state

22   that we agree with the Court's decision on that.  They simply

23   can't fit into the two bases that they have argued that they

24   have this claim which is that they are in a particular class of

25   one.  That just doesn't hold water based on the case law.

1    And the other basis that if there is some constitutional

2    violation here, again, those things fall by the wayside for the

3    reasons set forth in our reply.

4    And then the 1986 claim is against Special Agents Cardwell

5    and Diaz, that goes away because there has to be a valid 1985-3

6    claim in order to proceed on a 1986 claim.

7    And so that fourth and fifth claim should also be

8    dismissed without leave to amend so that those claims are gone

9    before any stay would be issued in the case on the rest of the

10   matters.

11        **THE COURT:**  Thank you.

12        **MS. MEYER:**  Your Honor, I know I said I might have

13   something to add -- and unsurprisingly Ms. Whitney covered it

14   beautifully -- and I would just adopt her argument as to

15   Ms. Habig.

16   And I do think that any amendment would really, truly

17   implicate statute of limitations issues because of what the

18   Plaintiffs have conceded they already have -- the documents

19   they conceded they already had in their possession as of the

20   fall of 2017.

21        **THE COURT:**  Okay.  Thank you.

22        **MR. UMHOFER:**  Your Honor, this is Matthew Umhofer

23   again.  There is one more issue I wanted to focus the Court on

24   since we are talking about the 12(b)6 issues here, and that is

25   the striking resemblance between this case and *Iqbal* and the

1   plausibility analysis that applied in -- that was applied by

2   the Supreme Court in *Iqbal* applies even more powerfully here.

3       Iqbal, like this case, was a case involving allegations of

4   discriminatory animus.  That case involved two petitioners who

5   felt that they were treated differently because they were --

6   they were members of a specific class in violation of their

7   constitutional rights.

8       And the Court very clearly held that where there is an

9   equally or obvious alternative explanation, that the

10  allegations of discriminatory animus are not possible.

11      There, there was 9/11 and the Court's observations Justice

12  Kennedy, whether you agree with it or not, but the Court held

13  that because of the nature of the tragedy on 9/11 and the

14  perpetrators, the steps that were taken by law enforcement were

15  going to disproportionately impact people of a particular faith

16  or particular nationality.

17      And the Court held that under those circumstances, there

18  was no -- there was a more plausible -- equally plausible or

19  more plausible explanation which was that law enforcement was

20  just doing what it legitimately thought it needed to do under

21  the circumstances in order to protect the public.

22      We have a very close analogy here.  Plaintiffs claiming

23  discriminatory animus and law enforcement -- and here, it is a

24  much finer point on it than the general law enforcement

25  plausible alternative explanation in *Iqbal*.

1          Here you have a particularly plausible alternative and an

2     obvious alternative explanation, which is that law enforcement

3     saw a crime -- they actually absolutely checked all the boxes

4     of a violation of 632.

5          There is the argument about the First Amendment that has

6     been -- that has been rejected by courts before and by courts

7     who have addressed this.

8          And so you have a very specific course of conduct that

9     meets all the requirements and the elements of 632, Section

10    632, and that's the plausible -- obvious alternative

11    explanation for what happened here is that the Prosecution saw

12    conduct that violated 632 and decided to pursue the case for

13    that reason rather than for the discriminatory reason.

14         And so if you line this case up with *Iqbal*, it is actually

15    very rare that you have a Supreme Court case that actually has

16    facts that are so closely on point; but here we are on that.

17         So I would urge the Court to look at that particular issue

18    because I think the plausibility piece can't be fixed by

19    amendment, and it actually resolves the entirety of the case.

20         The final thing I would say on 12(b)(1) and the

21    *Rooker-Feldman* issue, is that just direct the Court to *Doe*

22    *versus Napolitano* and the district court -- excuse me -- the

23    D.C. Circuit's decision in *Richardson*, which was quoted in

24    *Napolitano*, where the Court said:  We can't imagine how we can

25    reconcile Feldman's reasoning with the idea that the district

1  court would be free to review the decision as long as the

2  decision was interlocutory.

3       The very purpose is that (inaudible) and *Rooker-Feldman*

4  apply with equal force and perhaps even greater force in this

5  circumstance because the Plaintiffs in this case are trying to

6  interrupt an ongoing state court proceeding that is addressing

7  the very issues in play here.

8       And, of course, at the root of *Rooker-Feldman* is the

9  notion -- and several other cases is the notion that state

10 courts are perfectly competent to address constitutional issues

11 likes those raised here, and district courts cannot sit in

12 judgment upon state courts in making those decisions.

13      I will submit, Your Honor.

14      **THE COURT:**  All right.  Thank you.

15      Mr. Breen, I am told that there is no way that you can

16 amend the complaint to plead around the statute of limitations

17 and the other issues that have been alleged.  Would that be

18 true?

