1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    NATIONAL ABORTION FEDERATION,            Case No.  15-cv-03522-WHO

8                    Plaintiff,

9            v.                               **ORDER ON MOTION FOR
                                              ATTORNEY FEES**
10   CENTER FOR MEDICAL PROGRESS, et          Re: Dkt. No. 727
     al.,

11                  Defendants.

12

13          The National Abortion Federation ("NAF"), plaintiff, seeks an award of attorney fees of

14   $6,933,374.25 as the prevailing party in this litigation.  Dkt. No. 727.  Defendants – the Center for

15   Medical Progress (CMP), Biomax Procurement Services, LLC (Biomax), and David Daleiden –

16   oppose, contending that NAF did not prevail or sufficiently prevail and that the amount of fees

17   sought is grossly excessive.  Dkt. No. 759.  Considering the arguments made and evidence

18   submitted – as well as my intimate familiarity with defendants' aggressive defense of this case (an

19   acceptable although costly strategy) and the amount of work required to reasonably litigate the

20   claims and defenses – I GRANT the motion but in a substantially reduced amount.

21                                    **BACKGROUND**

22   **I.    CONTRACTUAL ATTORNEY FEE PROVISION**

23          I granted NAF's motion for summary judgment on its breach of contract claim, finding that

24   defendants were precluded from relitigating the decision in the related case[1] that defendants had

25   breached two sets of NAF contracts – Confidentiality Agreements and Exhibitor Agreements – in

26   order to gain access to NAF's 2014 and 2015 Annual Meetings in violation of those agreements'

27   _____

28   [1] *Planned Parenthood Federation of America et al. v. Center for Medical Progress et al.*, Case
     No. 16-cv-00236 ("*PPFA*" case).

provisions. *See* April 7, 2021 NAF Summary Judgment Order (Dkt. No. 753) at 5-9 (identifying preclusive effect of the Order on Summary Judgment in related *PPFA* case, the *PPFA* Rule 50 Order, and jury verdict finding defendants breached the 2014 and 2015 NAF Agreements). Both of the Exhibitor Agreements state, "Exhibitors agree to reimburse NAF for all costs incurred by NAF, including reasonable attorneys' fees, in handling or responding to any violations of any provision of this entire Agreement." *See* Dkt. Nos. 225-6, 225-7. Daleiden signed both on behalf of BioMax and while working for CMP in 2014 and 2015. That is the basis for NAF's motion for an award of attorney fees.

NAF submits that its attorneys throughout the duration of this case billed $11,233,917 in fees to respond to what it characterizes as defendants' "scorched-earth litigation tactics." Mot. at 2; Declaration of Derek F. Foran [Dkt. No. 727-1] ¶¶ 8-9. NAF voluntarily reduced the fees it seeks by: (1) cutting the time out for pursuing sanctions at the District Court and defending that award at the Ninth Circuit, Foran Decl. ¶ 10; (2) omitting the time for any Morrison & Forester biller who billed less than 100 hours on the matter and excluded time for secretaries, discovery assistants and other support staff; *id.* ¶ 9; and (3) further reducing the time for the remaining 23 billers by 25% to account for potential inefficiencies or duplications. *Id.* ¶ 10. Initially, NAF sought an award of $7,409,103.73 and $29,358.20 in non-taxable costs.[2] *Id.* Upon discovering errors, and when submitting counsel's redacted time entries according to my Order, NAF clarified that it sought $6,933,374.25 in attorney fees for only 22 billers and $29,358.20 in non-taxable costs. Dkt. No. 756; Corrected Declaration of Derek K. Foran [Dkt. No. 756-2]; Reply at 15.

## II.   LITIGATION HISTORY

Although this case was ultimately resolved on a narrow basis – summary judgment based on issue preclusion as a result of the trial, verdict, and judgment in the related *PPFA* case – the initial rounds of litigation and concomitant discovery battles were atypically extensive. A brief

---

[2] NAF also sought $26,564.07 in taxable costs through its Bill of Costs. Mot. at 24; Dkt. No. 728. Defendants objected to that amount. Dkt. No. 760. The Clerk's office ultimately taxed costs of $24,468.62 against Defendants. Dkt. No. 761. Defendants did not move within seven days to challenge those costs or otherwise object to the determination of the Clerk's office. *See* Fed. R. Civ. Proc. 54(d)(1). That award, therefore, will not be addressed by me. *See* Civ. L.R. 54-4, 77-2.