19      **MR. MEUSER:**  Your Honor, I will handle the statute of

20 limitations issue.

21      **THE COURT:**  Okay.

22      **MR. MEUSER:**  And Peter will handle the *Rooker Feldman*

23 issues and the other ones issued.

24      Your Honor, a woman may think that she is pregnant.  Until

25 she goes and takes that pregnancy test, she doesn't have the

1   evidence that she was, in fact, pregnant.  She may have morning

2   sickness and go:  Hey, I think I'm pregnant.

3       What we have here is David Daleiden was talking.  He

4   thought he was being prosecuted.  He thought there was all

5   these problems.  But when did he actually get all the evidence,

6   all the pieces to the jigsaw puzzle, that created the knowledge

7   that starts the statute of limitations on this case?

8       And, Your Honor, attorney for the -- attorneys for the

9   Defendants talk about these certain pieces that we had prior to

10  two years ago, prior to two years of filing this thing.

11      However, there was a bunch of evidence that came in

12  July 2nd of 2018, documents that were now unredacted.  And then

13  when you were able to put this new evidence with the old

14  evidence, the entire picture was created.

15      You could see the entire puzzle.  You could see the

16  relationship between the DA's Office and the private

17  Defendants, and you could see how they were requesting this,

18  and how investigators then went out and did that.

19      And we believe that if we have the ability to amend the

20  complaint, we can start putting together this is the evidence

21  that came in on this day, this is the evidence that came in on

22  this day, this is the evidence that came in on this day.

23      And the complete picture of this conspiracy does not come

24  together until you get that last bit of evidence that came in

25  in July 2nd of 2018.

1    And then as for the selective prosecution, it was the

2    Attorney General -- now Secretary -- who didn't speak until

3    August of 2018, well within the two-year statute of

4    limitations -- where he came out and said that this case was

5    being brought because of the editing job and the posting of

6    these videos.

7         It was because of the speech of David Daleiden that -- and

8    how good that speech was that the prosecution was brought, and

9    that is where the equal protection cause -- removes this from

10   where selective prosecution is able to proceed on this case.

11        And that's why we believe that the statute -- statute of

12   limitations has not been violated here because of key discovery

13   that did not arrive in Plaintiffs' possession until -- until

14   July 2nd, 2018, and the statements made by then Attorney

15   General Becerra as to the motive behind the prosecution.

16        **MS. WHITNEY:**  Your Honor, I'm sorry to interrupt, but

17   I kind of have to.  This is Vickie Whitney.

18        The Attorney General -- then Attorney General Becerra,

19   they are not relying on what he said.  They are relying on a

20   statement made by the Prosecutor in the criminal case.

21        That is the basis of them saying when they found this out,

22   and they have taken it entirely out of context.  That is not

23   what was said, and it can't stand on the record that that's

24   what happened here.

25        I would also just point out, Your Honor, that, you know,

1   that the basis of their claim -- everything is ordinary in

2   judicial notice in this case.  The parties have put a

3   significant amount of documentations of admissions by the

4   Plaintiffs about their knowledge here.

5        And that has to go towards showing that they cannot amend

6   their complaint because everything is there.  All the

7   information.

8            THE COURT:  Thank you, Ms. Whitney, the -- I

9   appreciate why you felt you needed to interrupt.  You shouldn't

10  have, but I -- I take what you say, and I also understand the

11  perspective that there is no way that the Plaintiffs can amend

12  appropriately in the case to plead around things; but you would

13  not be alone among Defendants who believe that that is -- that

14  is the case.

15       All right.  Mr. Meuser, were you finished with your

16  argument?

17           MR. MEUSER:  I'm ready for Peter to finish.

18           THE COURT:  Thank you.  Mr. Breen.

19           MR. BREEN:  Thank you, Your Honor.

20       I want to start with the point about *Iqbal*.  If anything,

21  this is the inverse of *Iqbal*.  I mean, to compare this to 9/11

22  is a bit insulting on the facts.

23       Mr. Daleiden has alleged in his complaint numerous facts

24  about the political connections between the Defendants, the

25  targeting of him and only him, uniquely in California history

1   for prosecution under this statute.

2       And you have heard -- you have heard and seen nothing to

3   the contrary, which you would figure, what, five or six years

4   in, if anybody else had been prosecuted -- any other person in

5   a journalism context had been prosecuted, you would have heard

6   about that.

7       That alone -- just by the way, that alone is a fact that

8   really should cause any fair observer to go:  Well, something

9   happened here maybe.  At least you can start it off.  But then

10  you add all of the facts we have alleged in the complaint, this

11  is not something where we are giving bare notice pleading and

12  certainly not a place where somehow -- oh, we happen to see a

13  crime committed here.