United States District Court
Northern District of California

1    recap is necessary to explain (in part) the size of the fee request sought by NAF.

2           NAF filed this suit on July 31, 2015, seeking damages and injunctive relief to prevent

3    defendants from publishing or disclosing any video, audio, photographic, or other recordings taken

4    during NAF's 2014 and 2015 Annual Meetings.  Dkt. Nos 1, 3.  It also brought a motion for a

5    Temporary Restraining Order to stop defendants from disclosing the recordings and any

6    information learned at the Annual Meetings.[3]

7           I issued an Order to Show Cause and granted the TRO on that same date.  Dkt. No. 15.

8    After securing a written response from defendants, I held a hearing on August 3, 2015, and issued

9    an order extending the TRO until a motion for a preliminary injunction could be heard. Dkt. No.

10   27.[4]  The parties commenced expedited discovery necessary to support or oppose a preliminary

11   injunction. Within a matter of days, defendants filed two motions seeking clarification on the

12   scope of the TRO, a motion to dismiss and motion to strike, disputes over defenses to the written

13   and deposition discovery sought by plaintiff in support of a preliminary injunction, disputes over

14   the scope of the Protective Order, and disputes over defendants' responses to Congressional

15   subpoenas.  Those issues were resolved or further addressed at in person or telephonic hearings

16   throughout September and October 2015.  *See* Dkt. Nos. 34, 64, 78, 84, 95, 107, 116, 132, 137,

17   145, 153, 155, 161, 162, 185.  Throughout November and early December 2015, the parties raised

18   and I resolved disputes regarding who had access to materials covered by the TRO, the scope of

19   the Protective Order, contested sealing motions, and issues of privilege, as well as NAF's

20   allegations that TRO materials had been inappropriately shared with third-parties and its request

21

22   _____

23   [3] Troy Newman was also a defendant in this case until he was voluntarily dismissed.  Dkt. No.
     653.

24
     [4] NAF was granted leave to file a First Amended Complaint on September 15, 2015.  Dkt. No.
25   131.  In that operative complaint, NAF alleged the following claims against defendants: violation
     of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c) & (d) or RICO),
26   federal wiretapping law (18 U.S.C. § 2511), Civil Conspiracy, Promissory Fraud, Fraudulent
     Misrepresentation, Breach of Contract, Tortious Interference With Contracts, Trespass, violation
27   of California Business & Professions Code § 17200, et seq., violation of California Penal Code §
     632, and violation of § 10-402 of the Courts and Judicial Proceedings Article of the Maryland
28   Annotated Code.  *Id*.

United States District Court
Northern District of California

for an Order to Show Cause.  Dkt. Nos. 191, 201, 220, 244, 252.[5]

I held a hearing on the motion for preliminary injunction on December 18, 2021 and on a third-party's motion to quash discovery related to NAF's request for an OSC and sanctions on December 23, 2015.  Dkt. Nos. 310, 314.  In January 2016, I entered an order on defendants' motion to modify the TRO, and in February granted the motion for a preliminary injunction (Preliminary Injunction) and resolved a second motion to quash.  Dkt. Nos. 350, 354, 356.[6] Defendants sought an immediate and expedited appeal of the Preliminary Injunction, and the injunction was upheld by the Ninth Circuit in March 2017.  Dkt. No. 401.

In May 2017, NAF sought relief for a breach of the Preliminary Injunction and an Order to Show Cause re Contempt.  The issue – regarding some defendants disclosing preliminary injunction materials through their criminal defense counsel – was briefed and determined on an expedited basis.  Dkt. Nos. 409. 410, 418.  During the OSC and contempt briefing, defendants moved to disqualify me.  That disqualification issue was referred to another judge in the Northern District to resolve.  Dkt. Nos. 430, 431.  After the motion for disqualification was denied and the matter was back before me, the contempt proceedings were finalized and an Order of Contempt entered in July 2017.  Dkt. Nos. 460, 468, 482, 517.[7]

In August 2018 (after most of the pending appeals and writs taken by the defendants were resolved), I set a case schedule in this and the related *PPFA* case.  Dkt. No. 540.  NAF dismissed a number of its claims in this case in August 2018, Dkt. No. 542, and the defendants proceeded to file motions to dismiss and strike, as well as a motion to dissolve the Preliminary Injunction.