14      That is not the situation that we are in.  Under the

15  standards by which Mr. Daleiden was prosecuted and

16  investigated, there are numerous others in California and

17  notoriously acting and not being prosecuted.  They are being

18  allowed it or investigated, as the case may be.

19      So I'm a little bit insulted by the comparisons that

20  somehow Mr. Daleiden was a domestic terrorist, which I know is

21  part of the narrative against him by some.

22      On the class of one, I believe we had discussed that

23  briefly.  But, you know, this the issue of a rational basis, we

24  still have not seen a rational basis other than we saw a crime

25  committed.

1        Well, that -- you know, that is a defense that you can

2    apply in any selective prosecution claim.

3        Oh, we thought a crime had been committed.  Well, that's

4    not sufficient and -- insofar as it wouldn't be sufficient to

5    take us out on a motion to dismiss phase.

6        And, again, any of the bases that have been alleged, they

7    are constitutional violations.  They are First Amendment

8    violations.  So there is no rational basis here, so that on a

9    class of one we should survive that analysis.

10       In terms of -- let's see, the immunities I believe

11   Mr. Meuser has noted that.

12       I believe someone had mentioned that we were trying to

13   rewrite history with our, you know, legal arguments.  And we

14   wouldn't concede that we were rewriting history, but it is one

15   thing to take inconsistent factual positions.  It is another

16   thing to sharpen your legal arguments, you know, in response to

17   motions and things like that.

18       And if we need to amend the complaint, then so be it.  We

19   are going to do so.

20       And then on -- let's see.  In terms of what the -- the

21   632.01, I do want to reassert that our position is this is a

22   content based regulation on speech subject to strict scrutiny.

23   And under *Reed*, we think we have a pretty strong argument to

24   strike it down.

25       Obviously Mr. Daleiden is a guy who, you know, he is --

the law was intended to stop him from doing what he is doing.
So he has certainly got standing, and he would be the right
person to challenge it and get a resolution -- a definitive
resolution from a Federal Court on that point.

Let's see.  And then in terms of the -- continue to talk
about what the superior court is doing on a selective
prosecution versus what this Court would do.

And, of course, the superior court is working under the
*Murgia* and *Eubanks* cases, the California case law, seeing
whether the Prosecution should be thrown out or the
Prosecutor's Office be thrown off the case, what have you.

We have a different claim here.  It might be overlapping
or related legal issues; but, of course, you know, that is not
the case in terms of how you would -- you know, the case law
allows that.

The Ninth Circuit, you know, *Noel v. Hall* and I believe we
cited *Kougasian v. TMSL* on that point.  You know, these are
different claims.

The issue of *Masterpiece* was raised by the Defendants.
And whether we fit precisely with *Masterpiece* or not would tend
to be a factual issue that one would not be determining on a
motion to dismiss or certainly you would allow leave to amend
because we are -- it appears it's uncontested.  We are in a
unique spot.

You have got a law that has been on the books for decades,

1   and my client is the only guy in the history of the State who

2   has been prosecuted under it on a similar -- this or a similar

3   set of facts.

4       And obviously it is California.  There is a bunch of

5   journalists here and lots of folks with cameras, and they have

6   used them.  And our guy is the only one.  So that is the base

7   plus all the political allegations, the idea -- we have pled in

8   our complaint that these allegations of violence and threats

9   were actually overblown and actually misstated at times, both

10  by the variety of the Defendants.

11      And so you have got -- you have got a lot more here.  This

12  is not some -- again, not bare notice pleading even on the

13  current set of facts.  And obviously we have offered to add

14  more.

15      Let's see.  And I believe Mr. Meuser alluded to this with

16  Ms. Habig's argument -- Counsel for Ms. Habig, in terms of the

17  timing.  So I would -- we can certainly lay that out more

18  thoroughly in another complaint if it's necessary.  But, again,

19  we believe we can do that.

20      And I believe it was Mr. Umhofer who had referred the

21  Court back to the *Doe* case.  Obviously *Doe* predates *Exxon*

22  *Mobil*, you know, on the issue of *Rooker*.

23      And *Mottershead* is the published Ninth Circuit decision

24  that says you can apply *Rooker* to interlocutory decisions.

25  And, of course, again, Judge Hite's decision, he has continued,

1   he himself said without prejudice, even denied on the

2   particular motions that we brought in front of him.

3       So it is a still a live issue there.  And, again, it is

4   not the same claim.  May be similar law.  Different claim.

5       And let's see.

6                    (Pause in proceedings.)

7       **MR. BREEN:**  I believe those were all the points that

8   the other side raised.  And certainly glad to stand for any

9   questions or submit it on the papers and the argument.

10      **THE COURT:**  All right.  Well, I will take your

11  submission.  I do have a question for you, though, which is:

12  What is going on -- what is the timing, if you know of the

13  criminal matter?