---

[5] NAF's attorneys describe the work done in filing the complaint, seeking the TRO, and defending the TRO during July through December 2015 at Phase One, accounting for approximately 17% of the hours they seek compensation for.  NAF describes the work done on expedited discovery in support of their motion for a preliminary injunction, including the disputes over privilege and whether discovery should be stayed, as Phase 2, accounting for 27% of the time they seek.  Dkt. No. 756-3.

[6] NAF's attorneys describe the briefing (not discovery) done for the preliminary injunction and time spent on the hearing for the preliminary injunction as Phase 3, accounting for 23% of the time they seek compensation for.  Dkt. No. 756-3.

[7] NAF's attorneys describe the briefing and hearings on these issues as Phase 4, accounting for 3% of the time they seek compensation for.  Dkt. No. 756-3.

United States District Court
Northern District of California

1   Those motions were resolved, along with defendants' requested stay on discovery, in September

2   and November 2018.  Dkt. Nos. 560, 572.[8]  During this period, NAF's attorneys participated in

3   discovery that was being taken in the related *PPFA* case, in order to provide efficiencies to

4   defendants as well as plaintiffs in both cases as much of that discovery was relevant to both cases.

5   That discovery process was uniquely intensive, in scope and amount, requiring the Magistrate

6   Judge assigned to handle discovery to resolve frequent disputes and hold numerous hearings.

7   NAF attorneys also participated in preparing NAF witnesses to testify in the related *PPFA* trial.[9]

8          Following the jury verdict and post-trial rulings in the *PPFA* trial, the parties in this case

9   met and conferred on NAF's proposal to resolve this case by moving for summary judgment based

10  on issue preclusion on its breach of contract claim given the evidence, verdict, and rulings in the

11  *PPFA* trial.  I agreed with that approach and resolved disputes regarding the scope of discovery

12  required to present that claim for adjudication.  Dkt. Nos. 596, 611, 621, 638.

13         During the remainder of 2020 the parties briefed and I resolved the disputed voluntary

14  dismissal of defendant Newman and issues regarding the scope of discovery necessary to resolve

15  the motion for summary judgment on preclusion and determine what (if any) permanent injunctive

16  relief NAF might be entitled to.  Dkt. Nos. 645, 648, 651, 653, 679.   NAF's motion for summary

17  judgment and request for permanent injunction was argued in February 2021 and granted in April

18  2021.  Dkt. Nos. 713, 720, 723.[10]

19         Finally, after resolving more disputes regarding the scope of the injunction and contested

20  sealing motions, NAF submitted its motion for attorney fees.  I granted defendants' request to

21  require NAF's attorneys to produce redacted time records, over NAF's objection, so that

22  defendants could make targeted objections to the reasonableness of the hours expended by NAF's

23  counsel.  Dkt. No. 739.  NAF's motion for attorney fees, and defendants' objections to NAF's

24

25  [8] NAF's attorneys describe work done on the motions to dismiss, strike, and modify as Phase 5,
    accounting for 7% of the time they seek compensation for. Dkt. No. 756-3.

26  [9] NAF's attorneys describe work done on the discovery and PPFA trial preparation as Phase 6,
27  accounting for 9% of the time they seek compensation for. Dkt. No. 756-3.

28  [10] NAF's attorneys describe work for these later two areas at Phase 7, accounting for 12% of the
    time they seek compensation for. Dkt. No. 756-3.

United States District Court
Northern District of California

statutory costs, are all that remains for me to rule on.[11]

## DISCUSSION

## I.   ENTITLEMENT TO FEES

### A.   Incurred Fees

Defendants argue at the outset that no attorney fees should be awarded to NAF because defendants cannot be required to "reimburse" reasonable attorney fees "incurred" by NAF – as provided in the Exhibitor Agreements – because there is nothing for defendants to "reimburse" as NAF did not "incur" any fees since Morrison & Forester was representing NAF pro bono.  In support, defendants cite only non-California and non-Ninth Circuit authority finding that no "reimbursement" was required under contractual fee provisions (as opposed to statutory fee recovery) because public policy concerns underlying statutory fee provisions are absent in routine contact cases.  Def. Oppo. at 5-6.