14      **MR. BREEN:**  We had a hearing today.  I was not able to

15  attend.  I was preparing for here, but we are in the pretrial

16  process.  I don't believe -- we do not have a trial date yet.

17      And because of COVID, matters in the superior court are a

18  bit delayed.  They are having trouble with jury selection.  You

19  can't put too many people in a room and all of that.

20      And also our clients are out of custody.  So that does

21  delay us a bit even though we are on the felony side.  So you

22  do get a little better, little faster treatment there.

23      But we are -- we have exchanged witness lists, jury

24  questionnaires, and we are just proceeding from there trying to

25  do our motions in limine, trying to get all of our pretrial

```
1   together so we can go to trial when hopefully all of this lifts

2   soon.  But, yeah, we don't have --

3        THE COURT:  So you don't have -- you don't have sort

4   of a ballpark date in mind for trial?

5        MR. BREEN:  I would -- I think aggressively we were

6   thinking end of the year, but I wonder if that's too hopeful.

7   Maybe beginning of next year.  Not -- and Judge Hite certainly,

8   I think he wants to move this along if it can be moved along.

9   But, again --

10       THE COURT:  I am in his boat in other matters.  So

11  okay.  Thank you.  That's helpful.

12      All right.  It looks like -- I will give the Defendants a

13  lightning round.  It looked like Mr. Ramallo wanted to say

14  something, which I will let you do but very quickly.

15       MR. RAMALLO:  Yes, Your Honor.  I would just like to

16  point out that the Plaintiffs have not responded to our First

17  Amendment arguments.  Silence speaks volumes.

18      Their case is about we influenced the Prosecutor to

19  prosecute them, and the First Amendment says we are allowed to

20  do that.  So please grant the motion to dismiss.

21       THE COURT:  Mr. Ramallo, that argument seldom works if

22  it's on the papers, and it never works because there is plenty

23  of argument about it.  But thank you for pointing it out.

24  Anybody else?

25       MS. MEYER:  Your Honor, may I be heard very briefly.
```

1            **THE COURT:**  Sure.

2            **MS. MEYER:**  Ms. Whitney, I won't repeat the arguments

3    she made about the content of the statement and the AG's brief

4    in August of 2018.

5        I do, however, want to talk briefly about the standard for

6    when the statute of limitations begins to run; and I think

7    Mr. Meuser's argument truly misstated what the standard is.

8        The standard is not that a Defendant -- excuse me -- a

9    Plaintiff needs to have all of the evidence or all of the

10   pieces of the jigsaw puzzle.

11       The standard is whether the Plaintiff has reason to know

12   or at least suspect that he has a claim.

13       And here, the Plaintiffs have conceded in their opposition

14   papers when they obviously knew they had a claim of selective

15   prosecution.  And that was in the fall of 2017.  So thank you

16   very much for your attention, Your Honor.

17           **THE COURT:**  All right.  Thank you.

18           **MR. UMHOFER:**  Your Honor, last thing -- last two

19   things for me.

20       First of all, our hands are a little bit tied on the issue

21   that the Plaintiffs keep saying, which is that there are no

22   other instances of a prosecution under 632 involving a person

23   who claimed to be a journalist.

24       There have been.  I'm not going to get into those

25   specifics because it is outside the pleadings, but I do want to

1   make clear there actually have been such prosecutions and that

2   the Plaintiffs are wrong on that as well.

3         The final thing I would say, Your Honor, Mr. Breen brought

4   up -- I didn't mean to offend you Mr. Breen.  I never want to

5   offend anybody who also went to Notre Dame.

6         But when he made his argument about *Rooker-Feldman*, he did

7   reference *Exxon*.  And I just want to read the one line from

8   *Exxon*, Justice Ginsburg's opinion there, that puts this issue

9   to bed, which is that Exxon -- when Justice Ginsburg said:

10  Exxon Mobil plainly has not repaired to federal court to undo

11  the Delaware judgment.

12        These Plaintiffs are repairing to federal court to undo

13  what is happening in state court.  That is why this Court

14  doesn't have jurisdiction under *Rooker-Feldman*.  Thank you,

15  Your Honor.

16            **THE COURT:**  All right.  Thank you.  Thank you-all very

17  much.  I appreciate the argument, and I will get an order out

18  in due course.

19            **MR. MEUSER:**  Thank you, Your Honor.

20            **MS. MEYER:**  Thank you, Your Honor.

21            **MR. UMHOFER:**  Thank you.

22            **MS. ESQUIVEL:**  Thank you, Your Honor.

23                 (Proceedings adjourned at 3:05 p.m.)

24                        ---oOo---

25

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4          We certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    Sunday, November 14, 2021

8

9

10

11    _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
            United States District Court - Official Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25