Not only are these out-of-state and out-of-circuit authorities not persuasive, defendants' argument ignores the import of California Civil Code section 1717.  Section 1717 provides that "in an action for an award of attorney fees under a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  Cal. Civ. Code Ann. § 1717.  As California courts have explained, the purposes behind Section 1717, including "mutuality of remedy and to prevent oppressive use of fee provisions," compel the conclusion that "section 1717 to provide[s] a reciprocal remedy for a prevailing party who has not actually incurred legal fees."  *Beverly Hills Properties v. Marcolino*, 221 Cal.App.3d Supp. 7 (1990).

Ample authority – applying Section 1717 and similarly worded statutes – rejects defendants' argument here, that simply where a party is fortunate enough to secure pro bono

---

[11] NAF's attorneys describe work related to the fee motion as Phase 8, accounting – prior to the redaction of their time records requested by defendants – and granted by me – for just under 2% of the time they seek compensation for.  Dkt. No. 756-3.

counsel or otherwise does not pay out of pocket for its attorney fees, the losing party on a contract with an attorney fees provision should receive a windfall and avoid paying fees to the prevailing party.  *See Intl. Billing Services, Inc. v. Emigh*, 84 Cal. App. 4th 1175, 1193 (Cal. App. 3d Dist. 2000) (where named parties to a contract providing for attorney fees did not pay for their counsel [instead their company did], court rejected argument that losing plaintiff did not have to pay those fees, explaining that "[i]t is [losing-plaintiff] which seeks a windfall" where plaintiff wants to "avoid paying the prevailing party fees based on the 'fortuitous circumstance' the [defendants] had arranged a means of defending themselves from this non-meritorious lawsuit."); *Beverly Hills Properties v. Marcolino*, 221 Cal.App.3d Supp. 7, 11 (1990) (tenant represented pro bono entitled to fee award as "Section 1717 does not expressly require the prevailing party to incur legal expenses. The statute simply provides that a prevailing party is entitled to attorney fees and costs, 'which are incurred to enforce that contract.' (§ 1717, subd. (a), italics added.) [¶] Thus, the statute is ambiguous. It does not state who, the prevailing party or the attorney representing him, must incur the legal fees and costs" and enforcing the "reciprocal remedy for a prevailing party who has not actually incurred legal fees, but whose attorneys have incurred costs and expenses in defending the prevailing party on the underlying agreement."); *see also Lolley v. Campbell*, 28 Cal. 4th 367, 373 (2002) ("[i]n practice, it has been generally agreed that a party may 'incur' attorney fees even if the party is not personally obligated to pay such fees" and a party's entitlement "to 'fees is not affected by the fact that the attorneys for whom fees are being claimed were funded by governmental or charitable sources or agreed to represent the party without charge'" and  recognizing numerous courts that have "awarded attorney fees under fee-shifting statutes that apply when fees are 'incurred' when the party seeking fees was represented by a legal services organization or counsel appearing pro bono publico." (internal citations omitted)); *Dept. of Fair Empl. and Hous. v. L. Sch. Admis. Council Inc.*, 12-CV-01830-JCS, 2018 WL 5791869, at *3 (N.D. Cal. Nov. 5, 2018) (recognizing the *Lolley* Court considered statutory fee-shifting under the Labor Code rather than contractual fee-shifting under section 1717, but applying same rationale to section 1717 case, and recognizing *Lolley's* reliance on a lower court's decision awarding fees under section 1717 where the prevailing party was represented at no personal cost

by a public interest organization); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (Cal. App. 3d Dist. 2001) (stating that the phrase, "entitled to recover his or her attorney fees," under California Code of Civil Procedure 426.16 "can certainly include recovery of the fees that the defendant's agent-the attorney-has accrued on defendant's behalf, even if the agent has waived payment from defendant, but not their recovery otherwise."); *Moran v. Oso Valley Greenbelt Assn.*, 117 Cal. App. 4th 1029, 1036 (Cal. App. 4th Dist. 2004)("Modern jurisprudence does not require a litigant seeking an attorney fee award to have actually incurred the fees."); *Voice v. Stormans Inc*., 757 F.3d 1015, 1017 (9th Cir. 2014) ("That some of the legal services were provided pro bono does not alter our analysis or conclusion. Attorneys' fees are recoverable by pro bono attorneys to the same extent that they are recoverable by attorneys who charge for their services.").

Under California law, NAF is entitled to attorney fees under the EAs even though NAF secured pro bono representation.

### B.    Prevailed on the Contract

Defendants also argue that NAF is not entitled to attorney fees because it "obtained no relief" based on the Exhibitor Agreements.  While defendants acknowledge their breach of the Exhibitor Agreements – through their false representations,  they gained access to the 2014 and 2015 NAF Annual Meetings – they contend that the injunctive relief secured was only to prevent defendants from releasing or retaining access to the materials secured at those meetings in violation of the Confidentiality Agreements.  They assert that because I rejected NAF's overbroad request for injunctive relief preventing defendants from making future false statements to attempt to enter NAF meetings or facilities (rejected because the specifics of NAF's *future* contracts were not known or arguably knowable), the relief achieved is not adequately tethered to the misrepresentation provisions of the Exhibitor Agreements that were breached.  Oppo. at 7-8.

This argument is easily disposed of.  Defendants breached material provisions of the EAs. The EAs provided for both recovery of reasonable attorney fees to enforce the contract and for specific performance or injunctive relief.  *See* Dkt. Nos. 225-6, 225-7.  That is sufficient.

## II.    REASONABLE AMOUNT OF FEES

Turning to the reasonableness of the amount of fees requested, defendants do not challenge

1    the hourly rates requested for any of the 22 billers NAF seeks compensation for.  I have reviewed

2    the submission regarding the hours charges for each biller based on experience and prior billing

3    rates and find them reasonable.  *See* Corrected Foran Decl. ¶¶ 12-43 & Exs. 1-3.

4              Instead, defendants argue that the fee request is "grossly excessive."   They point to NAF's

5    litigation tactics and argue that the hours were also excessive because: (1) the case resolved pre-

6    trial, on summary judgment (meaning that the overall hours spent were not reasonable): (2) NAF

7    secured limited relief; (3) 22 billers were too many to work on the case and resulted in

8    unnecessary time billed for conferencing and strategizing (resulting in at least $500,000 in

9    unnecessary charges); and (4), NAF seeks compensation for uncompensable time.  Oppo. at 9-23.

10   Although defendants complain about excessive time, they only identify a few examples even

11   though I granted their request requiring NAF to produce redacted time records so that defendants

12   could specifically identify excessive time spent on specific tasks.  Those redacted time records –

13   although some entries may be "vague" and demonstrate block-billing (issues arguably already

14   accounted for by NAF's reduction of fees from the 22 billers by 25%) – provided adequate

15   information for defendants to make more-targeted objections.  I address the targeted objections

16   defendants did make below.[12]

17        **A.     Disproportionate Considering Success**

18             Defendants argue that the fee request should be denied as disproportionate considering that

19   NAF dropped 10 of its 11 substantive claims (ultimately moving for summary judgment only on

20   its breach of contract claim) and secured limited success (only injunctive relief).  However, NAF's

21   primary goal from the outset was to prevent defendants from disclosing or maintaining any of the

22   information they secured as a result of their breaches of NAF's contracts.  This is shown by the

23   bulk of the attorney fees sought in this motion, which were spent in securing early injunctive

24

25   ----

[12] Both sides accuse the other of scorched-earth litigation tactics.  Both sides are well aware of the context of this case and what was at stake for both sides.  An atypical amount of disputes and aggressive defense – over the scope of the injunctive relief, over the scope of discovery into sensitive information on both sides (identity of staff, identity of funders) – was to be expected.  Neither side should claim surprise by the number of hours billed by the other.  It is notable that defendants presented no information about the number of hours their attorneys billed in defending this case (or in taking or defending the relevant to this case discovery in the related *PPFA* case) for comparison purposes.

relief.  NAF could have continued to summary judgment and trial on more claims, but that would

have entailed more work and more risk for both sides when NAF had already secured its central

goal.  That NAF made a strategic and sensible choice to move for summary judgment only on its

breach of contract claim (under issue preclusion as a result of the findings, verdict, and judgment

in the *PPFA* case) does not mean that it had only marginal success such that its award for attorney

fees should be denied or reduced.[13]

Finally, defendants make no effort to show how any of the hours spent by NAF's counsel

were unrelated to the breach of contract claim or the preliminary or final injunctive relief awarded

under that claim.  While defendants fault plaintiff for not making that showing, Oppo. at 9-10, I

find that while claims were dropped along the way, the core of this litigation – the injunctive

relief, the discovery, the motions practice – were necessarily related to and tied to the successful

breach of contract claim that resulted in the significant injunctive relief awarded.  *See, e.g., Marsu,*

*B.V. v. Walt Disney Co*., 185 F.3d 932, 939 (9th Cir. 1999) (awarding fees where plaintiff's

unsuccessful fraudulent inducement and accounting claims were based upon the same common

core of facts as its successful claims of breach of contract and breach of the implied covenant of

good faith and fair dealing).[14]  This result is especially appropriate here where, although NAF's

other claims were not pursued to summary judgment, the other claims all arose out of the conduct

caused by defendants' breach of the NAF agreements.  *See id*. (contractual fee agreement covered

tort claims arising out of the contractual relationship).

---

[13] Defendants cite two cases that do not apply.  In *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994), where the court applied Washington law deferring to federal law and where the success achieved was merely monetary, the court held that it was an abuse of discretion for the district court to fail to account for limited success under the "private attorney general" theory that is tied to consideration of "what a reasonable individual would pay lawyers for the benefit conferred on him."  *Id*. at 810.  In this case, and applying California law, the primary benefit is significant injunctive relief tied to the core theory of NAF's case and resulting directly from its success on the central contract claim.  And this case, unlike *Banas v. Volcano Corp*., 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014), was resolved only after an atypically aggressive defense, a remarkably high number of motions, and resolution of many disputes over discovery, sealing, and compliance with the injunctive relief ordered by the Court.

[14] Contrary to defendants' repeated characterizations, while I denied some of the injunctive relief terms requested by NAF because those terms were not adequately tied to the breach of contract claim, that does not mean NAF secured only "limited" success in this case.

Defendants' argument regarding limited success has no merit.  Having presided over this case since its inception, I find that NAF secured full success on its central claim.  There is no reason to reduce the award on that basis.

That said, some of defendants' objections do have merit, as discussed below.  In sustaining them, I will require NAF to submit a revised proposed judgment, discussed in the Conclusion section, that accounts for the reductions.

**B.      Entries that Should be Excluded**

Excessive and Unreasonable Staffing.  Defendants' argument that NAF staffed this case with too many attorneys – seeking compensation for the time of 22 billers (19 attorneys and 3 paralegals) who each expended over 100 hours on the matter – is somewhat more persuasive when considered in conjunction with specific challenges.

As a general matter, this was a complex case that extended over a long period of time.  As such, that NAF seeks compensation for the time of the 22 billers that spent over 100 hours on this case is not in and of itself problematic.  But defendants raise a fair point as to the significant amount of time billed to "team meetings" and "intrafirm communications" that support their position that too many billers who were not decision-makers or necessary to the matters being discussed were billing for those meetings and strategy sessions.  For example, defendants contend that plaintiff's counsel routinely billed for  more than necessary timekeepers at the same team meetings (*e.g.,* entries 3361, 3363, 3364, 3365, 3366; five timekeepers each recording at least 0.8 hours each) resulting in at least $500,000 in billed time.  Oppo. at 11-12.[15]  Defendants also point to the 1,600 plus intrafirm communications that have been billed (where multiple timekeepers billed when sending/reading/responding to the same communications), to support their argument that significant portions of those entries were unnecessary and unreasonable.   Oppo. at 12-14.[16]

---

[15] Defendants also argue that 50% of all fees for all entries should be reduced due to "gross overstaffing," but fail to identify any particular instances of overstaffing or other justifications (*i.e.,* in light of the task at hand or the number of defense counsel who billed fewer hours for the same/tasks).  There is no basis to reduce all entries by 50% for unidentified overstaffing.

[16] Defendants also complain about the redactions of those intrafirm communications, contending it makes it impossible for them to challenge their reasonableness and all entries that have been redacted should be disallowed.  However, given the context of this case and my express order

11

United States District Court
Northern District of California

1    Plaintiff does not address these issues specifically, except to argue that it was appropriate

2    to bill for each of the 22 individuals whose time on the case exceeded 100 hours and to note that it

3    already accounted for potential duplication and inefficiencies by its 25% across the board

4    deduction.  However, the impact of the absolute number of these team meetings and intrafirm

5    communications on their face is unreasonable in an amount that exceeds the 25% across the board

6    reduction voluntarily taken by defendants.  Considering the unrebutted estimate of $500,000 billed

7    to team meetings and the well-over-1000 intrafirm communications billed (according to

8    defendants), a further significant reduction is warranted.  NAF shall calculate the amount charged

9    for meetings where more five or more team members billed for their attendance and reduce the

10    amount claimed for those meetings by 50%.  Similarly, NAF shall calculate the amount charged to

11    interfirm communications and reduce the amount sought for those communications by a further

12    10%.[17]

13    Defendants also specifically challenge 721 block-billing entries, amounting to 3,211 total

14    hours and $1,452,268.50 in fees (after the 25% reduction).  Defendants argue that because they are

15    precluded from challenging unreasonableness given the block descriptions, a reduction of 50% (or

16    $726,134.25) should be made.  Plaintiff does not dispute that these 721 entries (15% of the time

17    entries they seek compensation for) were block billed, precluding defendants from lodging

18    particularized objections to the reasonableness of those entries.  Reply at 13.  Instead, NAF argues

19    that any duplication has been accounted for by its 25% across-the-board deduction and, in any

20    event, a deduction of no more than $193,635 is warranted.  I find that a further reduction in the fee

21    award of $193,635 is appropriate for block-billing.

22    Unrelated Issues.  Defendants also challenge NAF's seeking fees to: (1) unsuccessfully

23    quash or limit defendants' response to a Congressional subpoena ($100,000 in fees); (2)

24    unsuccessfully seeking a contempt order based on defendants allegedly providing too much

---

allowing redactions, that particular argument is unpersuasive.

[17] The difference in the percentage reduction is because many of the examples of intrafirm communications are just between two or three counsel – as opposed to the team meetings of five or more attorneys that amounted to a significant percentage of the total time billed.

United States District Court
Northern District of California

1  information to Congress ($250,000 in fees); (3) providing "assistance" to the prosecution in the

2  related criminal proceeding ($20,000); and (4) seeking dismissal or Newman ($100,000).  Oppo.

3  19-20.  Defendants identify the specific time entries they associate with each of these efforts.  *Id*.

4       Plaintiff responds by addressing only its response to the Congressional subpoena, noting

5  that its actions were necessary to protect the integrity of injunctive relief I had entered and to

6  ensure that only appropriate materials were provided by defendants to Congress.  I agree that NAF

7  was entitled to take steps to protect the integrity of my orders.  Defendants fail to make a more

8  targeted challenge to these matters (for example, that the amount of hours billed was

9  unreasonable).  On this record, NAF's fees will not be reduced in connection with NAF's steps to

10 protect against disclosure of information covered by my orders.

11      However, NAF fails to address the other two challenges; the propriety of fees for providing

12 "assistance" in the criminal case against Daleiden or why defendants should be charged for

13 plaintiff's efforts (and defendants' objections) to dismiss Newman as a defendant.  Those matters

14 are, absent any justification from NAF, not sufficiently related to the breach of contract action and

15 the judgment against the remaining defendants.  Therefore, NAF shall remove the time spent on

16 these two tasks from the fees it seeks.

17      Clerical Tasks.  Defendants challenge compensation for clerical work at attorney or

18 paralegal rates, identifying numerous alleged instances of time billed for clerical work.  Oppo. at

19 21-22.  Defendants estimate this amounted to $100,000 in fees sought (when compensated at

20 hourly rates between $335-650/hour) and argue that NAF is entitled to clerical rates of $40/hour

21 for those tasks.  *Id*. at 22.

22      Plaintiff responds with cases noting that some compensation for clerical time is warranted,

23 as long as it is "minimal" and only "quasi-clerical."  *See, e.g., Smith v. Citifinancial Retail

24 Services*, C06 2966 BZ, 2007 WL 2221072, at *2 (N.D. Cal. Aug. 2, 2007).  They also cite a case

25 approving compensation for clerical tasks performed by a paralegal at $115/hour.  *Sierra Club v.

26 U.S. E.P.A.*, 625 F. Supp. 2d 863, 869 (N.D. Cal. 2007).  Plaintiff, however, does not address any

27 of the specific instances of clerical billing identified by defendants or justify the hourly rates

28 charged for the identified tasks incurred by two billers; Laks (an associate) and Beyer (a senior

13

paralegal).  While the majority of the clerical tasks identified by defendants and performed by Beyer appear to be appropriate, the rub for defendants is presumably the senior paralegal rate charged by Beyer.  Given plaintiff's failure to respond to justify the tasks being performed by the associate and senior paralegal, performed at the specific rates charged for those tasks, a reduction of 50% in the entries identified by defendants (and only those entries identified by defendants in their Opposition at 21-22) is warranted.

Whole/Half Numbers and 0.1 Entries.  Defendants challenge two billers' alleged "overuse" of whole or half numbers, suggesting that they rounded up their time.  Oppo. at 22-23 (identifying entries by Shostak and Sarano that were apparently rounded).  However, those whole/half number entries do not appear to be excessive when compared to the overall entries nor is there evidence that any rounding was up (rather than down).  I will not mandate deductions on that basis.  Finally, defendants argue that NAF improperly seeks fees for 208 six-minute (0.1 hour) entries for a total of $14,342.50 in time, arguing that those entries should be reduced by 50%.  Oppo. at 23. However, precision in entries is appropriate; simply because they are 0.1 entries does not mean the time was unreasonably incurred.  I will not mandate deductions based on this basis either.

Other than the five areas I have identified mandating a reduction in the hours sought (for unjustified team meeting and excess intrafirm communications, for block billing, for efforts unrelated to the core work in this case, and for clerical work charged at unjustified rates), NAF's motion for an award of attorney fees is GRANTED.

## III.   COSTS

NAF also seeks an award of non-taxable costs of $29,358.30, that Morrison & Foerster incurred on behalf of NAF in the course of this litigation for: (1) attorney travel costs ($20,688.92), (2) investigation fees ($5,876.88), (3) delivery and messaging services ($2,792.50). Corrected Foran Decl., ¶¶ 104-106.  NAF's attorneys declare that it is Morrison & Forester's standard practice to bill these types of costs to clients separate from their hourly billing rates and that passing on these costs to clients is standard practice in San Francisco and more broadly in California.  Id. ¶¶ 107-109.

Defendants object to recovery of these costs on the grounds that the expenses are

14

United States District Court
Northern District of California

1  "inadequately documented."   NAF did not submit the underlying invoices and instead submitted a

2  general description of the 3 categories of costs they seek with a total for each, Foran Decl., ¶ 106. I

3  agree that a sufficient showing has been made that these are types of expenses typically billed

4  separately from attorney time and charged to clients.  *Id.*, ¶¶ 107-109.  While "not particularly

5  fulsome," the general descriptions of the categories of expenses and the amounts sought appear to

6  be reasonable.  *See Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med. Progress*, 16-CV-

7  00236-WHO, 2020 WL 7626410, at *8 (N.D. Cal. Dec. 22, 2020).  Defendants do not contend

8  that NAF's attorneys are not entitled to any of the particular categories of costs or that the specific

9  amounts sought are excessive (when compared to their own travel costs or otherwise).  The

10  motion is GRANTED in full as to the non-taxable costs sought.

### CONCLUSION

12  NAF's request for an award of attorney fees is GRANTED, subject to the reductions

13  required by this Order.  The request shall be reduced by:

14  1.   $193,635 for block-billing;

15  2.   The hours spent on providing "assistance" in the criminal case against
    Daleiden;

16

17  3.   The hours spent to dismiss Newman as a defendant;

18  4.   50% of the amount charged for meetings where more five or more team

    members billed for their attendance;

19

20  5.   10% of the amount charged to interfirm communications; and

21  6.   50% the amount sought for the clerical tasks identified by defendants in

22    their Opposition at 21-22.

23  NAF's request for an award of non-taxable costs of $29,358.30 is GRANTED.

24  Within thirty days (30) of the date of this Order, NAF shall submit a Proposed Amended

25  Judgment including an award for attorney fees (as mandated by this Order) and costs, after having

26

27

28

met and conferred with defendants to demonstrate that the required reductions are accounted for.

**IT IS SO ORDERED.**

Dated: December 23, 2021

William H. Orrick
United States District Judge